# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

|  |  |
|---|---|
| IN RE SEMGROUP ENERGY PARTNERS, L.P., SECURITIES LITIGATION | CASE NO. 08-MD-1989-GKF-FHM |

## LEAD PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO MODIFY THE PSLRA STAY OF DISCOVERY

**NELSON, ROSELIUS, TERRY O'HARA & MORTON**
Douglas A. Terry (Bar Number 15855)
Jason E. Roselius (Bar Number 16721)
Guy R. Wood (Bar Number 15875)
P. O. Box 138800
Oklahoma City, Oklahoma 73113-8800
Telephone: 405.705.3600
Facsimile: 405.705.2573

Liaison Counsel

**BARROWAY TOPAZ KESSLER MELTZER & CHECK, LLP**
Stuart L. Berman (*admitted pro hac vice*)
Lauren Wagner Pederson (*admitted pro hac vice*)
Sharan Nirmul (*admitted pro hac vice*)
Naumon A. Amjed (*admitted pro hac vice*)
280 King of Prussia Road
Radnor, PA 19087
Tel:  (610) 667-7706
Fax:  (610)667-7056

Lead Counsel

Dated:  January 30, 2009

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................... iii

I.     FACTUAL BACKGROUND ...................................................................3

    A.    The Securities Class Action ...............................................................3

    B.    SGLP's Affiliation With SemGroup ....................................................3

    C.    SemGroup's Liquidity Crisis and Bankruptcy......................................6

    D.    Ongoing Investigations of the Scheme and Course of Deceptive
             Conduct Leading to SemGroup's Demise ..............................................7

          1.    The Examiner's Investigation .................................................7

          2.    The Debtor's Investigation .......................................................9

          3.    The Unsecured Creditors Committee Investigation...................11

          4.    The Producers' Committee Investigation ................................12

          5.    The SEC Investigation .............................................................12

          6.    The U.S. Attorney's Office in Oklahoma City ..........................13

    E.    The Impact of the PSLRA Discovery Stay on Lead Plaintiff's Ability to
             Participate in Ongoing Investigations...................................................13

II.    LEAD PLAINTIFF'S PARTICULARIZED REQUESTS FOR DISCOVERY ...............14

III.   ARGUMENT ....................................................................................15

    A.    The Court Should Exercise Its Explicit Authority Under the PSLRA To
             Modify the PSLRA's Discovery Stay.....................................................15

    B.    The Limited Discovery Requested by Lead Plaintiff is Appropriate ...................18

          1.    Lead Plaintiff's Discovery Requests Are Highly Particularized...............18

          2.    Lead Plaintiff and the Class Will Suffer Prejudice If The
               Discovery Stay Is Not Lifted ....................................................19

          3.    There Is Little or Not Additional Burden on Defendants To
               Produce Documents to Lead Plaintiff That They Have
               Already Produced.....................................................................21

i

4.    Partial Modification of the Discovery Stay Is Necessary To
      Preserve Evidence .......................................................................................22

CONCLUSION.........................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

*Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*,
  244 F.3d 189 (1st Cir. 2001) ...................................................................................16

*In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*,
  No. 05-MD-1725, 2007 U.S. Dist. LEXIS 10408
  (E.D. Mich. Feb. 15, 2007) ............................................................................. passim

*In re Enron Corp. Sec., Deriv., & ERISA Litig.*,
  No. MDL-1446, Civ. No. H-01-3624, 2002 U.S. Dist. LEXIS 26261
  (S.D. Tex. Aug. 16, 2002) ............................................................................... passim

*Faulkner v. Verizon Commc'ns, Inc.*,
  156 F. Supp. 2d 384 (S.D.N.Y. 2001) ....................................................................22

*In re: FirstEnergy Corp. Sec. Litig.*,
  229 F.R.D. 541 (N.D. Ohio 2004) ...........................................................15, 21, 22

*In re Labranche Sec. Litig.*,
  333 F. Supp. 2d 178 (S.D.N.Y. 2004) ..............................................................16, 21

*In re Lernout & Hauspie Sec. Litig.*,
  214 F. Supp. 2d 100 (D. Mass. 2002) .........................................................16, 17, 24

*In re Nat'l Century Fin. Enter., Inc. Fin. Inv. Litig.*,
  347 F. Supp. 2d 538 (S.D.Ohio 2004) ..............................................................16, 23

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
  220 F.R.D. 246 (D. Md. 2004)................................................................16, 18, 22, 24

*In re Royal Dutch/Shell Group Sec. Litig.*,
  No. 04-374 (JWB) 2005 U.S. Dist. LEXIS 37962 (D.N.J. Feb. 15, 2005).............................21

*Seippel v. Sidley, Austin, Brown & Wood LLP*,
  No. 03 Civ. 6942 (SAS) 2005 U.S. Dist. LEXIS 2388 (S.D.N.Y. Feb. 17, 2005) .................21

*Singer v. Nicor, Inc.*,
  No. 02C5168, 2003 WL 22013905 (N.D. Ill. Apr. 23, 2003)...........................................21, 22

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
  No. MDL-00-MD-1335-B, 2000 U.S. Dist. LEXIS 11659
  (D.N.H. Jan. 29, 2003).........................................................................................1, 18

*Vacold LLC & Immunotherapy Inc. v. Cerami*,
  No. 00 Civ. 4024 (AGS), 2001 WL 167704 (S.D.N.Y. Feb. 16, 2001) .................................17

*In re Williams Sec. Litig.*,
No. 02-cv-72H (M), 2003 U.S. Dist. LEXIS 24304 (N.D. Okla. May 22, 2003) .......19, 20, 21

*In re WorldCom, Inc. Sec. Litig.,*
234 F. Supp. 2d 301 (S.D.N.Y. 2002)...........................................................................16, 18, 21

**STATUTES**

11 U.S.C. §§ 105(a) and 1103(c) ...............................................................................................11

11 U.S.C. § 1103................................................................................................................................12

15 U.S.C. § 78u-4(b)(3)(B)...............................................................................................1, 15, 18

15 U.S.C. § 78u-4(b)(3)(C)(i) ..................................................................................................23

§ 21D(b)(3) ................................................................................................................................1

**OTHER AUTHORITIES**

Fed. R. Civ. P. Rules 1 and 26(f) ............................................................................................16

Federal Rule of Bankruptcy Procedure 2004....................................................................... passim

Lawrence P. King, et al., 9 Collier on Bankruptcy,
¶2004.01[1], at 2004-3 (15th ed. 2003) ..................................................................................8

Lead Plaintiff Harvest Fund Advisors LLC ("Lead Plaintiff") respectfully submits this Memorandum of Law in support of its motion to modify the stay of discovery provided under Section 21D(b)(3) of the Securities Exchange Act of 1934 (the "Exchange Act"), as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(b)(3)(B). This securities class action is brought on behalf of all purchasers of common units of SemGroup Energy Partners, L.P. ("SGLP" or the "Company") between July 17, 2007 and July 17, 2008 (the "Class Period") against SGLP and certain of its officers and directors for violations of the Exchange Act and the Securities Act of 1933. Thus, these proceedings are subject to provisions of the PSLRA, including the stay of discovery while a motion to dismiss is pending.[1]

The relief requested herein is particularized and very narrow. Lead Plaintiff seeks limited relief from the PSLRA discovery stay to obtain copies of documents and other discovery that SGLP and certain other named Defendants and third parties have produced, or are gathering and reviewing to produce, to federal authorities and others in connection with ongoing investigations that directly relate to the scheme and course of deceptive conduct at issue in this action. As detailed herein, there are at least five ongoing investigations, including investigations by the SEC and the U.S. Attorney's Office in Oklahoma City, Oklahoma, and three investigations affiliated with the bankruptcy proceedings of SGLP's parent company, SemGroup L.P. ("SemGroup"), including a bankruptcy

---

[1] Technically, as no motion to dismiss has yet been filed, the discovery stay is not in place. "Courts applying the PSRLA's stay provision have reached different conclusions as to whether it applies before a motion to dismiss is filed." *See In re Tyco Int'l, Ltd. Multidistrict Litig.*, No. MDL-00-MD-1335-B, 2000 U.S. Dist. LEXIS 11659, at *3 n.1 (D.N.H. Jan. 29, 2003) (citations omitted). On January 23, 2009, this Court entered a scheduling order for Lead Plaintiff to file its consolidated amended complaint and for Defendants to respond thereto. Because the deadline for Defendants to respond to or move to dismiss the consolidated amended complaint has not passed, out of an abundance of caution, Lead Plaintiff seeks limited relief from the PSLRA discovery stay to prevent undue prejudice to Lead Plaintiff and the prospective Class arising from the expansive and intensifying nature of the civil and criminal investigations against certain Defendants named in this action.

