## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| IN RE SEMGROUP ENERGY PARTNERS, L.P., SECURITIES LITIGATION | Case No. 08-MD-1989-GKF-FHM |

## MOTION TO DISMISS

Defendants A.G. Edwards & Sons, Inc., Citigroup Global Markets Inc., Goldman, Sachs & Co., J.P. Morgan Securities Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Raymond James & Associates Incorporated, RBC Capital Markets Corporation, SMH Capital Inc., UBS Securities LLC, and Wachovia Capital Markets LLC (collectively, the "Underwriter Defendants"), by and through their respective attorneys, respectfully submit this motion, pursuant to Rule 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, to dismiss the Corrected Amended Consolidated Class Action Complaint ("Amended Complaint") of Lead Plaintiff Harvest Fund Advisors LLC (the "Motion"). In support of the Motion, the Underwriter Defendants submit the accompanying brief, which is incorporated herein by reference, the accompanying Declaration of Daniel A. McLaughlin, dated July 22, 2009, and the exhibits attached thereto. The Underwriter Defendants respectfully request oral argument on the Motion.

WHEREFORE, the Underwriter Defendants respectfully request that this Court enter an Order dismissing the Amended Complaint with prejudice.

Dated: Tulsa, Oklahoma
    July 22, 2009

SIDLEY AUSTIN LLP

/s/ A. Robert Pietrzak
A. Robert Pietrzak *(pro hac vice)*
Daniel A. McLaughlin *(pro hac vice)*

Owen H. Smith *(pro hac vice)*
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

        -and-

McDANIEL, HIXON, LONGWELL & ACORD, PLLC
A. Scott McDaniel, OBA #16460
Stacy L. Acord, OBA #18633
320 S. Boston, Suite 700
Tulsa, Oklahoma 74103
Telephone:  (918) 382-9200
Facsimile:  (918) 382-9282

*Attorneys for Defendants A.G. Edwards & Sons, Inc., Citigroup Global Markets Inc., Goldman, Sachs & Co., J.P. Morgan Securities Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Raymond James & Associates Incorporated, RBC Capital Markets Corporation, SMH Capital Inc., UBS Securities LLC, and Wachovia Capital Markets LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| IN RE SEMGROUP ENERGY PARTNERS, L.P., SECURITIES LITIGATION | Case No.  08-MD-1989-GKF-FHM |

**MEMORANDUM OF LAW OF THE UNDERWRITER DEFENDANTS
IN SUPPORT OF MOTION TO DISMISS THE
<u>AMENDED CONSOLIDATED CLASS ACTION COMPLAINT</u>**

SIDLEY AUSTIN LLP
A. Robert Pietrzak (*pro hac vice*)
Daniel A. McLaughlin (*pro hac vice*)
Owen H. Smith (*pro hac vice*)
787 Seventh Avenue
New York, NY 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

McDANIEL, HIXON, LONGWELL
    & ACORD, PLLC
A. Scott McDaniel, OBA #16460
Stacy L. Acord, OBA #18633
320 S. Boston, Suite 700
Tulsa, Oklahoma 74103
Telephone:  (918) 382-9200
Facsimile:  (918) 382-9282

*Attorneys for Defendants A.G. Edwards & Sons, Inc., Citigroup Global Markets Inc., Goldman, Sachs & Co., J.P. Morgan Securities Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Raymond James & Associates Incorporated, RBC Capital Markets Corporation, SMH Capital Inc., UBS Securities LLC, and Wachovia Capital Markets LLC*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ....................................................................................1

ARGUMENT .........................................................................................................4

I.      HARVEST LACKS STANDING TO SUE OVER THE IPO.............................................4

II.     THE COMPLAINT FAILS TO STATE A SECTION 12(A)(2) CLAIM BY
        HARVEST AGAINST ANY UNDERWRITER DEFENDANT.......................................8

        A.  Harvest Fails To Allege That It Purchased From Any Underwriter Defendant ...........8

        B.  Section 12(a)(2) Does Not Cover Aftermarket Purchases ...........................................10

III.    HARVEST MAY NOT ASSERT SECTION 11 CLAIMS ARISING FROM
        PURCHASES FOLLOWING THE SECONDARY OFFERING.....................................11

CONCLUSION.....................................................................................................17

## TABLE OF AUTHORITIES

**CASES**

Abbey v. Computer Memories, Inc.,
    634 F. Supp. 870 (N.D. Cal. 1986) ..................................................................................13, 14

Ashcroft v. Iqbal,
    129 S. Ct. 1937 (2009) ..........................................................................................................10

Barnes v. Osofsky,
    373 F.2d 269 (2d Cir. 1967)..................................................................................................12

Caifa v. Sea Containers Ltd.,
    525 F. Supp. 2d 398 (S.D.N.Y. 2007)...................................................................................15

Congregation of Ezra Shalom v. Blockbuster, Inc.,
    504 F. Supp. 2d 151 (N.D. Tex. 2007) ..............................................................................9, 15

DaimlerChrysler Corp. v. Cuno,
    547 U.S. 332 (2006)................................................................................................................9

Dartley v. ErgoBilt Inc.,
    No. Civ. A. 398CV1442, 2001 WL 313964 (N.D. Tex. Mar. 29, 2001)..................................9

Dura Pharmaceuticals, Inc. v. Broudo,
    544 U.S. 336 (2005)................................................................................................................5

Ernst & Ernst v. Hochfelder,
    425 U.S. 185 (1976)..............................................................................................................12

Grand Lodge of Pa. v. Peters,
    550 F. Supp. 2d 1363 (M.D. Fla. 2008)................................................................................15

Guenther v. Cooper Life Sciences, Inc.,
    759 F. Supp. 1437 (N.D. Cal. 1990) .....................................................................................15

Gustafson v. Alloyd Co.,
    513 U.S. 561 (1995)..........................................................................................................11, 12

Harden v. Raffensperger, Hughes & Co.,
    933 F. Supp. 763 (S.D. Ind. 1996) .......................................................................................15

Harrison v. Leviton Mfg. Co.,
    No. 05-CV-0491, 2006 WL 2990524 (N.D. Okla. Oct. 19, 2006) ..........................................9

Herman & MacLean v. Huddleston,
    459 U.S. 375 (1983)..............................................................................................................12

In re Airgate PCS, Inc. Secs. Litig.,
    389 F. Supp. 2d 1360 (N.D. Ga. 2005)........................................................................9

In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.,
    381 F. Supp. 2d 192 (S.D.N.Y. 2004)........................................................................5

In re Authentidate Holding Corp.,
    No. 05 Civ. 5323, 2006 WL 2034644 (S.D.N.Y. July 14, 2006) ........................9, 15

In re Broderbund/Learning Co. Secs. Litig.,
    294 F.3d 1201 (9th Cir. 2002) ...................................................................................5

In re Cosi, Inc. Secs. Litig.,
    379 F. Supp. 2d 580 (S.D.N.Y. 2005)......................................................................11