1

court-appointed examiner's investigation led by Louis J. Freeh, former Director of the Federal Bureau of Investigation (the "Examiner").

In addition, Lead Plaintiff seeks modification of the PSLRA stay of discovery to obtain transcripts of sworn testimony from SGLP executives and Defendant Thomas Kivisto ("Kivisto") relating to SemGroup's insolvency and undisclosed hedging transactions engaged in by Kivisto and companies that he controls provided in any ongoing proceeding or investigation.[2]  As a control person of SGLP, Kivisto is liable for the losses suffered by SGLP's investors.  Ongoing investigations and the bankruptcy proceeding (and settlements relating thereto) may deplete if not eliminate the class's ability to recover funds from Kivisto and other defendants (currently named and to be named in the amended complaint) while the class waits for the resolution of briefing on defendants' motions to dismiss in the securities action.  As set forth herein, other courts have permitted a partial modification of the PSLRA's discovery stay under similar circumstances where such prejudice is evident.

The relief Lead Plaintiff requests is necessary and in the best interests of the prospective Class to prevent undue prejudice and allow Lead Plaintiff to make informed decisions about its litigation strategy in a rapidly-shifting landscape given that discovery is ongoing in the bankruptcy proceeding and in several investigations.  The requested relief will not cause any discernable prejudice or burden to Defendants or third-parties.  The documents sought by this motion cover only those documents that have already been or will be reviewed and produced to governmental authorities and/or in other actions.

---

[2]    But for SemGroup's bankruptcy it would be named as a defendant in the amended complaint Lead Plaintiff expects to file in this action.

# I    FACTUAL BACKGROUND

## A.    The Securities Class Action

The consolidated complaints in this action allege that SGLP and other Defendants knowingly and recklessly disseminated materially false and misleading statements and omissions regarding SGLP and SemGroup to create a market for and artificially inflate the price of the Company's units. Complaint ¶¶2-4.[3]  The Class has lost millions of dollars as corrective disclosures removed the inflation in SGLP's units caused by the Defendants' fraud.  In fact, SGLP's common units fell sharply in response to the July 17, 2008 announcement disclosing liquidity problems with SemGroup, falling from a closing price of $22.80 on July 16, 2008, to close at $11 per unit on July 18, 2008.  The price of the units has not recovered, and on November 21, 2008, the trading units closed below $1.00.  At of the close of the market on January 23, 2009, SGLP's units were trading at $2.65.  Lead Plaintiff seeks recovery on behalf of itself and other Class members for losses related to their purchases of SGLP units during the Class Period.

## B.    SGLP's Affiliation With SemGroup

As set forth above, this consolidated class action against SGLP and certain of its current and former officers and directors arises out of a massive securities fraud on SGLP unit holders.  SGLP is a publicly-traded master limited partnership, and its common units are traded on the NASDAQ Global Market.  *See* Complaint ¶¶1, 9.  SGLP owns and operates a diversified portfolio of midstream energy assets, including storage and transportation services for crude oil and liquid asphalt.  SGLP's

---

[3]    On October 17, 2008, this Court consolidated, at least for pretrial proceedings, several federal securities class actions that were filed in this Court against SGLP or transferred to this Court by the United States Panel on Multidistrict Litigation.  The references to the "Complaint" in this Memorandum of Law are to the action styled *Jain v. SemGroup Energy Partners*, L.P., Civil Action No. 08-cv-0738, which originally was filed in the Southern District of New York and was transferred to this Court and consolidated with this action.

parent company, SemGroup, is a privately-held company that, along with numerous direct and indirect subsidiaries (collectively with SemGroup, the "Debtor"), presently are debtors in jointly-administered Chapter 11 bankruptcy proceedings pending before the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"). *See In re: SemCrude, L.P. et al.*, Case No. 08-11525 (BLS). SemGroup has been liquidating assets through the bankruptcy proceedings. SGLP is not a debtor in the bankruptcy proceedings, but it is a party to various agreements with its parent company, SemGroup, and certain of SemGroup's subsidiaries that also filed for bankruptcy protection.

In July 2007, SGLP was partially spun off from SemGroup via a public offering (the "IPO"), which offered investors 12.5 million common units of SGLP at a price of $22 per unit. Subsequent to the IPO, public investors held 52.3% of SGLP and SemGroup held the remaining interest through a 100% ownership interest in SGLP's General Partner, SemGroup Energy Partners G.P., L.L.C (the "General Partner"). All significant decisions relating to SGLP are made by the General Partner. In addition, SGLP and SemGroup maintained substantially overlapping officers and directors, including several Defendants named in this action. *See* Complaint ¶¶4, 13, 14, 15, 16, 17.[4] In February 2008, (five months before SemGroup filed for bankruptcy protection), SGLP issued an additional 6 million common units through a secondary offering (the "Secondary Offering") at

---

[4]     On June 25, 2008, SemGroup borrowed $150 million from two hedge funds under a line of credit that provided the hedge funds the right to take control of SGLP's General Partner upon an event of default. Almost immediately after SGLP disclosed that SemGroup was on the brink of bankruptcy, the hedge funds declared an event of default under the credit agreement and effectively took control of the General Partner's Board of Directors. *Id.* ¶ 58. The new controlling owners of the General Partner ousted Thomas Kivisto (SemGroup's Chief Executive Officer ("CEO") and President), Gregory Wallace, Kevin Foxx (SemGroup's co-founder and SGLP's CEO and President), Michael Brochetti (SGLP's CFO) and Andy Bishop from the General Partner' Board of Directors. Kivisto, Wallace, Foxx, Brochetti and Bishop all are named as Defendants in this action. *See*, *e.g.*, Complaint ¶¶ 13-20.

$23.90 per unit, generating proceeds of $137 million. *Id.* ¶52.    According to SGLP's First Quarter 2008 Form 10-Q filing with the United States Securities Exchange Commission (the "SEC"), there were 21,275,000 common units outstanding as of May 2, 2008.

Throughout the Class Period, SGLP was heavily dependent on its parent, SemGroup, for its revenues and cash flows.  Indeed, SGLP derived more than 80 percent of its annual revenues from services provided to SemGroup.  *Id.* ¶4.  The heart of Plaintiffs' claims in this action is that throughout the Class Period, SGLP's public filings with the SEC painted a stable picture of a mutually-beneficial symbiotic business relationship with SemGroup, stating that SGLP's contractual relationship with SemGroup provided the Company with "stable, fee-based, contracted cash flows" and a "minimum" of $6.4 million in monthly revenues. *Id.* ¶ 44.  SGLP also repeatedly represented to investors that SemGroup had "a significant asset base consisting primarily of pipelines, gathering systems, processing plants, storage facilities, terminals and other distribution facilities. . . ." *Id.* SemGroup's consolidated revenues during fiscal 2007 were approximately $13.2 billion, and *Forbes* magazine has ranked SemGroup among the 14 largest private companies each year since 2004.