In re Elscint, Ltd. Secs. Litig.,
    674 F. Supp. 374 (D. Mass. 1987) ...........................................................................13

In re FirstEnergy Corp. Sec. Litig.,
    316 F. Supp. 2d 581 (N.D. Ohio 2004).....................................................................11

In re Flag Telecom Holdings, Ltd. Secs. Litig.,
    308 F. Supp. 2d 249 (S.D.N.Y. 2004)........................................................................9

In re FleetBoston Fin. Corp. Secs. Litig.,
    253 F.R.D. 315 (D.N.J. 2008).................................................................................15

In re Initial Public Offering Sec. Litig.,
    241 F. Supp. 2d 281 (S.D.N.Y. 2003)........................................................................5

In re Initial Public Offering Secs. Litig.,
    227 F.R.D. 65 (S.D.N.Y. 2004) ...............................................................................14

In re Levi Strauss & Co. Secs. Litig.,
    527 F. Supp. 2d 965 (N.D. Cal. 2007) .....................................................................11

In re McKesson HBOC, Inc. Secs. Litig.,
    126 F. Supp. 2d 1248 (N.D. Cal. 2000) .....................................................................5

In re Mesa Airlines, Inc. Secs. Litig.,
    No. 94-690, 1996 WL 33419894 (D.N.M. May 31, 1996).....................................9, 11

In re Prestige Brands Holding, Inc.,
    No. 05 CV 06924, 2006 WL 2147719 (S.D.N.Y. July 10, 2006)..............................11

In re Quarterdeck Office Sys., Inc. Secs. Litig.,
    No. CV 92-3970, 1993 WL 623310 (C.D. Cal. Sept. 30, 1993)..............................13

In re WebSecure, Inc. Secs. Litig.,
    182 F.R.D. 364 (D. Mass. 1998)........................................................................9

Joseph v. Wiles,
    223 F.3d 1155 (10th Cir. 2000) ...................................................................8, 13

Kirkwood v. Taylor,
    590 F. Supp. 1375 (D. Minn. 1984)..............................................................13

Krim v. PCOrder.com, Inc.,
    402 F.3d 489 (5th Cir. 2005) ...........................................................12, 13, 14, 15

Lorber v. Beebe,
    407 F. Supp. 279 (S.D.N.Y. 1976)...............................................................14

Maher v. Durango Metals, Inc.,
    144 F.3d (10th Cir. 1998) ...............................................................................9

McFarland v. Memorex Corp.,
    493 F. Supp. 631 (N.D. Cal. 1980) ..............................................................15

Ramos v. Patrician Equities Corp.,
    765 F. Supp. 1196 (S.D.N.Y. 1991)..............................................................9

Randall v. Loftsgaarden,
    478 U.S. 647 (1986)........................................................................................5

Smith v. United States,
    561 F.3d 1090 (10th Cir. 2009) ....................................................................6

Tellabs, Inc. v. Makor Issues & Rights, Ltd.,
    551 U.S. 308 (2007)........................................................................................6

Thermal Techs., Inc. v. United Parcel Serv., Inc.,
    No. 08-CV-102, 2008 WL 4838681 (N.D. Okla. Nov. 5, 2008) ..............10

West Palm Beach Firefighters' Pension Fund v. Startek, Inc.,
    Civ. A. Nos. 05-cv-01265 et al., 2008 WL 879023 (D. Colo. Mar. 28, 2008)........................10

Yung v. Lee,
    432 F.3d 142 (2d Cir. 2005)..........................................................................11

STATUTES

15 U.S.C. § 77*l*...............................................................................................3, 5, 8

15 U.S.C. § 77k...............................................................................................3, 5, 12

15 U.S.C. § 77z ..................................................................................................6

**OTHER AUTHORITIES**

3 Thomas L. Hazen, <u>The Law of Securities Regulation</u> § 7.3[2][A] (6th ed. 2009) ....................13

Fed. R. Civ. P. 9(b) ..................................................................................................1

Fed. R. Civ. P. 12(b)(6)..................................................................................................1

The Underwriter Defendants[1] respectfully submit this memorandum of law in support of their motion, pursuant to Rule 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure, to dismiss the Corrected Amended Consolidated Class Action Complaint ("Complaint" or "CAC") of Lead Plaintiff Harvest Fund Advisors LLC ("Harvest").

## PRELIMINARY STATEMENT

This motion asks the Court to answer three simple questions.  First, can Harvest maintain an action for damages where it suffered no losses and actually profited from purchasing the securities at issue?  Second, can Harvest maintain a Section 12(a)(2) action against underwriters from whom it does not allege it purchased a single security in the initial offerings?  Third, can Harvest maintain a Section 11 action where none of the securities Harvest purchased can be traced to any particular registration statement?  The Underwriter Defendants respectfully submit that the answer to each of these questions is "no."

Harvest brings this putative class action to recover its alleged losses from investing in the limited partnership common units of SemGroup Energy Partners, L.P. ("SGLP"), an energy company that went public in July 2007 (the "IPO") and made a follow-on offering in February 2008 (the "Secondary Offering").  Harvest does not contend that the prospectuses and registration statements for these two offerings were inaccurate in any respect relating to matters within SGLP's own knowledge or control, e.g., its business and operations, financials, and accounting.  Rather, Harvest essentially asserts that the offering materials failed to predict that SGLP's major customer, SemGroup L.P. ("SemGroup") had engaged in speculative crude oil

---

[1]     Defendants A.G. Edwards & Sons, Inc., Citigroup Global Markets Inc., Goldman, Sachs & Co., J.P. Morgan Securities Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Raymond James & Associates Incorporated, RBC Capital Markets Corporation, SMH Capital Inc., UBS Securities LLC, and Wachovia Capital Markets LLC will be referred to herein collectively as the "Underwriter Defendants."

trading schemes that produced huge losses and a liquidity crisis triggered by a historic run-up in crude oil prices, ultimately leading SemGroup to seek bankruptcy protection.

As set forth more fully in the briefs filed by SGLP and certain of the other defendants, the Complaint as a whole fails to state a claim and fails to plead the alleged fraud with the particularity required by Rule 9(b) arising from these customer developments entirely outside of SGLP's or the underwriters' knowledge or control. Specifically, the Complaint (1) fails to plead any materially false or misleading statements in the prospectuses and registration statements in light of the cautionary disclosures contained therein; (2) fails to set forth a basis for any duty to disclose SemGroup's trades; and (3) fails to allege any basis for finding that SemGroup's trades were material to SGLP as of the dates of the IPO or Secondary Offering prospectuses and registration statements, when considered in light of the documents Harvest itself relies upon as the basis of its Complaint. In short, the Complaint is a classic example of pleading 'fraud by hindsight' by looking at SemGroup's liquidity crisis in the summer of 2008 and inferring that SGLP and SemGroup *must have known* it would happen six months or a year earlier.