The reality of SemGroup's business, however, was vastly different from the picture of stability presented by SGLP.  While SGLP was touting its relationship with SemGroup as providing it with a stable source of revenues (concurrently with the Company raising hundreds of millions of dollars in public offerings), SemGroup, at the direction of its CEO, Kivisto, was engaged in speculative, dangerous and unauthorized hedging and trading activity in crude oil. *Id.* ¶57.  The risky nature of SemGroup's business was not disclosed to investors until July 17, 2008, when the Company issued a press release stating that SemGroup was experiencing liquidity issues and was exploring various alternatives, including filing a voluntary petition for Chapter 11 bankruptcy. *Id.* ¶55.

C.    **SemGroup's Liquidity Crisis and Bankruptcy**

Collapsing under the weight of $2.4 billion in losses from a series of unauthorized and undisclosed high-risk bets on oil contracts, SemGroup filed for bankruptcy protection on July 22, 2008. In its bankruptcy petition, SemGroup stated that the Debtor's bankruptcy filings were caused, in substantial part, by a severe liquidity crisis arising from massive margin calls related to New York Mercantile Exchange ("NYMEX") and Over the Counter ("OTC") futures and options positions held by the Debtor relating to failed oil-hedging practices. Historically, to manage exposure to market changes in commodity prices and protect gross margins on purchased petroleum products, among other things, SemGroup and its affiliates utilized futures and options contracts. In total, SemGroup racked up more than $2.4 billion in debt through transactions on the oil futures market. The Debtor's liquidity crisis resulted from the use of virtually all of its available cash generated by its operations and from various lucrative inside transaction with SGLP during the Class Period, including, $275 million raised through the IPO and $137 million raised in the Secondary Offering.

In an affidavit supporting certain requests for relief in the bankruptcy proceedings, SemGroup's CEO, Terry Ronan (who replaced Kivisto after SemGroup's financial crisis was publicly disclosed in July 2008), stated that "[i]ncreased margin requirements have had a severe negative impact on the SemGroup companies' liquidity position, which worsened significantly in recent weeks." Unable to meet a $500 million margin call on its NYMEX trading account on July 15, 2008, SemGroup transferred its NYMEX trading account to Barclays Bank, which the Debtor claims converted loss contingencies into a recognized loss totaling more than $2.4 billion. Ronan's affidavit further stated that a trading company "wholly owned" by Kivisto, owed SemGroup $290 million from trading losses. Neither SGLP's investors nor rating agencies were aware that Kivisto's trading firm existed or that the firm traded with SemGroup.

Subsequent to SemGroup's bankruptcy filing, SGLP's business has been severely adversely affected, and the trading price of its common units has plummeted.

### D.    Ongoing Investigations of the Scheme and Course of Deceptive Conduct Leading to SemGroup's Demise

Lead Plaintiff is not the only one seeking to hold SGLP and certain of its officers and directors accountable for their actions.  Indeed, in addition to the securities class actions against SGLP, the SEC; the U.S. Attorney's Office in Oklahoma City, Oklahoma; an unsecured creditors committee (the "Creditors Committee"); an Examiner appointed in SemGroup's bankruptcy proceedings; the Debtor; and an official oil and gas producers' committee (the "Producers' Committee") have launched investigations into the conduct at issue in this litigation.  These ongoing investigations have already resulted in several parties – other than the securities class – gathering, reviewing and producing discovery.  Undoubtedly, much of the discovery is focused on potential sources of recovery – information to which Lead Plaintiff has no access at this time.

### 1.    The Examiner's Investigation

In September 2008, the Bankruptcy Court granted a motion filed by the United States Trustee (the "Trustee") to appoint an examiner in SemGroup's bankruptcy case.  On October 14, 2008, the Trustee sought and was given authority by the Bankruptcy Court to appoint Louis J. Freeh.  The Order approving Mr. Freeh provided broad authority to the Examiner to investigate the formation of SGLP and the insider transactions between and among the Debtor and SGLP during the Class Period.

The Bankruptcy Court's Order further directed the Examiner to investigate the circumstances surrounding SemGroup's NYMEX and OTC trading, margin calls and transfer of the NYMEX account to Barclays Bank the week before it filed bankruptcy.  The Order also directed the Examiner to investigate SemGroup's potential improper use of borrowed funds and funds generated from its

operations and liquidation of the Debtor's assets and assets of entities owned and controlled by the Debtor to satisfy margin calls for SemGroup trading accounts and other accounts. And finally, the Order directed the Examiner to investigate whether any directors, officers or employees of the Debtor participated, *inter alia*, in fraud or dishonesty or irregularity in conducting the affairs of the Debtor. The subjects of the Examiner's investigation substantially overlap with the facts, transactions and deceptive conduct underlying Lead Plaintiff's claims against Defendants in this federal securities action.

In connection with the Examiner's investigation, the Bankruptcy Court has extended subpoena power to the Examiner, and the Examiner is aggressively proceeding with witness interviews and examinations pursuant to Federal Rule of Bankruptcy Procedure 2004 ("Rule 2004").[5] The Examiner has obtained approval from the Bankruptcy Court to conduct examinations of and obtain documents from the Debtor's current and former officers, directors, employees and other persons or entities with relevant information (including auditors, counsel, lenders, investors and financial transaction counterparties) regarding matters within the scope of the Examiner's investigation. *See* Bankruptcy Court Order Granting Examiner's Motion Directing the Production of Documents and Authorizing the Examination of the Debtors' Current and Former Officers, Directors and Employees, and Other Persons, dated November 25, 2008, which is attached to the Declaration of Lauren Wagner Pederson filed contemporaneously herewith ("Pederson Decl.") as Exhibit "A".

---

[5]     "Rule 2004 is the basic discovery device in bankruptcy cases."  Lawrence P. King, et al., 9 Collier on Bankruptcy, ¶2004.01[1], at 2004-3 (15th ed. 2003).  Bankruptcy Rule 2004 provides in pertinent part: "On motion of any party in interest, the court may order the examination of any entity…[related] to the acts, conduct, or property or to the liabilities and financial condition of the debtor, or to any matter which may affect the administration of the debtor's estate…[t]he attendance of an entity for examination and production of documentary evidence may be compelled…for attendance at a hearing or trial."

Defendant Kivisto's trading activities and undisclosed related-party transactions are the subject, in part, of widespread, ongoing investigations by the Examiner as well as the Debtor and the Creditors Committee.  The Examiner has agreed to coordinate his investigative efforts with the Debtor's and the Creditor Committee's investigations.  According to the Preliminary Work Plan that the Examiner submitted to the Bankruptcy Court, the Examiner also has met with certain governmental agencies that are or may be investigating the collapse of SemGroup, including the SEC, the Department of Justice and the Commodity Futures Trading Commission in an effort to understand and coordinate his efforts with those investigations.  The Examiner is expected to submit a report of his findings to the Bankruptcy Court in February 2009.

### 2.    The Debtor's Investigation

The Debtor also is conducting an ongoing investigation of the actions, transactions and conduct precipitating SemGroup and its affiliates' bankruptcy filing.  Highly relevant to the case before this Court is the Debtor's notice of depositions *duces tecum* directed to Alex Stallings, SGLP's Chief Accounting Officer; Michael Brochetti, SGLP's CFO; and Kevin Foxx, SGLP's CEO and President; all of whom are defendants in this action.  *See* Complaint ¶¶ 13-15.  Also highly relevant to this case is the Debtor's request pursuant to Rule 2004 for Defendants Kivisto and Brent Cooper, the former Treasurer of SemGroup, to appear for a Rule 2004 examination and produce documents pursuant to an extensive written document request.  *See* Debtor's Motion for an Order Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure and Local Rule 2004-1 Directing the Production of Documents and Examination of Witnesses, which is attached to the Pederson Decl. as Exhibit "B".