Moreover, Harvest alleges fraud by SGLP and certain parties affiliated with SGLP as the basis of all its claims, and its failure to plead that fraud with the particularity required by Rule 9(b) requires dismissal of the entire Complaint. Harvest does not, however, contend that SGLP or the Underwriter Defendants knew the details of the alleged fraud entirely internal to a customer, or explain how they could have detected such a circumstance outside their control. Indeed, the Complaint alleges virtually no facts at all about the conduct of the Underwriter Defendants besides their status as underwriters and boilerplate recitation of the elements of Harvest's legal claims, which are brought against the Underwriter Defendants in their capacity as underwriters in one or both of the two offerings under Sections 11 and 12(a)(2) of the Securities

Act of 1933 ("Securities Act"), 15 U.S.C. §§ 77k & 77*l*(a)(2). If these allegations sufficed to allege securities fraud, every issuer would potentially be exposed to claims based on entirely external developments affecting customers.

Beyond the substantive deficiencies set forth in the companion motions of other defendants, Harvest does not have a claim against the Underwriter Defendants for additional reasons. First, Harvest made money on the IPO: its sworn certification submitted to this Court shows that the funds managed by Harvest purchased 25,500 units on the date of the initial offering at $22 per unit and sold the same number of units the same day at $30.49 per unit, clearing a profit of more than $200,000. Even including secondary market transactions prior to the Secondary Offering, the funds made a net profit. Having no losses, Harvest cannot pursue a claim for damages under either Section 11 or Section 12.

Second, Harvest has not pleaded a claim under Section 12(a)(2). A Section 12(a)(2) claim may only be brought against the seller of securities by "the person purchasing such security from him," but Harvest does not allege that it purchased from any of the Underwriter Defendants. Harvest may not bring suit against all the Underwriter Defendants unless it alleges (as it has not) that each underwriter sold SGLP units to Harvest. In fact, Harvest has not identified any underwriter from which it purchased SGLP units. Moreover, to the extent that Harvest asserts Section 12(a)(2) claims arising from open-market transactions, those claims should be dismissed, as Section 12(a)(2) does not apply to secondary market purchases.

Third, to the extent that Harvest asserts Section 11 claims for purchases on or after the date of the Secondary Offering – the only purchases for which Harvest has any losses – those claims must be dismissed as well. Section 11 claims may not be asserted for secondary market transactions in securities that cannot be traced to a particular registration statement. Here, as

numerous courts have held, once SGLP had made two distinct offerings into the market, at different times and at different prices, with different sets of underwriters, it was no longer possible to trace SGLP common units to either of the two distinct registration statements. Thus, the Section 11 claims based on purchases on or after that date must be dismissed because it is not possible for Harvest to prove its claims under the statutory tracing requirement imposed by the plain language of the statute and uniformly recognized in the caselaw.

## ARGUMENT

The Underwriter Defendants incorporate by reference herein the SGLP Defendants' arguments, at Points III(B)(i), III(B)(ii), and III(C), and Defendant Wallace's arguments at Points II, III, IV, and V, that the Registration Statements and prospectuses at issue were not materially false or misleading and bespoke caution, that there was no failure to disclose any information there was a duty to disclose, and that Harvest has failed to plead the alleged fraud with particularity as required by Rule 9(b).

## I.  HARVEST LACKS STANDING TO SUE OVER THE IPO

Harvest asserts claims against certain of the Underwriter Defendants arising from the IPO.[2] These claims should be dismissed. Harvest cannot pursue its Section 11 and 12 claims arising from the IPO because it made money on its investment in the IPO.

Section 11 provides a cause of action against, *inter alia*, "[e]very underwriter" of securities issued under a false or misleading registration statement on behalf of "any person acquiring such security . . . to recover such damages as shall represent the difference between the amount paid for the security" and, as relevant here, "the price at which such security shall have

---

[2]      Defendant A.G. Edwards & Sons, Inc. is sued only for its role in the IPO. Defendants Wachovia Corporation, and Wells Fargo & Company were not underwriters of either offering and move separately for dismissal.

4

been disposed of in the market before suit . . . ."  15 U.S.C. § 77k(a), (e).[3]  Section 12(a)(2)

provides a cause of action against anyone who offers or sells a security by means of a false or

misleading prospectus on behalf of "the person purchasing such security from him," 15 U.S.C.

§ 77*l*(a)(2), and provides a rescissionary measure of damages:  "a return of the consideration

paid, <u>reduced by the amount realized when [the plaintiff] sold the security</u> and by any 'income

received' on the security."  <u>Randall v. Loftsgaarden</u>, 478 U.S. 647, 656 (1986) (emphasis

added).[4]  In addition, both statutes preclude recovery where the misstatement did not cause a

loss:  Section 11 bars recovery of damages "other than the depreciation in value of such security

resulting from" the false or misleading portion of the registration statement, and recovery under

Section 12(a)(2) is limited to "the depreciation in value of the subject security resulting from"

the false or misleading portion of the prospectus.  15 U.S.C. §§ 77k(e), 77*l*(b).

     It necessarily follows that a plaintiff who sold <u>at a profit</u> cannot establish any loss, and

thus that a complaint alleging no loss must be dismissed for failure to state a claim under either

statute.  <u>See</u>, <u>e.g.</u>, <u>In re Broderbund/Learning Co. Secs. Litig.</u>, 294 F.3d 1201, 1203-05 (9th Cir.

2002); <u>In re AOL Time Warner, Inc. Sec. & "ERISA" Litig.</u>, 381 F. Supp. 2d 192, 246-47

(S.D.N.Y. 2004); <u>In re Initial Public Offering Sec. Litig.</u>, 241 F. Supp. 2d 281, 347 (S.D.N.Y.

2003); <u>In re McKesson HBOC, Inc. Secs. Litig.</u>, 126 F. Supp. 2d 1248, 1262 (N.D. Cal. 2000).

<u>See</u> <u>also</u> <u>Dura Pharmaceuticals, Inc. v. Broudo</u>, 544 U.S. 336, 345-46 (2005) (complaint should

be dismissed if it fails to allege elements of causation and damages).

     Here, Harvest plainly has no damages from its purchases in the IPO.  The Complaint

expressly incorporates by reference Harvest's sworn certification submitted in support of its

---

[3]     Section 11(e) provides alternative damages measurements for plaintiffs who continue to hold the securities or who sold them after filing suit.  <u>See</u> 15 U.S.C. § 77k(e).

[4]     Section 12(a)(2) also provides for rescission, but only where the plaintiff – unlike Harvest – still owns the security.

motion for appointment as lead plaintiff pursuant to 15 U.S.C. § 77z-1(a)(3)(A)(i).  See CAC

¶ 23.[5]  That certification, submitted by Harvest Chief Administrative Officer Anthony Merhige,

contains a schedule listing chronologically the transactions by each of three Harvest-managed

funds in SGLP limited partnership units (Schedule A), and a chart showing "Estimated Losses"

(Exhibit B).  (See McLaughlin Decl., Ex. A at Exs. A, B.)  The first fund, Harvest MLP Partners,

did not purchase any SGLP units until May 5, 2008, and so has no claims relating to the IPO.