Specifically, the Debtor's document requests command Stallings, Brochetti, Kivisto and Cooper to produce documents and communications relating, among other things, to:

1)       Any transfer of cash, property or assets from the Debtor to any of them or to any accounts, companies or entities in which they have or have had a financial or ownership interest;

2)       The Debtor's financial statements, financial reports and other documents reflecting accounts receivable, accounts payable, liabilities, expenditures, etc.;

3)       Current or former officers, directors, employees or insiders regarding possible unfair, improper, unethical or unlawful practices;

4)       The Debtor's strategies for trading, hedging and marketing activity and risk standards, risk authority letters and policies on related-party transactions, as well as any deviation from such strategies or policies;

5)       Internal investigations, audits or formal or informal review regarding any trading, marketing or hedging activity;

6)       The Debtor's credit facilities and liquidity of the Debtor, including cash positions, sources and uses of funds, letters of credit, trade credit and lines of credit;

7)       Margin payments in connection with trading or hedging and relationships with trading counterparties; and

8)       Numerous related-party transactions and related parties and specifically any demands for payment made by Debtors to Kivisto or his wife, Julie Kivisto.

Defendant SGLP has submitted a response to the Debtor's request for Rule 2004 examinations of its executives and has expressly requested permission to attend and participate in the examinations to protect its "interests against any admissions that mater be used against SGLP." *See* SGLP Response to Debtor's Motion for an Order Pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure and Local Rule 2004-1 Directing the Production of Documents and Examination of Witnesses, which is attached to the Pederson Decl. as Exhibit "C".

### 3.    The Unsecured Creditors Committee Investigation

In SemGroup's bankruptcy proceedings, the Trustee appointed members to the Creditors Committee to represent interests of the Debtor's unsecured creditors.  *See* Notice of Appointment of Committee of Unsecured Creditors, dated August 5, 2008, which is attached to the Pederson Decl. as Exhibit "D".  The Creditors Committee also is conducting an investigation of the acts, transactions and conduct relating to SemGroup's collapse.  Specifically, the Creditors Committee is reviewing various transactions consummated before the bankruptcy filing and the circumstances and relationships surrounding them, including, in pertinent part:

- The Debtor's transfer on July 16, 2008 of its NYMEX trading account to Barclays Bank and transactions involving highly-speculative crude oil trades between Kivisto (or entities he controls) and the Debtor;

- Loan transactions between Bank of America ("BOA") and an affiliated trust of Kivisto totaling $15 million and giving rise to a lawsuit initiated by BOA against Kivisto;

- Insider transactions and conduct regarding SGLP, including the IPO; the asphalt business sale; the July 16, 2008 "takeover" of SGLP; and the removal of certain directors, including Kivisto, from the Board of Directors of SGLP's General Partner; and

- The conduct of PWC in issuing unqualified reports on the Debtor's financial condition despite speculative trading practices contrary to the Debtor's representations regarding its hedging strategies and risk-control measures.

In connection with its investigation, the Creditors Committee has filed a motion with the Bankruptcy Court requesting production of documents pursuant to Rule 2004 by certain former officers and directors (including Defendants Kivisto and Wallace) and SemGroup's auditor, PWC, and lenders and financial transaction counterparties, investors and other entities that entered into transactions with the Debtor.  *See* Motion of Official Committee of Unsecured Creditors of SemCrude L.P., *et al.*, Pursuant to 11 U.S.C. §§ 105(a) and 1103(c) and Federal Rule of Bankruptcy

11

Procedure 2004, for Entry of an Order Directing Production of Documents by Certain Former Employees and Officers, Accountants, Attorneys, Lenders, Investors, and Other Entities that Transacted with the Debtors, which is attached to the Pederson Declaration as Exhibit "E".

Because the investigations of the Debtor and the Creditors Committee substantially overlap with areas that the Examiner is investigating, the Debtor and the Creditor's Committee have agreed to allow the Examiner to take the lead in deposing witnesses in ongoing Rule 2004 examinations.

### 4.    The Producers' Committee Investigation

On October 24, 2008, the Trustee, at the direction of the Bankruptcy Court, appointed the Producers' Committee to represent the interests of oil and gas producers who are owed approximately $1 billion from SemGroup and its affiliates in the Debtor's bankruptcy proceedings. Within weeks, the Producers' Committee launched its investigation in the facts and circumstances surrounding SemGroup's collapse and bankruptcy proceedings.  On November 12, 2008, the Producers' Committee filed a Rule 2004 motion with the Bankruptcy Court, seeking an order directing the Debtor to produce documents (on an expedited basis) relating to the Debtor's acts, conduct, assets, liabilities and financial condition.  *See* Motion by Official Committee of Producers' Under 11 U.S.C. § 1103 and Fed. R. Bankr. P. 2004 for Expedited Production of Documents by and Examination of Witnesses at Debtors, which is attached to the Pederson Decl. as Exhibit "F".  The Producers' Committee seeks production of certain credit agreements and communications and specific valuations, appraisal and other documents concerning assets and other interests of SemGroup and its affiliates.  *Id.*

### 5.    The SEC Investigation

On July 24, 2008, SGLP publicly disclosed in a Form 8-K filing with the SEC that the SEC was conducting an inquiry relating primarily to SGLP's disclosures respecting the liquidity issues of

SemGroup.  On October 29, 2008, SGLP further disclosed that the SEC had instituted a formal investigation and issued a subpoena to SGLP seeking documents relating to, among other things, liquidity issues of SemGroup.  SGLP stated that it is cooperating with the SEC.

### 6.     The U.S. Attorney's Office in Oklahoma City

On July 24, 2008, SGLP also publicly disclosed in a Form 8-K filing with the SEC that SGLP and its General Partner each received Grand Jury subpoenas from the United States Attorney's Office in Oklahoma City, Oklahoma.  The Grand Jury subpoenas require, among other things, that SGLP and its General Partner produce financial and other records related to SGLP's July 17, 2008 press release disclosing SemGroup's liquidity crisis.  SGLP stated that it intends to cooperate fully with the U.S. Attorney's Office.

### E.     The Impact of the PSLRA Discovery Stay on Lead Plaintiff's Ability to Participate in Ongoing Investigations

Due to the PSLRA's discovery stay, Lead Plaintiff currently cannot initiate discovery to obtain any of the materials that SGLP and other Defendants and third parties have produced, or are in the process of producing, to the Examiner, the Debtor, the Creditors Committee, the Producers' Committee, or investigating federal authorities and regulators.  Also, the Debtor, the Creditors Committee and Bank of America,[6] which is the agent for the Debtor's pre-petition and post-petition lenders, all have been granted permission to attend the Examiner's Rule 2004 depositions.  SGLP also has requested permission to attend and participate in the Examiner's depositions of its executives.  Each of the Debtor, unsecured creditors, Producers and Bank of America is adverse to SGLP or Kivisto in pending litigation or as creditors in the bankruptcy proceedings.

---

[6]     Bank of America also is adverse to Defendant Kivisto in litigation arising out of a $15 million loan that the bank issued to Kivisto and that is guaranteed by Kivisto and secured by a Kivisto affiliate's limited partnership interests in SemGroup.