(See id.)  The second, Harvest Infrastructure Partners Fund ("HIPF"), purchased in the aggregate

16,400 units on the day of the IPO at the initial offering price of $22/unit, and sold the same

number of shares the same day at a price of $30.49/unit, for a profit of $139,236.00.  (See id.)

The third, Harvest MLP Fund ("HMLPF"), purchased in the aggregate 9,100 units on the day of

the IPO at the initial offering price of $22/unit, and sold the same number of shares the same day

at a price of $30.49/unit, for a profit of $77,259.00.  (See id.)  Thus, none of the three funds,

individually or in the aggregate, lost money.

    Harvest's post-IPO trading in SGLP does not salvage its claims.  As discussed in more

detail infra Points II and III, secondary market transactions are not actionable under Section

12(a)(2), nor are transactions on or after the date of the Secondary Offering actionable under

Section 11.  Assuming arguendo that Harvest could assert Section 11 claims for secondary

market transactions between the dates of the IPO and the Secondary Offering, however, the

additional purchases of SGLP in the market by HIPF and HMLPF do not alter the analysis,

---

[5]    "[D]ocuments incorporated into the complaint by reference" are among the "sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss . . . ." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322-23 (2007) (citing 5B Wright & Miller, Federal Practice and Procedure § 1357 (3d ed. 2004 & Supp. 2007)). See also Smith v. United States, 561 F.3d 1090, 1098 (10th Cir. 2009) (collecting cases).

because each fund still turned a profit on its trading in SGLP prior to the date of the Secondary Offering.

As set forth on the chart appended hereto as Addendum A (which uses the trading data in the same exhibits to the Merhige certification), between August 9, 2007 and January 15, 2008, HIPF purchased an additional 19,149 units of SGLP, and sold the same number of units in transactions between August 22, 2007 and February 12, 2008, including substantial short selling of SGLP units.[6] When those trades are combined with the IPO purchases, HMLPF paid an aggregate of $899,982.95 for 35,549 units and netted an aggregate of $995,050.09 for 35,549 units sold, earning a net profit of $95,067.14.

As set forth on the chart appended hereto as Addendum B (also taken from the Merhige certification), between November, 13, 2007 and January 15, 2008, HMLPF purchased an additional 13,750 units of SGLP, and sold the same number of units in transactions between October 16, 2007 and February 12, 2008, including substantial short selling of SGLP units. When those trades are combined with the IPO purchases, HMLPF paid an aggregate of $585,659.50 for 22,850 units and netted an aggregate of $636,913.00 for 22,850 units sold, earning a net profit of $51,253.50.

Because the three Harvest-managed funds, either individually or in the aggregate, have no losses from trading following the IPO, they may not assert claims deriving from the IPO. Accordingly, Counts I and II should be dismissed as to all claims asserted against the Underwriter Defendants arising from the IPO.

---

[6]     It is questionable at best whether a Section 11 or 12 claim could be asserted by a short seller such as Harvest.

## II.  THE COMPLAINT FAILS TO STATE A SECTION 12(A)(2) CLAIM BY HARVEST AGAINST ANY UNDERWRITER DEFENDANT

Harvest asserts claims under Section 12(a)(2) against the Underwriter Defendants, apparently including claims for damages for (1) its purchases on the dates of the IPO and Secondary Offering and (2) its subsequent purchases in the market.[7]  All these claims should be dismissed.  Harvest's claims arising from the IPO and Secondary Offering fail because Harvest can only sue its immediate seller but fails to allege which, if any, of the Underwriter Defendants it purchased from.  And its claims from purchases in the secondary market are not actionable under Section 12(a)(2), which covers only purchases in an offering requiring the delivery of a prospectus.

### A.  Harvest Fails To Allege That It Purchased From Any Underwriter Defendant

As noted above, Section 12(a)(2) provides an express right of action against a person who "offers or sells a security … by means of a prospectus" containing misrepresentations, and provides that such a seller "shall be liable … to the person purchasing such security from him … ."  15 U.S.C. §77*l*(a)(2) (emphasis added).  "This is an express privity requirement, giving a cause of action only to individuals who purchase securities directly from a person who sells the securities by means of a prospectus."  Joseph v. Wiles, 223 F.3d 1155, 1161 (10th Cir. 2000) (emphasis added).  In light of this privity requirement, a Section 12(a)(2) plaintiff must allege

---

[7]     The Complaint is ambiguous as to whether Harvest seeks damages under Sections 11 and 12 on its secondary market transactions. Compare CAC ¶ 1 (seeking to represent a class of purchasers of "common units issued pursuant or traceable [to] the Registration Statements and Prospectuses" for the IPO and Secondary Offering) (emphasis added), ¶ 317 (same), and ¶¶ 340, 345 (asserting Section 12 claim for purchases of "securities offered pursuant to the Prospectuses" for the two offerings) (emphasis added) with ¶¶ 326, 329, 331-33, 336-37 (asserting Section 11 claim for all purchasers of "SGLP securities issued in the IPO or the Secondary Offering") (emphasis added), and ¶¶ 338, 344, 347 (same, Section 12 claim). For the purposes of this motion, the Underwriter Defendants assume that Harvest seeks damages under both statutes on all its purchases.

that it purchased securities from a named defendant, and does not have a cause of action against

a defendant who was not a "seller" as to that plaintiff.  See, e.g., In re Airgate PCS, Inc. Secs.

Litig., 389 F. Supp. 2d 1360, 1367 (N.D. Ga. 2005); Dartley v. ErgoBilt Inc., No. Civ. A.

398CV1442, 2001 WL 313964, at *2 (N.D. Tex. Mar. 29, 2001); In re WebSecure, Inc. Secs.

Litig., 182 F.R.D. 364, 368-69 (D. Mass. 1998).  Conclusory allegations aimed at all defendants

in a complaint are no substitute for factual allegations as to which defendants were sellers as to

the particular plaintiff.  See Maher v. Durango Metals, Inc., 144 F.3d, 1307 (10th Cir. 1998)

(dismissing Section 12(a)(2) claim on Rule 12(b)(6) motion).  At a minimum, a securities class

action complaint under Section 12(a)(2) must allege that some named plaintiff has standing to

sue each named defendant.  See In re Flag Telecom Holdings, Ltd. Secs. Litig., 308 F. Supp. 2d

249, 257 (S.D.N.Y. 2004); WebSecure, 182 F.R.D. at 369; In re Mesa Airlines, Inc. Secs. Litig.,

No. 94-690, 1996 WL 33419894, at *10 (D.N.M. May 31, 1996).[8]

Here, Harvest – the only plaintiff named in the Complaint – fails to identify any

defendant from whom it purchased SGLP units.  Harvest alleges that "[t]he Underwriter

Defendants were sellers, offerors, and/or solicitors of sales of securities offered pursuant to