Unlike these other adversaries and creditors, Lead Plaintiff and the Class are -- absent an order from this Court -- prohibited from engaging in discovery with SGLP, Kivisto and other Defendants and are prohibited from even requesting copies of discovery already produced. Moreover, Lead Plaintiff is powerless, without this Court's action, to take any measures to ensure that evidence is not lost or destroyed as SemGroup and certain of its subsidiaries proceed to liquidate and officers and directors of SGLP are ousted and investigated.  Therefore, Lead Plaintiff respectfully requests modification of the discovery stay to protect its interests as Defendants engage in discovery and proceed toward settlements in other pending litigation.

Specifically, Lead Plaintiff respectfully seeks an order modifying the PSLRA's discovery stay for the limited purpose of permitting Lead Plaintiff to obtain transcripts of Rule 2004 Examinations of SGLP executives and Kivisto and to obtain documents that Defendants and third parties have already gathered, reviewed and produced to the Examiner, the U.S. Attorney's Office, the SEC, the Creditors Committee, the Producers' Committee, and the Debtor in its Rule 2004 proceedings.[7]

## II.    LEAD PLAINTIFF'S PARTICULARIZED REQUESTS FOR DISCOVERY

Lead Plaintiff's requests for discovery are limited.  Lead Plaintiff specifically requests entry of an order permitting Lead Plaintiff to serve Defendants and other third parties that are subject to ongoing investigations and attendant document requests, depositions, interviews or Rule 2004 Examinations with requests for documents, as follows:

---

[7]    Relief from the PSLRA stay has already been granted in this case to preserve documents held by certain non-party witnesses.  By Order dated September 11, 2008, Magistrate Judge Cleary modified the PSLRA discovery stay in this case for the limited purpose of allowing Plaintiff Craig Carson ("Carson") to serve subpoenas *duces tecum* on a few non-party witnesses for the limited purpose of preserving documents that are relevant to this litigation.  Lead Plaintiff seeks to expand the scope of the relief previously granted by Magistrate Judge Cleary in this case.

> Copies of all documents produced in connection with the investigations conducted by the Examiner, the Debtor, the SEC, the U.S. Attorney's Office the Creditors Committee and the Producers Committee, including, but not limited to, all electronic data and documents gathered and produced during the course of the investigations in response to document requests, Notices of Deposition *duces tecum*, Rule 2004 Examinations or pursuant to stipulation or other voluntary means of production.

In addition, Lead Plaintiff seeks modification of the PSLRA discovery stay to obtain copies of transcripts of Rule 2004 Examinations or depositions of SGLP executives and Kivisto that are conducted by the Examiner. The Bankruptcy Court has ordered that the Examiner release transcripts of all Rule 2004 Examinations and depositions contemporaneous with his report being issued; but Lead Plaintiff seeks modification of the PSLRA stay to seek to obtain copies of SGLP executives' and Kivisto's deposition transcripts as soon as possible after such Examinations are conducted.

## III.  ARGUMENT

### A.  The Court Should Exercise Its Explicit Authority Under the PSLRA To Modify the PSLRA's Discovery Stay

The PSLRA explicitly provides courts with discretion to allow discovery to go forward prior to a judicial determination of the sufficiency of a plaintiff's complaint. *See* 15 U.S.C. § 78u-4(b)(3)(B). According to the PSLRA:

> In any private action arising under this chapter, all discovery and other proceedings shall be stayed during the pendency of any motion to dismiss, *unless the court finds upon the motion of any party that particularized discovery is necessary to preserve evidence or to prevent undue prejudice to that party.*

*Id.* (emphasis added). Courts recognize that the PSLRA stay of discovery was not intended to apply to cases where, as here, the fraud is apparent, particularly when the requested discovery already has been collected and produced in response to governmental investigations. *See, e.g., In re: FirstEnergy Corp. Sec. Litig.*, 229 F.R.D. 541, 545 (N.D. Ohio 2004) ("maintaining the discovery stay as to materials already produced to government entities does not further the policies behind the

15

PSLRA");  *see also In re Delphi Corp. Sec., Deriv. & "ERISA" Litig.*, No. 05-MD-1725, 2007 U.S. Dist. LEXIS 10408, at *13 (E.D. Mich. Feb. 15, 2007) (noting, if Congress had intended an absolute discovery stay, it would not have authorized a judicial reprieve); *In re Nat'l Century Fin. Enter., Inc. Fin. Inv. Litig.*, 347 F. Supp. 2d 538, 540 (S.D.Ohio 2004)(modifying stay for document preservation by liquidating third-party entity); *In re Royal Ahold N.V. Sec. & ERISA Litig.*, 220 F.R.D. 246, 251 (D. Md. 2004) (permitting plaintiffs to obtain documents produced to the regulators because corporate divestitures "create a reasonable concern that documents may be lost despite [defendants'] best efforts to preserve them.").

In determining whether to grant relief from the discovery stay in a particular case, courts have focused on whether the request would frustrate Congress's purposes in enacting the PSLRA – which was enacted to: (1) "to minimize the incentives for plaintiffs to file frivolous securities class actions in the hope either that the corporate defendants will settle those actions rather than bear the high cost of discovery; [(2)] or that the plaintiff will find during discovery some sustainable claim not alleged in the complaint." *In re WorldCom, Inc. Sec. Litig.*, 234 F. Supp. 2d 301, 305 (S.D.N.Y. 2002). *See also In re Labranche Sec. Litig.*, 333 F. Supp. 2d 178, 181 (S.D.N.Y. 2004); *Royal Ahold*, 220 F.R.D. at 249.  Where relief from the discovery stay will not frustrate the legislative purposes underlying the statute, courts have granted relief from the stay. [8] *See, e.g.*, *WorldCom*, 234

---

[8]    The PSLRA stay of discovery during the pendency of a motion to dismiss is an exception to the governing Federal Rules of Civil Procedure that generally require the "just, speedy and inexpensive determination of every action" and require discovery to commence "as soon as practicable." *See* Fed. R. Civ. P. Rules 1 and 26(f).  Thus, the discovery stay should be narrowly construed, especially in light of competing needs to balance concerns to protect investors and maintain confidence in the securities markets and the "general presumption for liberal discovery." *See In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d 100, 107 (D. Mass. 2002) (citing *Ameristar Jet Charter, Inc. v. Signal Composites, Inc.*, 244 F.3d 189, 192 (1st Cir. 2001) ("The Supreme Court has long recognized that the Federal Rules of Civil Procedure are to be construed liberally in favor of discovery.")).

F. Supp. 2d at 305-306 (modifying stay and holding that "[n]either rationale underlying the PSLRA's discovery stay provision is contravened by plaintiffs' application" to obtain documents Defendants produced to governmental entities) (citations omitted); *In re Lernout & Hauspie Sec. Litig.*, 214 F. Supp. 2d at 106 (permitting limited discovery where "[n]either of the perceived abuses addressed by Congress is present"); *Vacold LLC & Immunotherapy Inc. v. Cerami*, No. 00 Civ. 4024 (AGS), 2001 WL 167704, at *7 (S.D.N.Y. Feb. 16, 2001) (discovery stay modified where request "does not implicate a concern that plaintiffs are seeking discovery to coerce a settlement or to support a claim not alleged in the Complaint").