Prospectuses in the IPO and Secondary Offering" and that "[t]he Underwriter Defendants are

sellers within the meaning of the Securities Act because they (a) transferred title to Lead Plaintiff

and other members of the class who purchased SGLP common units; (b) transferred title of

---

[8]    "The named representative of the class must have standing to bring a lawsuit or the court
must dismiss the proposed class action." Harrison v. Leviton Mfg. Co., No. 05-CV-0491,
2006 WL 2990524, at *4 (N.D. Okla. Oct. 19, 2006) (citing Rector v. City and County of
Denver, 348 F.3d 935, 949-50 (10th Cir. 2003)). Moreover, "a plaintiff must demonstrate
standing for each claim he seeks to press." DaimlerChrysler Corp. v. Cuno, 547 U.S. 332,
352 (2006). See also Congregation of Ezra Shalom v. Blockbuster, Inc., 504 F. Supp. 2d
151, 159-60 (N.D. Tex. 2007); In re Authentidate Holding Corp., No. 05 Civ. 5323, 2006
WL 2034644, at *7 (S.D.N.Y. July 14, 2006); Ramos v. Patrician Equities Corp., 765 F.
Supp. 1196, 1199 (S.D.N.Y. 1991).

SGLP common units to other underwriters and/or broker-dealers that sold those securities as agents for the Underwriter Defendants; and (c) solicited the purchase of SGLP common units by Lead Plaintiff and other members of the Class . . . ."  CAC ¶¶ 342-43.  These are precisely the sort of rote, boilerplate assertions the Supreme Court has held are not entitled to be credited on a motion to dismiss:  "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Ashcroft v. Iqbal</u>, 129 S. Ct. 1937, 1949-50 (2009).  "[T]he complaint must give the court reason to believe that <u>this</u> plaintiff has a reasonable likelihood of mustering factual support for <u>these</u> claims."  <u>Thermal Techs., Inc. v. United Parcel Serv., Inc.</u>, No. 08-CV-102, 2008 WL 4838681, at *2 (N.D. Okla. Nov. 5, 2008) (Frizzell, J.) (emphasis in original; quoting <u>Robbins v. Oklahoma</u>, 519 F.3d 1242, 1247 (10th Cir. 2008)).  In the absence of factual allegations showing which defendant or defendants – if any – sold securities to Harvest, Harvest has not stated a cause of action against any Underwriter Defendant.[9]

Because Harvest can sue only its seller, and because it has failed to plead any facts or identify any seller, Count II should be dismissed in its entirety as to the Underwriter Defendants.

### B.  <u>Section 12(a)(2) Does Not Cover Aftermarket Purchases</u>

To the extent that Harvest seeks to assert Section 12(a)(2) claims arising from its purchase of SGLP units in the secondary market, those claims should be dismissed.  Only investors who purchased the securities <u>in</u> a public offering have standing to sue under Section 12(a)(2).

---

[9]     Indeed, based on the bare recitals in the Complaint, it is not apparent that Harvest purchased from <u>any</u> of the named defendants. Lehman Brothers Inc., one of the underwriters of the IPO and one of the lead underwriters of the Secondary Offering, is not a defendant here, having been dropped as a defendant following its liquidation. <u>See</u> CAC ¶ 58. Lehman sold 8.7% of the SGLP units offered in the IPO and 27.5% of those sold in the Secondary Offering. (<u>See</u> McLaughlin Decl., Ex. B at 156, Ex. C at 149.)

It is well-settled that Section 12(a)(2) (formerly Section 12(2)) applies only to sales of securities in public offerings, not to secondary market transactions.  See Gustafson v. Alloyd Co., 513 U.S. 561, 578 (1995) ("The intent of Congress and the design of the statute require that § 12(2) liability be limited to public offerings.").  Since Gustafson, courts have held that no claim can be pursued under Section 12(a)(2) where the complaint failed to plead facts demonstrating that the plaintiffs purchased their securities directly in a public offering requiring delivery of a prospectus – facts that cannot be pleaded for secondary market transactions.  See Mesa, 1996 WL 33419894, at *10 (dismissing claims of plaintiffs who did not purchase in initial offering).[10]

Accordingly, Harvest may not assert a Section 12(a)(2) claim arising from secondary market transactions, and Count II should be dismissed as to all claims against the Underwriter Defendants seeking damages for alleged losses derived from such transactions.

## III. HARVEST MAY NOT ASSERT SECTION 11 CLAIMS ARISING FROM PURCHASES FOLLOWING THE SECONDARY OFFERING

To the extent that Harvest seeks damages under Section 11 for purchases on or after the date of the Secondary Offering, those claims, too, should be dismissed.  Section 11 claims require that the plaintiff trace the securities purchased back to a particular registration statement. Once, as here, securities have been issued under multiple registration statements and those securities are fungible and commingled in the market, it ceases to be possible to do so, as

---

[10]     See also Yung v. Lee, 432 F.3d 142, 147-50 (2d Cir. 2005); In re Levi Strauss & Co. Secs. Litig., 527 F. Supp. 2d 965, 982-83 (N.D. Cal. 2007); In re Prestige Brands Holding, Inc., No. 05 CV 06924, 2006 WL 2147719, at *9 (S.D.N.Y. July 10, 2006); In re Cosi, Inc. Secs. Litig., 379 F. Supp. 2d 580, 589 (S.D.N.Y. 2005); In re FirstEnergy Corp. Sec. Litig., 316 F. Supp. 2d 581, 602 (N.D. Ohio 2004).

numerous courts have held. Accordingly, SGLP units purchased on or after the date of the Secondary Offering cannot support a Section 11 claim.[11]

Section 11 was designed to provide "stringent penalties" for false or misleading registration statements, but Congress did not thereby "provide a remedy for other than the particular shares registered" in a particular offering. Barnes v. Osofsky, 373 F.2d 269, 272 (2d Cir. 1967) (Friendly, J.). Congress thus limited the Section 11 cause of action for the purchase of securities issued under a false or misleading registration statement to "any person acquiring such security . . . ." 15 U.S.C. § 77k(a) (emphasis added). The plain language of Section 11, referring to purchasers of "such security," limits standing to those purchasers who can trace title to a particular registration statement and thus can prove that they have purchased a security issued under that registration statement. See Krim v. PCOrder.com, Inc., 402 F.3d 489, 496-500 (5th Cir. 2005). The limitations in Sections 11(e) & (g), capping the total liability of underwriters by reference to the total amount underwritten in a particular offering and the price at which securities were originally offered, "point in the direction of limiting § 11 to purchasers of the registered shares, since otherwise their recovery would be greatly diluted when the new issue was small in relation to the trading in previously outstanding shares." Barnes, 373 F.2d at 272 (citing 15 U.S.C. §§ 77k(e) & (g)).[12] Thus, courts have rejected as "rash" the argument that "the substantive standard under Section 11 is somewhat less demanding than a requirement that the claimant be a purchaser of a determinate number of new shares [i.e., shares issued under the

---

[11]     Three of the underwriters, Goldman, Sachs & Company, J.P. Morgan Securities, Inc., and UBS Securities, LLC, participated only in SGLP's Secondary Offering, and thus would be dismissed from this action entirely in the event that the Court dismisses the Section 11 and 12 claims for purchases on or after the date of the Secondary Offering.