Lead Plaintiff's request for limited relief from the stay in this case does not frustrate the legislative purpose of the PSLRA. First, the action is not frivolous. By its own admission, SemGroup's multi-billion-dollar losses from an undisclosed high-risk trading strategy caused its sudden collapse into bankruptcy -- within months of raising hundreds of millions of dollars from investors, which, without more, provides strong, viable claims for violations of the federal securities laws. *See, e.g., In re Enron Corp. Sec., Deriv., & ERISA Litig.*, No. MDL-1446, Civ. No. H-01-3624, 2002 U.S. Dist. LEXIS 26261 at *30 (S.D. Tex. Aug. 16, 2002) (PSLRA was "not designed to keep secret from counsel in securities cases documents that have already become available for review by means other than discovery in the securities case"). Second, Lead Plaintiffs are not casting a broad discovery net in the hopes of catching evidence upon which to base new allegations. To the contrary, Lead Plaintiff seeks only limited discovery from Defendants to preserve evidence and prevent undue prejudice. These needs heavily weigh in favor of protecting investors in this case.

**B.     The Limited Discovery Requested by Lead Plaintiff is Appropriate Under the PSLRA**

**1.     Lead Plaintiff's Discovery Requests Are Highly Particularized**

As an initial matter, this Court must determine whether the limited discovery sought is sufficiently particularized. *See* 15 U.S.C. § 78u-4(b)(3)(B). This requirement is fulfilled when the party seeking discovery: (1) adequately specifies the target of the requested discovery, and (2) identifies the specific types of evidence falling within the scope of the requested discovery. *See Tyco*, 2000 U.S. Dist. LEXIS 11659, at *12. Also, the meaning of "particularized" in any specific case must "take into account the nature of the underlying litigation." *Royal Ahold*, 220 F.R.D. at 250. Here, Lead Plaintiff's requests, set forth above in Section II, easily satisfy the particularity requirements. Lead Plaintiff merely seeks a closed universe of precisely the same documents and information Defendants and third parties are providing to the Examiner, the Debtor and Creditors Committee and other governmental agencies similarly investigating the acts and transactions giving rise to the collapse of SemGroup.

Furthermore, the particularity requirement is satisfied if the party requests documents already collected and produced in response to governmental investigations and/or made public. *WorldCom*, 234 F.Supp.2d at 306 (particularity requirement met where plaintiffs sought "a clearly defined universe of documents, specifically certain documents which WorldCom has already produced in connection with other identified proceedings"); *Delphi*, 2007 U.S. Dist. LEXIS 10408, at **14-18 (finding requests were particularized when they sought closed universe of materials Delphi had already assembled and produced to investigators and federal authorities); *Enron*, 2002 U.S. Dist. LEXIS 26261, at **29-30 (particularity requirement met when plaintiff sought production of "all documents and materials produced by [Enron] related to any inquiry or investigation by any

18

legislative branch committee, the executive branch, including the Department of Justice and the Securities and Exchange Commission, and all transcripts of witness interviews and/or depositions related to those inquiries").  Indeed, a request that seeks documents already collected and produced in response to governmental investigations is a particularized request for discovery already provided, "and it is merely a question of keeping it from a party because of the strictures of a statute designed to prevent discovery abuse."  *Id.* at \*32.

### 2.    Lead Plaintiff and the Class Will Suffer Undue Prejudice If the Discovery Stay Is Not Lifted

Lead Plaintiff's request for partial modification of the discovery stay is necessary to prevent undue prejudice to Lead Plaintiff and other members of the Class.   Congress specifically left the issue of whether prejudice is "undue" to the courts to resolve because courts are aptly positioned to "consider all the facts and circumstances presented by each particular case."  *In re Williams Sec. Litig.*, No. 02-cv-72H (M), 2003 U.S. Dist. LEXIS 24304, at \*\*14-15 (N.D. Okla. May 22, 2003). In *Williams*, Magistrate Judge McCarthy held that to determine whether the prejudice imposed by the PSLRA stay is "unnecessary" or "unfair", the court should "consider the detriment to Lead Plaintiff, any harm or burden to Defendant, and whether lifting the stay would do violence to the purpose of the PSLRA."  *Id.* at \*15.

Under the circumstances present here, the prejudice imposed by the PSLRA delay is unnecessary, unfair and imposes an undue prejudice on plaintiffs while, as discussed above, the PSLRA's purposes are not undermined by modifying the stay to allow the limited discovery requested by Lead Plaintiff.  Lead Plaintiff need not show irreparable harm to prove undue prejudice, but rather "improper or unfair treatment" under the circumstances. *Delphi*, 2007 U.S. Dist. LEXIS 10408, at \*20.  Such improper and unfair treatment to Lead Plaintiff and the Class stems from the fact that government investigators and litigants in the bankruptcy proceeding are entitled to obtain

discovery from the Company, SemGroup, Kivisto and others, allowing these parties to evaluate their claims and, if applicable, defenses, while plaintiffs are denied the same opportunity.

Investigators and bankruptcy litigants are able to pursue potential remedies against the defendants who are common to this action, and identify and assess sources of recovery from these defendants. Lead Plaintiff and the class, on the other hand, face the danger that as these other proceedings advance, defendants may distribute finite sources of recovery to other parties to the exclusion of plaintiffs. Absent modification of the PSLRA discovery stay to put plaintiffs on the same informational footing as other parties seeking recovery from common defendants to this action, the securities plaintiffs will be only major interested party in an information vacuum, a prejudice that other courts have concluded is sufficient to warrant the modification of the PSLRA stay. *See Delphi*, 2007 U.S. Dist. LEXIS 10408, at **22-23. As noted by the court in *Delphi*:

> Lead Plaintiffs here, too, face "being left with nothing" if this litigation does not keep pace with the bankruptcy and the SEC action. Given that several of the Defendants in this case have already consented to substantial money judgments in the SEC case, Lead Plaintiffs here already face the prospect that they may not be able to recover from those Defendants in this action because of the substantial consent judgments they have taken in the SEC case. Furthermore, in the bankruptcy action, the Unsecured Creditors Committee and Delphi's Equity Committee -- two groups of claimants who are vying for substantially the same pool of funds as our Lead Plaintiffs and the Class they represent -- have already been given copies of the same records which Lead Plaintiffs seek in this action. Armed with those documents, the UCC intends to press for participation in the settlement negotiations which have already begun between Delphi and GM. Lead Plaintiffs, however, are not being given the same opportunity in this case. As the court found in *WorldCom*, under these circumstances, the Class that Lead Plaintiffs represent "faces the very real risk that it will be left to pursue its action against defendants who no longer have anything or at least as much to offer."

*Id.* at ** 23-24 (citations omitted).

Indeed, numerous courts have recognized the prejudice faced by securities plaintiffs as a consequence of the PSLRA discovery stay where there are concurrent civil and/or criminal investigations by governmental agencies against a common pool of defendants. *See Williams,* 2003

U.S. Dist. LEXIS 24304, at **14-15; *Delphi,* 2007 U.S. Dist. LEXIS 10408, at *13; *WorldCom,* 234 F. Supp. 2d at 306; *Enron,* 2002 U.S. Dist. LEXIS 26261 at *32.  In each of these cases, the courts modified the PSLRA discovery stay to allow the plaintiffs to obtain copies of documents and other information previously produced to governmental and other authorities.[9]  If the Court does not modify the stay to allow the production of documents that have already been produced to these entities, Lead Plaintiffs "would essentially be the only major interested party in the criminal and civil proceedings against [SGLP] without access to documents that currently form the core of those proceedings."  *In re Worldcom*, 234 F. Supp. 2d at 305.