[12]     The Supreme Court has noted repeatedly Congress' decision to place strict procedural limitations on Section 11 and 12 claims. See, .e.g., Gustafson, 513 U.S. at 578; Herman & MacLean v. Huddleston, 459 U.S. 375, 383-84 (1983); Ernst & Ernst v. Hochfelder, 425 U.S. 185, 208-11 (1976).

most recent registration statement] at a determinate price." <u>In re Elscint, Ltd. Secs. Litig.</u>, 674

F. Supp. 374, 380-382 (D. Mass. 1987).

      The Tenth Circuit is among those Circuits that require an aftermarket purchaser to

establish its standing to pursue a claim under section 11 by proving that "<u>the securities he bought</u>

<u>were those sold in an offering covered by the false registration statement</u>." <u>Joseph</u>, 223 F.3d at

1159 (emphasis added). The court in <u>Joseph</u>, for example, found that secondary market

purchases could be traced to a debenture offering because there had only been one offering, so

all debentures in the market were by definition traceable to that offering. <u>Id</u>. at 1160. However,

where securities in the market have originated with multiple offerings and been commingled,

courts have "construe[d] the tracing requirement strictly." 3 Thomas L. Hazen, <u>The Law of</u>

<u>Securities Regulation</u> § 7.3[2][A] (6th ed. 2009). The courts that permit tracing have insisted

that Congress' limitation of the class of plaintiffs to those purchasing the shares originally issued

in connection with a particular registration statement requires a plaintiff to bear the burden of

pleading and proving that their shares are "those sold in an offering covered by the false

registration statement." <u>Joseph</u>, 223 F.3d at 1159. Thus, for example, courts have rejected

probabilistic models for tracing shares even when more than 90% of the shares on the market

were issued under the same registration statement. <u>Krim</u>, 402 F.3d at 496-98. "'[C]ourts have

uniformly interpreted § 11 as requiring more than a showing that a plaintiff's stock 'might' have

come from the relevant offering.'" <u>In re Quarterdeck Office Sys., Inc. Secs. Litig.</u>, No. CV 92-

3970, 1993 WL 623310, at *3 (C.D. Cal. Sept. 30, 1993) (<u>quoting</u> <u>Abbey v. Computer</u>

<u>Memories, Inc.</u>, 634 F. Supp. 870, 874 (N.D. Cal. 1986)).[13]

---

[13]    <u>See also</u> <u>Kirkwood v. Taylor</u>, 590 F. Supp. 1375, 1382-83 (D. Minn. 1984) (rejecting
"short cuts" as a substitute for proving tracing; "Plaintiffs' assumption that all 'new'
shares should be deemed preserved or incorporated into the more recent stock certificates

In modern securities markets, where securities are transferred not by means of individual paper certificates but by book entries of fungible ownership interests on the electronic records of clearinghouses, the task of tracing securities in the market is effectively impossible once there is more than one offering.  See, e.g., Krim, 402 F.3d at 498.[14]  Nonetheless, "[i]t is not within [the courts'] purview to rewrite the statute to take account of changed conditions."  Id.  Adherence to the statutory scheme is necessary because tracing to the specific initial offering is crucial to the ability to determine damages and loss; as discussed supra Point I, Section 11(e) contains a detailed damages formula keyed to the offering price of the securities.  Here, SGLP common units were sold at two different prices ($22 for the IPO and $23.90 for the Secondary Offering), so whether a plaintiff could recover damages at all, or in what amount, will depend on which offering the purchases are traced to.  HMLPF, for example, purchased 25,200 units on February 14, 2008 (the day of the Secondary Offering) at $23.78, and 10,500 the same day at $23.81 – in both cases prices above the IPO price but below the Secondary Offering price.  The available damages for such purchases, being capped at the decline from the initial offering price, would depend on which registration statement they are traced to.  Yet there is nothing in the Complaint to indicate a plausible theory of how such a distinction could ever be made.  Once the Secondary Offering was issued, there would be no way to distinguish fungible units issued in one offering from another.

---

is but a more sophisticated version of the argument that, since plaintiffs cannot tell whether they have old or new shares, those shares should be treated as new and plaintiffs should be granted standing."), aff'd, 760 F.2d 272 (8th Cir. 1985); Lorber v. Beebe, 407 F. Supp. 279, 286-87 (S.D.N.Y. 1976) (citing Barnes, 373 F.2d at 273 n. 2).

[14]  See also In re Initial Public Offering Secs. Litig., 227 F.R.D. 65, 117-18 (S.D.N.Y. 2004), rev'd in part on other grounds, 471 F.3d 24 (2d Cir. 2006); Abbey, 634 F. Supp. at 873-75.

Moreover, tracing is also essential to the determination of liability in the first instance. Here, SGLP common units were issued under two separate registration statements – the IPO and the Secondary Offering – containing different disclosures, issued at different times, and underwritten by different syndicates for the purpose of financing different corporate transactions. Given that the alleged fraud involved the risks created by SemGroup's trading in light of conditions in the crude oil market, the analysis of what facts were material and required to be disclosed were not necessarily the same as of the dates of the two offerings.

Under the circumstances of this case, there is simply no way for Harvest to establish tracing for purchases on or after the date of the Secondary Offering, and indeed there is no set of facts under which Harvest could trace the units purchased in such transactions to a particular registration statement. Dismissal must follow as to all claims based on purchases on or after the Secondary Offering date. See, e.g., West Palm Beach Firefighters' Pension Fund v. Startek, Inc., Civ. A. Nos. 05-cv-01265 et al., 2008 WL 879023, at *7 (D. Colo. Mar. 28, 2008) (dismissing claims on tracing grounds). Accord Krim, 402 F.3d at 496-500; Grand Lodge of Pa. v. Peters, 550 F. Supp. 2d 1363, 1373-76 (M.D. Fla. 2008); Caifa v. Sea Containers Ltd., 525 F. Supp. 2d 398, 407 (S.D.N.Y. 2007), aff'd, 2009 WL 1383457 (2d Cir. May 19, 2009); Congregation of Ezra Shalom, 504 F. Supp. 2d at 159-60; Authentidate, 2006 WL 2034644, at *7; McFarland v. Memorex Corp., 493 F. Supp. 631, 641-42 (N.D. Cal. 1980), reconsidered on other grounds, 581 F. Supp. 878 (N.D. Cal. 1984).[15]

---

[15]     See also In re FleetBoston Fin. Corp. Secs. Litig., 253 F.R.D. 315, 345-51(D.N.J. 2008); Harden v. Raffensperger, Hughes & Co., 933 F. Supp. 763, 766-69 (S.D. Ind. 1996); Guenther v. Cooper Life Sciences, Inc., 759 F. Supp. 1437, 1441 (N.D. Cal. 1990).