### 3.    There Is Little or No Additional Burden on Defendants To Produce Documents To Lead Plaintiff That They Have Already Produced

Lead Plaintiff seeks nothing more than access to the very same documents and information that has already been produced or will be produced to the investigating parties in the Bankruptcy Proceedings and other governmental authorities and limited testimony by Defendants.  Accordingly, as the costs and expenses associated with such a production of this closed universe of information have already been incurred and absorbed by Defendants, complying with this request will place only the slightest additional burden upon Defendants.  *See Williams,* 2003 U.S. Dist. LEXIS 24304, at

---

[9]     *See also Seippel v. Sidley, Austin, Brown & Wood LLP,* No. 03 Civ. 6942 (SAS) 2005 U.S. Dist. LEXIS 2388, **4-6 (S.D.N.Y. Feb. 17, 2005) (modifying the stay as to documents that had already been produced to the government on the ground that plaintiffs would have suffered undue prejudice if discovery in their case was delayed while government investigations and other lawsuits proceeded ahead of them); *LaBranche*, 333 F. Supp. 2d at 183 (modifying stay where "the SEC and the NYSE investigated and are continuing to investigate the precise schemes alleged by Lead Plaintiffs in the Complaint"); *In re Royal Dutch/Shell Group Sec. Litig.*, No. 04-374 (JWB) 2005 U.S. Dist. LEXIS 37962, at *4 (D.N.J. Feb. 15, 2005) (lifting PSLRA discovery stay and ordering production of all documents produced by defendants to various government agencies, such as the SEC, and/or any other regulatory, legislative or governmental entity both inside and outside the United States); *FirstEnergy*, 229 F.R.D. at 545 (lifting discovery stay to permit lead plaintiffs to obtain documents already produced by First Energy to government entities); *Singer v. Nicor, Inc.*, No. 02C5168, 2003 WL 22013905, at *2 (N.D. Ill. Apr. 23, 2003) (lifting discovery stay because plaintiffs would be unfairly disadvantaged if they did not have access to documents previously provided to SEC, Illinois Attorney General, and other government agencies).

*16 (modifying stay where copying and producing to Lead Plaintiff documents already reviewed, organized and produced to others "would work no hardship on defendant"); *FirstEnergy*, 229 F.R.D. at 545 (no burden where defendants have already reviewed, compiled and produced the requested information to the government); *Singer*, 2003 U.S. Dist. LEXIS 26189, at *2 (same); *Enron,* 2002 U.S. Dist. LEXIS 26261, at *32 (rejecting defendants' argument that plaintiffs could not receive documents produced to Congress, various Congressional committees, the SEC and the DOJ, as well as transcripts of witness interviews and depositions because the discovery had already been made).

General principles of fairness dictate that Lead Plaintiff's request to modify the PSLRA discovery stay should be granted to place Lead Plaintiff on parity with other litigants, so as to prevent the type of "undue prejudice" that the PSLRA specifically gave this Court the discretion to prevent.

**4.    Partial Modification of the Discovery Stay Is Necessary To Preserve Evidence**

Finally, as demonstrated by its bankruptcy filing, SemGroup is undertaking a wide-ranging corporate reorganization to liquidate some of its assets.  This reorganization, coupled with the departure of key executives of SGLP and the reconstitution of SGLP's governing board of directors create a reasonable concern that documents may be lost, despite best efforts to preserve them.  *See Royal Ahold*, 220 F.R.D. at 251.  Importantly, SemGroup is not a party to this action.  The PSLRA discovery stay applies to discovery sought from non-parties.  *Faulkner v. Verizon Commc'ns, Inc.*, 156 F. Supp. 2d 384, 404 (S.D.N.Y. 2001) ("the PSLRA does not distinguish between discovery of non-parties and parties").  But the PSLRA document preservation provision does not apply to non-

parties.[10]   Therefore, especially in light of SemGroup's ongoing liquidation proceedings, Lead Plaintiff's request to obtain documents already assembled and produced by Defendants and third parties is imminently reasonable.  *See Nat'l Century*, 347 F. Supp. 2d at 541.  In *Nat'l Century*, plaintiffs sought discovery from Med Diversified, a non-party that was used as a "personal piggybank" by National Century Financial Enterprise ("NCFE") – the main defendant – to the detriment of shareholders.  *Id*. at 539.  Med Diversified was in the process of liquidation under the bankruptcy code.  Because Med Diversified was liquidating, the court held that "[t]here is a real danger that documents may be lost if not preserved." *Id.* at 541.

This danger is compounded by the departure of key SGLP executives like Kivisto. Defendant Kivisto has filed an objection to the Debtor's Rule 2004 request for him to produce documents and information and appear for an examination.  In his objection, filed with the Bankruptcy Court on November 7, 2008, Kivisto stated that he had been placed on administrative leave from his position as President and CEO of SGLP and was relieved of all duties with the Debtor on July 18, 2008.  *See* Thomas L. Kivisto's Response and Objection to Debtors' Motion for an Order Pursuant to Rule 2004 Federal Rules of Bankruptcy Procedure and Local Rule 2004-1 Directing the Production of Documents and Examination of Witnesses, at 2, which is attached to the Pederson Declaration as Exhibit "G.  Kivisto further stated that on or about July 21, 2008, he was "required to immediately vacate his Tulsa, Oklahoma office" and that "on October 24, 2008, he was terminated from him employment with SemGroup, allegedly for cause…" *Id.*  Importantly, Kivisto stated that

---

[10]      *See* 15 U.S.C. § 78u-4(b)(3)(C)(i) ("During the pendency of any stay of discovery pursuant to [the PSLRA]. . . any **party** to the action with actual notice of the allegations contained in the complaint shall treat all documents, data compilations (including electronically recorded or stored data), and tangible objects that are in the custody or control of such person and that are relevant to the allegations, as if they were the subject of a continuing request for production of documents from an opposing party under the Federal Rules of Civil Procedure.") (emphasis added).

he delivered all computers in his possession and provided access to and delivered documents contained in a storage facility containing the Debtor's documents located in Tulsa, Oklahoma, without specifying to whom or which SemGroup-related entity or person he had delivered the documents, computers and access to the storage facility. *Id.* at 3. Absent relief from this Court, Lead Plaintiff has no assurance that these materials "delivered" by Kivisto are being properly preserved for discovery. At a minimum, Lead Plaintiff should be allowed access, without delay, to documents and other materials delivered from or produced by Kivisto to the Debtor.

Although documents produced to the Examiner, governmental agencies and others presumably will be preserved, those documents – which likely comprise the most critical evidence in this case – will assist Lead Plaintiff to identify specific material that may be at risk of loss. Faced with SemGroup's and SGLP's shifting corporate landscape and concerns about evidentiary loss that are by no means speculative, Lead Plaintiff should not be required to rely "on the assurances of counsel that relevant evidence will be preserved." *Royal Ahold*, 220 F.R.D. at 251. The early production of core documents is the preferred method to ensure that such materials are available for the prosecution of the action. *See Lernout*, 214 F. Supp. 2d at 109. Simply put, no statutory provision or preservation order can preserve documents after they have already been destroyed or have been lost.

## CONCLUSION

For the foregoing reasons, Lead Plaintiff's Motion to Modify the PSLRA Stay of Discovery

should be granted in its entirety.