Where the facts as pleaded make it impossible for a plaintiff to prove a claim, that claim must be dismissed.  Here, Count I should be dismissed as to all transactions on or after the date of the Secondary Offering.

## **CONCLUSION**

Because Harvest suffered no losses, cannot allege that it purchased a single security from the Defendatnts in the initial offerings, and cannot trace its purchases to any particular registration statement, its claims must be dismissed.  For the reasons set forth above as well as those incorporated by reference herein, the Underwriter Defendants respectfully submit that Counts I and II of the Complaint should be dismissed as to each of the Underwriter Defendants with prejudice.

Dated: Tulsa, Oklahoma
          July 22, 2009

SIDLEY AUSTIN LLP

/s/ A. Robert Pietrzak
A. Robert Pietrzak *(pro hac vice)*
Daniel A. McLaughlin *(pro hac vice)*
Owen H. Smith *(pro hac vice)*
787 Seventh Avenue
New York, New York 10019
Telephone: (212) 839-5300
Facsimile: (212) 839-5599

        -and-

McDANIEL, HIXON, LONGWELL & ACORD, PLLC

A. Scott McDaniel, OBA #16460
Stacy L. Acord, OBA #18633
320 S. Boston, Suite 700
Tulsa, Oklahoma 74103
Telephone:  (918) 382-9200
Facsimile:  (918) 382-9282

*Attorneys for Defendants A.G. Edwards & Sons, Inc., Citigroup Global Markets Inc., Goldman, Sachs & Co., J.P. Morgan Securities Inc., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Raymond James & Associates Incorporated, RBC Capital Markets Corporation, SMH Capital Inc., UBS Securities LLC, and Wachovia Capital Markets LLC*

Addendum A -
Harvest Infrastructure Partners Trading In IPO Shares

| Harvest Infrastructure Partners Fund | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Date | Buy | Sell | Net to Date | Buy$ | Sell$ | Buy $$ | Sell $$ | Net $ To Date |
| 7/18/2007 | 765 | | 765 | $ 22.00 | | $ 16,830.00 | $ - | $ (16,830.00) |
| 7/18/2007 | 947 | | 1,712 | $ 22.00 | | $ 20,834.00 | $ - | $ (37,664.00) |
| 7/18/2007 | 2,258 | | 3,970 | $ 22.00 | | $ 49,676.00 | $ - | $ (87,340.00) |
| 7/18/2007 | 4,920 | | 8,890 | $ 22.00 | | $ 108,240.00 | $ - | $ (195,580.00) |
| 7/18/2007 | 947 | | 9,837 | $ 22.00 | | $ 20,834.00 | $ - | $ (216,414.00) |
| 7/18/2007 | 3 | | 9,840 | $ 22.00 | | $ 66.00 | $ - | $ (216,480.00) |
| 7/18/2007 | 6,560 | | 16,400 | $ 22.00 | | $ 144,320.00 | $ - | $ (360,800.00) |
| IPO Buys | 16,400 | | 16,400 | | | $ 360,800.00 | | $ (360,800.00) |
| IPO Sale 7/18/2007 | | 16,400 | - | | $ 30.49 | $ - | $ 500,036.00 | $ 139,236.00 |
| | | | | | | | | |
| 8/9/2007 | 399 | | 399 | $ 27.55 | | $ 10,992.45 | | $ 128,243.55 |
| 8/22/2007 | | 399 | - | | $ 29.91 | $ - | $ 11,934.09 | $ 140,177.64 |
| 10/16/2007 | | 500 | (500) | | $ 30.05 | $ - | $ 15,025.00 | $ 155,202.64 |
| 10/17/2007 | | 250 | (750) | | $ 30.05 | $ - | $ 7,512.50 | $ 162,715.14 |
| 10/18/2007 | | 2,000 | (2,750) | | $ 29.99 | $ - | $ 59,980.00 | $ 222,695.14 |
| 10/19/2007 | | 250 | (3,000) | | $ 29.96 | $ - | $ 7,490.00 | $ 230,185.14 |
| 10/22/2007 | | 750 | (3,750) | | $ 29.95 | $ - | $ 22,462.50 | $ 252,647.64 |
| 11/13/2007 | 300 | | (3,450) | $ 27.91 | | $ 8,373.00 | $ - | $ 244,274.64 |
| 11/29/2007 | 2,750 | | (700) | $ 26.49 | | $ 72,847.50 | $ - | $ 171,427.14 |
| 11/30/2007 | 600 | | (100) | $ 26.85 | | $ 16,110.00 | $ - | $ 155,317.14 |
| 12/31/2007 | 100 | | - | $ 27.60 | | $ 2,760.00 | $ - | $ 152,557.14 |
| 1/15/2008 | 15,000 | | 15,000 | $ 28.54 | | $ 428,100.00 | $ - | $ (275,542.86) |
| 2/5/2008 | | 660 | 14,340 | | $ 25.75 | | $ 16,995.00 | $ (258,547.86) |
| 2/6/2008 | | 100 | 14,240 | | $ 25.99 | | $ 2,599.00 | $ (255,948.86) |
| 2/12/2008 | | 14,240 | - | | $ 24.65 | | $ 351,016.00 | $ 95,067.14 |
| TOTAL | 35,549 | 35,549 | - | | | $ 899,982.95 | $ 995,050.09 | $ 95,067.14 |