Dated: January 30, 2009                _/s/  Douglas A. Terry_

                                       **NELSON, ROSELIUS, TERRY**
                                         **O'HARA & MORTON**
                                         Douglas A. Terry (Bar Number 15855)
                                         Jason E. Roselius (Bar Number 16721)
                                         Guy R. Wood (Bar Number 15875)
                                         P. O. Box 138800
                                         Oklahoma City, Oklahoma 73113-8800
                                         Telephone: 405.705.3600
                                         Facsimile:  405.705.2573

                                         Liaison Counsel

                                         **BARROWAY TOPAZ KESSLER**
                                          **MELTZER & CHECK, LLP**
                                         Stuart L. Berman (_admitted pro hac vice_)
                                         Lauren Wagner Pederson (_admitted pro hac vice_)
                                         Sharan Nirmul (_admitted pro hac vice_)
                                         Naumon A. Amjed (_admitted pro hac vice_)
                                         280 King of Prussia Road
                                         Radnor, PA 19087
                                         Tel:  (610) 667-7706
                                         Fax:  (610)667-7056

                                         Lead Counsel

CERTIFICATE OF SERVICE

I certify that on the 30th day of January, 2009, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF Registrants:

**Electronic Mail Notice List**

- **Stacy L Acord**
  sacord@mhla-law.com,rwhitt@mhla-law.com,jwaller@mhla-law.com

- **Naumon A Amjed**
  namjed@btkmc.com,mswift@btkmc.com,ecf_filings@btkmc.com

- **Stuart L Berman**
  ecf_filings@btkmc.com

- **Gary S Chilton**
  gchilton@hcdattorneys.com

- **Stuart William Emmons**
  swe@federmanlaw.com,ngb@federmanlaw.com,law@federmanlaw.com

- **William Bernard Federman**
  wfederman@aol.com,ngb@federmanlaw.com,law@federmanlaw.com

- **Sean M Handler**
  shandler@btkmc.com,ecf_filings@btkmc.com

- **Don G Holladay**
  dholladay@holladaychilton.com,jwarner@holladaychilton.com,lspencer@holladaychilton.com

- **Heidi J Long**
  hlong@holladaychilton.com

- **Gerald Joseph Lovoi**
  GLovoi@aol.com

- **Archer Scott McDaniel**
  smcdaniel@mhla-law.com,jwaller@mhla-law.com

- **Daniel Allan McLaughlin** dmclaughlin@sidley.com

- **Timothy W Mountz**
  t.mountz@bakerbotts.com,ginger.williford@bakerbotts.com

- **Sharan Nirmul**
  snirmul@btkmc.com,ecf_filings@btkmc.com

- **Thomas E O'Brien**
  tom.obrien@bakerbotts.com,vivica.lamarche@bakerbotts.com

- **Lauren Wagoner Pederson**
  lpederson@btkmc.com

- **James Kemp Sawers**
  kemp.sawers@bakerbotts.com

- **Mary L Scott**
  mary.scott@bakerbotts.com,michele.holt@bakerbotts.com

- **Owen H. Smith** osmith@sidley.com

- **Douglas Anthony Terry**
  terry@nrtlaw.com,docketing@nrtlaw.com,rhendrickson@nrtlaw.com

- **Douglas Michael Todd**
  dmtodd@phillipsmurrah.com,pjbrown@phillipsmurrah.com

- **Joe H Witherspoon**
  joewitherspoon@cox.net,D.Malone100@yahoo.com,Michelle.quarles@sbcglobal.net

I hereby certify that on the 30th day of January, 2009, I served the same document by U.S. Postal service on the following, who are not registered participants of the ECF system:

| | |
|---|---|
| **Ramzi Abadou**<br>Coughlin Stoia Geller Rudman & Robbins LLP (San Diego)<br>655 N BROADWAY STE 1900<br>SAN DIEGO, CA 92101 | **Penny P Reid**<br>Weil Gotshal & Manges (New York)<br>767 5th Ave<br>New York, NY 10153 |
| **Moshe Balsam**<br>Weiss & Lurie (New York)<br>551 FIFTH AVE<br>NEW YORK, NY 10176 | **Steven D Resnick**<br>Barroway Topaz Kessler Meltzer & Check, LLP<br>280 KING OF PRUSSIA RD<br>RADNOR, PA 19087 |
| **Darren J Check**<br>Barroway Topaz Kessler Meltzer & Check, LLP<br>280 KING OF PRUSSIA RD<br>RADNOR, PA 19087 | **Darren J Robbins**<br>Coughlin Stoia Geller Rudman & Robbins LLP (San Diego)<br>655 N BROADWAY STE 1900<br>SAN DIEGO, CA 92101 |
| **George F Dupont**<br>Tannenbaum Helpern Syracuse & Hirschtritt LLP<br>900 THIRD AVE<br>NEW YORK, NY 10022 | **David A Rosenfeld**<br>Coughlin Stoia Geller Rudman & Robbins LLP (NY)<br>58 S SERVICE RD  STE 200<br>MELVILLE, NY 11747 |
| **Alan I Ellman**<br>Labaton Sucharow LLP<br>140 BROADWAY<br>NEW YORK, NY 10005 | **Samuel H Rudman**<br>Coughlin Stoia Geller Rudman & Robbins LLP<br>58 S SERVICE RD STE 200<br>MELVILLE, NY 11747 |

**Robert Craig Finkel**
Wolf Popper LLP
845 3rd Ave
New York, NY 10022

**Roy L Jacobs**
Roy Jacobs & Associates
60 E 42ND ST FLR 46TH
NEW YORK, NY 10165

**Christopher J Keller**
Labaton Sucharow LLP
140 BROADWAY
NEW YORK, NY 10005

**Roger W Kirby**
Kirby McInerney LLP (New York)
825 THIRD AVE
16TH FLOOR
NEW YORK, NY 10022

**Jason M Leviton**
Cohen Milstein Sellers & Toll PLLC
(Washington)
1100 NEW YORK AVE NW STE 500
WASHINGTON, DC 20005-3964

**Natalie Marie Mackiel**
Wolf Popper LLP
845 3rd Ave
New York, NY 10022

**Kim Elaine Miller**
Kahn Gauthier Swick, LLC (New York)
12 E 41ST ST
12TH FLOOR
NEW YORK, NY 10017

**Laurence D Paskowitz**
Paskowitz & Associates
60 E 42ND ST FLR 46TH
NEW YORK, NY 10165

**Alfred Robert Pietrzak**
Sidley Austin LLP (New York)
787 SEVENTH AVE
NEW YORK, NY 10019

**Ira M Press**
Kirby McInerney LLP (New York)
825 THIRD AVE
16TH FLOOR
NEW YORK, NY 10022

**Ralph A Siciliano**
Tannenbaum Helpern Syracuse &
Hirschtritt LLP
900 THIRD AVE
NEW YORK, NY 10022

**Mark D Smilow**
Weiss & Lurie (New York)
551 FIFTH AVE
NEW YORK, NY 10176

**Daniel S Sommers**
Cohen Milstein Sellers & Toll PLLC
(Washington)
1100 NEW YORK AVE NW STE 500
WASHINGTON, DC 20005-3964

**Richard L Stone**
Kirby McInerney LLP (New York)
825 THIRD AVE
16TH FLOOR
NEW YORK, NY 10022

**Mark A Strauss**
Kirby McInerney LLP (New York)
825 THIRD AVE
16TH FLOOR
NEW YORK, NY 10022

**Michael Swick**
Kahn Gauthier Swick, LLC (New York)
12 E 41ST ST
12TH FLOOR
NEW YORK, NY 10017

**Seth T Taube**
Baker Botts L.L.P. (New York City)
30 ROCKEFELLER PL
NEW YORK, NY 10112

**Steven J Toll**
Cohen Milstein Sellers & Toll PLLC
(Washington)
1100 NEW YORK AVE NW STE 500
WASHINGTON, DC 20005-3964

**Catherine A Torell**
Cohen Milstein Hausfeld & Toll PLLC
(New York)
150 E 52ND ST
30TH FLOOR
NEW YORK, NY 10022

| | |
|---|---|
| **Andrei V Rado**<br>Labaton Sucharow LLP<br>140 BROADWAY<br>NEW YORK, NY 10005<br><br>**Maureen P Reid**<br>Baker Botts L.L.P. (New York City)<br>30 ROCKEFELLER PL<br>NEW YORK, NY 10112 | **Joseph H Weiss**<br>Weiss & Lurie (New York)<br>551 FIFTH AVE<br>NEW YORK, NY 10176 |

*s/Douglas A. Terry*