Source: Harvest Certification

Addendum B -
Harvest MLP Fund Trading In IPO Shares

| Harvest MLP Fund | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Date | Buy | Sell | Net to Date | Buy$ | Sell$ | Buy $$ | Sell $$ | Net $ To Date |
| 7/18/2007 | 3,640 | | 3,640 | $ 22.00 | | $ 80,080.00 | $ - | $ (80,080.00) |
| 7/18/2007 | 525 | | 4,165 | $ 22.00 | | $ 11,550.00 | $ - | $ (91,630.00) |
| 7/18/2007 | 525 | | 4,690 | $ 22.00 | | $ 11,550.00 | $ - | $ (103,180.00) |
| 7/18/2007 | 3 | | 4,693 | $ 22.00 | | $ 66.00 | $ - | $ (103,246.00) |
| 7/18/2007 | 424 | | 5,117 | $ 22.00 | | $ 9,328.00 | $ - | $ (112,574.00) |
| 7/18/2007 | 2,730 | | 7,847 | $ 22.00 | | $ 60,060.00 | $ - | $ (172,634.00) |
| 7/18/2007 | 1,253 | | 9,100 | $ 22.00 | | $ 27,566.00 | $ - | $ (200,200.00) |
| IPO Buys | 9,100 | | 9,100 | | | $ 200,200.00 | | $ (200,200.00) |
| IPO Sale 7/18/2007 | | 9,100 | - | | $30.49 | $ - | $ 277,459.00 | $ 77,259.00 |
| 10/16/2007 | | 500 | (500) | | $ 30.05 | $ - | $ 15,025.00 | $ 92,284.00 |
| 10/17/2007 | | 250 | (750) | | $ 30.05 | $ - | $ 7,512.50 | $ 99,796.50 |
| 10/18/2007 | | 2,000 | (2,750) | | $ 29.99 | $ - | $ 59,980.00 | $ 159,776.50 |
| 10/19/2007 | | 250 | (3,000) | | $ 29.96 | $ - | $ 7,490.00 | $ 167,266.50 |
| 10/22/2007 | | 750 | (3,750) | | $ 29.95 | $ - | $ 22,462.50 | $ 189,729.00 |
| 11/13/2007 | 200 | | (3,550) | $ 27.91 | | $ 5,582.00 | $ - | $ 184,147.00 |
| 11/29/2007 | 2,750 | | (800) | $ 26.49 | | $ 72,847.50 | $ - | $ 111,299.50 |
| 11/30/2007 | 600 | | (200) | $ 26.85 | | $ 16,110.00 | $ - | $ 95,189.50 |
| 12/31/2007 | 200 | | - | $ 27.60 | | $ 5,520.00 | $ - | $ 89,669.50 |
| 1/15/2008 | 10,000 | | 10,000 | $ 28.54 | | $ 285,400.00 | $ - | $ (195,730.50) |
| 2/5/2008 | | 440 | 9,560 | | $ 25.75 | $ - | $ 11,330.00 | $ (184,400.50) |
| 2/12/2008 | | 9,560 | - | | $ 24.65 | $ - | $ 235,654.00 | $ 51,253.50 |
| TOTAL | 22,850 | 22,850 | | | | $ 585,659.50 | $ 636,913.00 | $ 51,253.50 |

Source: Harvest Certification

**CERTIFICATE OF SERVICE**

I certify that on the 22nd day of July, 2009, I electronically transmitted the attached document, together with the Declaration of Daniel A. McLaughlin, to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

| | |
|---|---|
| Stuart William Emmons | swe@federmanlaw.com |
| William Bernard Federman | Wfederman@aol.com |
| Federman & Sherwood | |
| Douglas A. Terry | terry@nrtlaw.com |
| Nelson Roselius Terry O'Hara & Morton | |
| Naumon A. Amjed | namjed@btkmc.com |
| Sean M. Handler | shandler@btkmc.com |
| Sharan Nirmul | snirmul@btkmc.com |
| Stuart L. Berman | ecf_filings@btkmc.com |
| Lauren Wagner Pederson | lpederson@btkmc.com |
| Gregory M. Castaldo | gcastaldo@btkmc.com |
| Michelle M. Newcomer | mnewcomer@btkmc.com |
| Barroway Topaz Kessler Meltzer & Check, LLP | |
| Gerald Joseph Lovoi | glovoi@aol.com |
| Don G. Holladay | dholladay@holladaychilton.com |
| Gary S. Chilton | gchilton@hcdattorneys.com |
| Heidi J. Long | hlong@holladaychilton.com |
| Holladay & Chilton, PLLC | |
| Douglas M. Todd | dmtodd@phillipsmurrah.com |
| Phillips Murrah PC | |
| John H. Tucker | jhtucker@rhodesokla.com |
| Colin H. Tucker | chtucker@rhodesokla.com |
| Randall E. Long | rlong@rhodesokla.com |
| Clark O. Brewster | cbrewster@brewsterlaw.com |
| Mark B. Jennings | mjennings@brewsterlaw.com |
| Brewster & DeAngelis, PLLC | |
| Edwin T. Aradi | earadi@akingump.com |
| Orrin Lea Harrison III | oharrison@akingump.com |
| James K. Secrest, II | jsecrest@secresthill.com |
| Edward J. Main | emain@secresthill.com |
| Secrest, Hill & Butler | |
| Bruce W. Collins | bcollins@ccsb.com |
| Emily Coleman McCall | emccall@ccsb.com |
| Carolyn R. Raines | craines@ccsb.com |
| Carrington, Coleman, Sloman & Blumenthal, LLP | |
| Michael R. Smith | msmith@kslaw.com |
| B. Warren Pope | wpope@kslaw.com |
| King & Spalding LLP | |
| Michael W. Youtt | myoutt@kslaw.com |
| William R. Burns | bburns@kslaw.com |
| King & Spalding LLP | |
| Paul R. Bessette | bessettep@gtlaw.com |
| Jesse Z. Weiss | weissjz@gtlaw.com |
| Kimberly G. Davis | daviskg@gtlaw.com |
| Michael J. Biles | bilesm@gtlaw.com |

Greenberg Traurig, LLP
Wm. Brad Heckenkemper                    brad@barrowgrimm.com
Barrow & Grimm, P.C.
Frederic Dorwart                         fdorwart@fdlaw.com
Nora O'Neill                             noneill@fdlaw.com
Frederic Dorwart Lawyers


     I also hereby certify that I served the attached document, together with the Declaration of Daniel A. McLaughlin, by United States Postal Service, proper postage paid, on the following who are not registered participants of the ECF System:

Laurence D. Paskowitz                    Roy L. Jacobs
Paskowitz & Associates                   Roy Jacobs & Associates
60 E. 42nd Street, Floor 46th            60 E. 42nd Street, Floor 46th
New York, NY 10165                       New York, NY 10165


Joseph H. Weiss                          Darren J. Robbins
Mark D. Smilow                           Ramzi Abadon
Moshe Balsam                             Coughlin Stoia Geller
Weiss & Lurie                            Rudman & Robbins LLP
551 Fifth Ave.                           655 N. Broadway, Suite 1900
New York, NY 10176                       San Diego, CA 92101


David A. Rosenfeld                       Natalie Marie Mackiel
Samuel H. Rudman                         Robert Craig Finkel
Coughlin Stoia Geller Rudman & Robbins LLP   Wolf Popper LLP
58 S. Service Road, Suite 200            845 3rd Ave.
Melville, NY 11747                       New York, NY 10022


Daniel S. Sommers                        Kim E. Miller
Jason M. Leviton                         Michael Swick
Steven J. Toll                           Kahn Gauthier Swick, LLC
Catherine A. Torell                      12 East 41st Street, 12th Floor
Cohen Milstein Sellers & Toll PLLC       New York, NY 10017
11100 New York Ave., Suite 500
Washington, DC 20005-3964


Ira M. Press                             Penny P. Reid
Mark A. Strauss                          Weil Gotshal & Manges
Richard L. Stone                         767 5th Ave.
Roger W. Kirby                           New York, NY 10153
Kirby McInerney LLP
825 Third Ave., 16th Floor
New York, NY 10022

Alan I. Ellman                    Darren Check
Christopher J. Keller             Steven D. Resnick
Andrei V. Rado                    Barroway Topaz Kessler Meltzer & Check LLP
Labaton Sucharow LLP              280 King of Prussia Road
140 Broadway                      Radnor, PA 19087
New York, NY 10005


  /s/ Owen H. Smith