**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

|  |  |
|---|---|
| IN RE SEMGROUP ENERGY PARTNERS, L.P., SECURITIES LITIGATION | CASE NO. 08-MD-1989-GKF-FHM |

**LEAD PLAINTIFF'S OMNIBUS MEMORANDUM OF LAW IN
OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS LEAD
PLAINTIFF'S SECURITIES ACT OF 1933 CLAIMS**

**NELSON, ROSELIUS, TERRY
O'HARA & MORTON**
Douglas A. Terry (Bar Number 15855)
Jason E. Roselius (Bar Number 16721)
Guy R. Wood (Bar Number 15875)
P. O. Box 138800
Oklahoma City, Oklahoma 73113-8800
Telephone: (405) 705-3600
Facsimile:  (405) 705-2573


*Liaison Counsel for Lead Plaintiff
and the Class*

**BARROWAY TOPAZ KESSLER
  MELTZER & CHECK, LLP**
Stuart L. Berman (*admitted pro hac vice*)
Lauren Wagner Pederson (*admitted pro hac vice*)
Sharan Nirmul (*admitted pro hac vice*)
Naumon A. Amjed (*admitted pro hac vice*)
Michelle M. Newcomer (*admitted pro hac vice*)
280 King of Prussia Road
Radnor, PA 19087
Telephone:  (610) 667-7706
Facsimile:  (610)667-7056

and

Ramzi Abadou (*admitted pro hac vice*)
Erik D. Peterson (*admitted pro hac vice*)
580 California Street, Suite 1750
San Francisco, CA 94104
Tel: (415) 400-3000
Fax: (415) 400-3001

*Lead Counsel for Lead Plaintiff and the Class*

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ........................................................................................................... 1

II.  SUMMARY OF FACTS ............................................................................................... 5

    A.  SGLP Was Created, Controlled and Used by Defendants to Raise Capital for a Cash-Strapped SemGroup ............................................................................................ 5

    B.  Defendants' Materially Misleading False Statements and Omissions in the IPO and Secondary Offering Documents.................................................................................. 7

III. LEGAL STANDARDS................................................................................................. 9

    A.  Rule 12(b)(6)............................................................................................................. 9

    B.  Rule 8 ...................................................................................................................... 11

    C.  The Securities Act of 1933 ..................................................................................... 11

    1.   Section 11 (Count I)................................................................................................ 12

    2.   Section 12(a)(2) (Count II)...................................................................................... 14

    3.   Section 15 (Counts III & IV) .................................................................................. 15

IV.  ARGUMENT .............................................................................................................. 16

    A.  Rule 9 Does Not Apply to Plaintiffs' Securities Act Claims .................................... 16

    B.  Lead Plaintiff Has §§11 and 12(a)(2) Standing ........................................................ 17

    1.   Defendants' "Tracing" Arguments Lack Merit .......................................................... 18

    2.   Lead Plaintiff's Damages Are *Presumed* at the Pleading Stage................................. 22

    C.  The Complaint Alleges Materially False Statements and Omissions in  the Offering Documents ................................................................................................................ 25

    D.  The "Bespeaks Caution" Doctrine Does Not Shield Defendants from Liability........ 30

    E.  The Complaint Asserts a Claim Under §12(a)(2) of the Securities Act..................... 34

    F.  The Complaint Asserts a Claim Under §15 of the Securities Act ............................. 35

V.   CONCLUSION ........................................................................................................... 36

## **TABLE OF AUTHORITIES**

**Page(s)**

CASES

*Abrams v. Van Kampen Funds, Inc.*,
No. 01 C7530,
2005 U.S. Dist. LEXIS 531 (N.D. Ill. Jan. 13, 2005) ............................................ 24

*Adair v. Bristol Tech. Sys.*
179 F.R.D. 126 (S.D.N.Y. 1998) ......................................................................... 22

*Adams v. Kinder-Morgan, Inc.*,
340 F.3d 1083 (10th Cir. 2003) .................................................................... 1-2, 10

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) .................................................................................... 9, 10

*Asher v. Baxter Int'l Inc.*,
377 F.3d 727 (7th. Cir. 2004) (Easterbrook, J.) ..................................................... 34

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988).....................................................................................*passim*

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007).......................................................................................... 9, 10

*Boudhir v. Lamb*,
Case No. 06-CV-630-GKF-FHM,
2008 U.S. Dist. LEXIS 98657 (N.D. Okla. Dec. 5, 2009) .................................... 10

*Brogren v. Pohlad*,
960 F. Supp. 1401 (D. Minn. 1997)....................................................................... 33

*C. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*,
511 U.S. 164 (1994)............................................................................................... 15

*Caiafa v. Sea Containers Ltd.*,
525 F. Supp. 2d 398 (S.D.N.Y. 2007) ................................................................... 22

*Christensen v. Park City Mun. Corp.*,
554 F.3d 1271 (10th Cir. 2009).......................................................................... 2, 10

*Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*,
555 F.3d 1188 (10th Cir. 2009).............................................................................. 10

*In re CIGNA Corp. Sec. Litig.*,
    459 F. Supp. 2d 338 (E.D. Pa. 2006) .............................................................................. 24-25

*In re Countrywide Financial Corp. Sec. Litig.*,
    588 F. Supp. 2d 1132 (C.D. Cal. 2008) ............................................................................... 24

*Croker v. Carrier Access Corp.*,
    Civil Case No. 05-cv-01011-LTB-OES,
    2006 U.S. Dist. LEXIS 48603 (D. Colo. July 18, 2006) .............................................3, 27, 33

*Cutter v. Metro Fugitive Squad*,
    Case No. CIV-06-1158-GKF,
    2008 U.S. Dist. LEXIS 66572 (W.D. Okla. Aug. 29, 2008)................................................ 11

*Danis v. USN Commc'ns, Inc.*,
    73 F. Supp. 2d 923 (N.D. Ill. 1999) .................................................................................... 19

*Dartley v. ErgoBilt Inc.*,
    No. CIV A. 398CV1442M., 2001 WL 313964 (N.D. Tex. Mar. 29, 2001) ......................... 35

*In re Data Access Sys. Sec. Litig.*,
    103 F.R.D. 130 (D.N.J. 1984) .............................................................................................. 21

*In re Direct Gen. Corp Sec. Litig.*,
    398 F. Supp. 2d 888 (M.D. Tenn. 2005)..................................................................12, 15, 21

*Dura Pharms., Inc. v. Broudo*,
    544 U.S. 336 (2005)......................................................................................................... 9, 24

*In re Dynegy, Inc. Sec. Litig.*,
    226 F.R.D. 263 (S.D. Tex. 2004) ........................................................................................ 23

*Goldman v. Belden*,
    754 F.2d 1059 (2d Cir. 1985)...................................................................................3, 28, 30

*In re Elan Corp. Sec. Litig.*,
    543 F. Supp. 2d 187 (S.D.N.Y. 2008) ................................................................................. 25

*In re Elscint, Ltd. Sec. Litig.*,
    674 F. Supp. 374 (D. Mass. 1987)....................................................................................... 22

*EP Medsystems, Inc. v. Echocath, Inc.*,
    235 F.3d 865 (3rd Cir. 2000)............................................................................................... 34

*Ernst & Ernst v. Hochfelder*,
    425 U.S. 185 (1976)............................................................................................................. 11

*First Interstate Bank of Denver, N.A. v. Pring*,
   969 F.2d 891 (10th Cir. 1992) .................................................................................15, 35

*In re Flag Telecom Holdings, Ltd., Sec. Litig.*,
   411 F. Supp. 2d 377 (S.D.N.Y. 2006) ............................................................................. 23

*Freeland v. Iridium Commc'ns, Ltd.*
   233 F.R.D. 40 (D.D.C. 2006) ........................................................................................... 21

*In re Fuwei Films Sec.Litig.*,
   No 07 Civ. 9416 (RJS),
   2009 U.S. Dist. LEXIS 59658 (S.D.N.Y. July 10, 2009) ..........................................14, 24, 35

*Ganino v. Citizens Utils. Co.*,
   228 F.3d 154 (2nd Cir. 2000) ........................................................................................... 29

*Gebhardt v. ConAgra Foods, Inc.*,
   335 F.3d 824 (8th Cir. 2003) ....................................................................................... 33-34

*In re Giant Interactive Group Inc. Sec. Litig.*,
   07-cv-10588 (RSW),
   2009 U.S. Dist. LEXIS 69414 (S.D.N.Y. August 7, 2009) .................................12, 24-25, 32

*In re Global Crossing, Ltd., Sec. Litig.*,
   313 F. Supp. 2d 189 (S.D.N.Y. 2003) ............................................................................. 25

*Goldman v. Belden*,
   754 F.2d 1059 (2d Cir. 1985) ...................................................................................3, 29, 32

*Grealish v. Washington Mutual Bank FA*,
   Case No. 2:08-CV-763 TS,
   2009 U.S. Dist. LEXIS 62084 (D. Utah July 20, 2009) ..................................................... 14

*Grossman v. Novell, Inc.*,
   120 F. 3d 112 (10th Cir. 1997) ...............................................................................30, 31, 32

*Gustafson v. Alloyd Co.*,
   513 U.S. 561 (1995) ........................................................................................................... 11

*In re Hamilton Bankcorp, Inc.*,
   194 F. Supp. 2d 1353 (S.D. Fla. 2002) ........................................................................... 18

*Helm v. State*,
   Case No. 08-2459-JAR,
   2009 U.S. Dist. LEXIS 62082 (D. Kan. July 21, 2009) ..................................................... 10

*Herman & MacLean v. Huddleston*,
   459 U.S. 375 (1983) ............................................................................................................ 1

*Hertzberg v. Dignity Partners, Inc.*,
    191 F.3d 1076 (9th Cir. 1999) ............................................................................ 18

*Hevesi v. Citigroup Inc.*,
    366 F.3d 70 (2d Cir. 2004) ................................................................................. 25

*In re Initial Pub. Offering*,
    358 F. Supp. 2d 189 (S.D.N.Y. 2004) ................................................................ 32

*J&R Marketing, SEP v. Gen. Motors Corp.*,
    549 F. 3d 384 (6th Cir. 2008) ............................................................................ 27

*Johnson v. T.D. Williamson, Inc.*,
    Case No. 08-CV-634-GKF-FHM,
    2009 U.S. Dist. LEXIS 53229 (N.D. Okla. June 23, 2009) ............................. 2, 10

*Joseph v. Wiles*,
    223 F.3d 1115 (10th Cir. 2000) ....................................................................*passim*

*In re Juniper Networks, Inc. Sec. Litig.*,
    542 F. Supp. 2d 1037 (N.D. Cal. 2008) ............................................................ 12

*In re Kendall Square Research Corp. Sec. Litig.*,
    868 F. Supp. 26 (D. Mass. 1994) ...................................................................... 18

*In re K-tel Int'l Sec. Litig.*,
    300 F.3d 881 (8th Cir. 2002) .................................................................27, 29, 35

*Krim v. pcOrder.com, Inc.*,
    402 F.3d 489 (5th Cir. 2005) ............................................................................ 21

*Lane v. Page*,
    No. CIV 06-1071 JB/ACT,
    2009 U.S. Dist. LEXIS 65544 (D.N.M. July 27, 2009) ...................................... 9

*In re Lilco Sec. Litig.*,
    111 F.R.D. 663 (E.D.N.Y. 1986) .................................................................. 4, 22

*In re McKesson HBOC, Inc. Sec. Litig.*,
    126 F. Supp. 2d 1248 (N.D. Cal. 2000) ........................................................ 5, 23-24

*McMahan & Co. v. Wherehouse Entm't*,
    65 F.3d 1044 (2d Cir. 1995) ............................................................................. 23

*In re Metro. Sec. Litig.*,
    532 F. Supp. 2d 1260 (E.D. Wash. 2007) ........................................................ 22

*In re NationsMart Corp. Sec. Litig.*,
130 F.3d 309 (8th Cir. 1997) ................................................................................ 17

*In re Nature's Sunshine Prods. Sec. Litig.*,
486 F. Supp. 2d 1301 (D. Utah 2007) ...........................................................*passim*

*In re NPS Pharm., Inc. Sec. Litig.*,
Master File Case No. 2:06-cv-00570,
2007 U.S. Dist. LEXIS 48713 (D. Utah July 3, 2007) ...........................2, 5, 10, 24

*In re Numerex Corp., Sec. Litig.*,
913 F. Supp. 391 (E.D. Pa. 1996) ......................................................................... 22

*In re PE Corp. Sec. Litig.*
228 F.R.D. 102 (D. Conn 2005) ............................................................................ 21

*P. Stolz Family P'ship L.P. v. Daum*,
355 F.3d 92 (2nd Cir. 2004) .................................................................................. 31

*In re Paracelsus Corp. Sec. Litig.*,
6 F. Supp. 2d 626 (S.D. Tex. 1998) ...................................................................... 18

*Pinter v. Dahl*,
486 U.S. 622 (1988) .............................................................................................. 11

*Pirraglia v. Novell, Inc.*,
339 F.3d 1182 (10th Cir. 2003) .................................................................4, 10, 30

*In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*,
396 F. Supp. 2d 1178 (D. Colo. 2004) ...........................................................*passim*

*In re Refco, Inc. Sec. Litig.*,
503 F. Supp. 2d 611 (S.D.N.Y 2007) ................................................................... 17

*In re Rhythms Sec. Litig.*,
300 F. Supp. 2d 1081 (D. Colo. 2004) .................................................................. 24

*In re Ribozyme Pharm., Inc. Sec. Litig.*,
119 F. Supp. 2d 1156 (D. Colo. 2000) .................................................................. 31

*Ridge at Red Hawk, L.L.C. v. Schneider*,
493 F.3d 1174 (10th Cir. 2007) ............................................................................ 10

*Rombach. v. Chang*,
355 F.3d 164 (2d Cir. 2004) ................................................................................. 17

*Rombach. v. Chang*,
   No. 00 Civ. 0958 (SJ),
   2002 WL 1396986 (E.D.N.Y. June 7, 2002) ..................................................................... 17

*Schaffer v. Evolving Sys., Inc.*,
   29 F. Supp. 2d 1213 (D. Colo. 1998).........................................................................*passim*

*Schwartz v. Celestial Seasonings*, *Inc.*,
   124 F.3d 1246 (10th Cir. 1997).................................................................................*passim*

*Schwartz v. Celestial Seasonings, Inc.*,
   178 F.R.D. 545 (D. Colo. 1998)................................................................................*passim*

*SEC v. Zandford*,
   535 U.S. 813 (2002)........................................................................................................ 11

*Shapiro  v. UJB Fin. Corp.*,
   964 F.2d 272 (3d Cir. 1992)........................................................................................17, 19

*Sonic Innovations, Inc.*,
   2:00-cv-00848PGC,
   2003 U.S. Dist. LEXIS 2378 (D. Utah Feb. 11, 2003)..................................................*passim*

*In re Sprint Corp. Sec. Litig.*,
   232 F. Supp. 2d 1193 (D. Kan. 2002)........................................................................*passim*

*In re Stellent, Inc. Sec. Litig.*,
   326 F. Supp. 2d 970 (D. Minn. 2004)........................................................................ 32-33

*In re Stone & Webster, Inc., Sec. Litig.*,
   414 F.3d 187 (1st Cir. 2005) .......................................................................................... 31

*In re Stratosphere Corp. Sec. Litig.*,
   1 F. Supp. 2d 1096 (D. Nev. 1998).................................................................................. 18

*In re Suprema Specialties, Inc. Sec. Litig.*,
   438 F.3d 256 (3d Cir. 2006).....................................................................................4, 17, 22

*Swierkiewicz v. Sorema N.A.*,
   534 U.S. 506 (2002)........................................................................................................ 11

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)......................................................................................................... 9

*TSC Indus., Inc. v. Northway, Inc.*,
   426 U.S. 438 (1976).................................................................................................3, 30, 33

*In re Twinlab Corp. Sec. Litig.,*
103 F. Supp. 2d 193 (E.D.N.Y. 2000) ................................................................. 18

*In re UnitedHealth Group PSLRA Litig.,*
Master File No. 06-CV-1691 (JMR/FLN),
2007 U.S. Dist. LEXIS 40623 (D. Minn. June 4, 2007) ......................................... 1

*In re Veeco Instruments, Inc. Sec. Litig.,*
235 F.R.D. 220 (S.D.N.Y. 2006) ......................................................................... 31

*In re Vicuron Pharm, Inc. Sec. Litig.,*
233 F.R.D. 421 (E.D. Pa. 2006) .......................................................................... 21

*Virginia Bankshares, Inc. v. Sandberg,*
501 U.S. 1083 (1991) .....................................................................................32, 33

*W. Palm Beach Firefighters' Pension Fund v. Startek Inc.,*
Civil Action No. 05-cv-01265-WDM-MEH,
2008 U.S. Dist. LEXIS 47748 .........................................................................18, 20

*W. Palm Beach Firefighters' Pension Fund v. Startek Inc.,*
Civil Action No. 05-cv-01265-WDM-MEH,
2008 U.S. Dist. LEXIS 90278 .........................................................................*passim*

*In re Williams Sec. Litig.,*
339 F. Supp. 2d 1242 (N.D. Okla. 2003) .........................................................*passim*

*In re WorldCom, Inc. Sec. Litig.,*
346 F. Supp. 2d 628 (S.D.N.Y. 2004) ................................................................. 23

*In re WRT Energy Sec. Litig.,*
No. 98 Civ. 3610 (JFK), 2005 U.S. Dist. LEXIS 18701 (S.D.N.Y. Aug. 30, 2005)............. 24

*In re Xcel Energy,*
286 F. Supp. 2d 1047 (D. Minn. 2003) ................................................................ 33

**STATUTES**

15 U.S.C. § 77k ................................................................................................... 14

15 U.S.C. § 77k(a) .........................................................................................13, 18

15 U.S.C. § 77k(b) ............................................................................................... 23

15 U.S.C. § 77k(c) ............................................................................................... 23

15 U.S.C. § 77k(e) .........................................................................................23, 24

15 U.S.C. § 77l(a)(2) ................................................................................. 14, 16, 35

15 U.S.C. § 77l(b) ................................................................................. 16

15 U.S.C. § 77o ................................................................................. 16, 35

## OTHER AUTHORITIES

Fed. R. Civ. P. 8(a) ................................................................................. *passim*

Fed. R. Civ. P. 9(b) ................................................................................. *passim*

Fed. R. Civ. P. 12(b)(6) ................................................................................. *passim*

Harvest Fund Advisors LLC ("Lead Plaintiff") respectfully submits this omnibus memorandum of law in opposition to defendants' motions to dismiss Lead Plaintiff's Securities Act of 1933 ("Securities Act") claims.[1]

## I.   INTRODUCTION

Defendants' ten motions to dismiss "expended forests of trees and trillions of electrons" bending the legal and factual issues before the Court beyond recognition.[2]   While defendants strain to make it appear otherwise, under the Securities Act, a plaintiff who "'purchased a security issued pursuant to a registration statement…need *only* show a material misstatement or omission to establish his *prima facie* case.   Liability against the issuer of a security is virtually absolute, even for innocent misstatements.'"   *Schwartz v. Celestial Seasonings, Inc.*, 124 F.3d 1246, 1251 (10th Cir. 1997).[3]   This pleading regime places a "minimal burden" on plaintiffs and a correspondingly "stringent standard of liability" on defendants.   *Herman & MacLean v. Huddleston*, 459 U.S. 375, 381-82 (1983).

Realizing this, defendants "purport to move up the trial to the pleadings stage" by raising premature substantive challenges to the Complaint[4] – an approach the Tenth Circuit has squarely rejected in securities cases:

> [I]f Congress had intended in securities [] lawsuits to abolish the concept of notice pleading that underlies the Federal Rules of Civil Procedure, Congress would have done so explicitly…Clearly, the Reform Act requires some precision in

---

[1]      Securities Act claims are asserted in Counts I-IV of the Corrected Consolidated Securities Class Action Complaint for Violations of the Federal Securities Law (the "Complaint").   Concurrently herewith, Lead Plaintiff is filing a separate omnibus opposition to defendants' motions to dismiss plaintiffs' Securities and Exchange Act of 1934 ("Exchange Act") claims.   Lead Plaintiff incorporates by reference herein the portions of the Exchange Act opposition relevant to Lead Plaintiff's Securities Act claims.

[2]      *In re UnitedHealth Group PSLRA Litig.*, Master File No. 06-CV-1691 (JMR/FLN), 2007 U.S. Dist. LEXIS 40623, at *7 (D. Minn. June 4, 2007).

[3]      Unless otherwise noted, all emphasis is added and citations are omitted.

[4]      Citations in the form "¶__" refer to paragraphs in the Complaint.

alleging facts, however, it does not require pleading all of the evidence and proof thereunder supporting a plaintiff's claim.

*Adams v. Kinder-Morgan, Inc*., 340 F.3d 1083, 1101 (10th Cir. 2003); *In re NPS Pharm., Inc., Sec. Litig*., Master File Case No. 2:06-cv-00570, 2007 U.S. Dist. LEXIS 48713, at *13-*19 (D. Utah July 3, 2007).  Defendants also fail to accept the Complaint's well-pleaded facts as true and inappropriately ask the Court to draw unwarranted inferences in ***their*** favor.  *See Christensen v. Park City Mun. Corp*., 554 F.3d 1271, 1276 (10th Cir. 2009); *Johnson v. T.D. Williamson, Inc*., Case No. 08-CV-634-GKF-FHM, 2009 U.S. Dist. LEXIS 53229, at *3 (N.D. Okla. June 23, 2009) ("courts must 'accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff'").

The SGLP and Underwriter Defendants[5] also incorrectly claim that Fed. R. Civ. P. 9(b) ("Rule 9") – rather than Fed. R. Civ. P. 8(a) ("Rule 8") – applies to plaintiffs' Securities Act claims.[6]  Again, courts in the Tenth Circuit take a different view – namely, that "Rule 9(b) ***does not*** apply to plaintiff's §11 claim."  *Celestial Seasonings*, 124 F.3d at 1251-52; *Schaffer v. Evolving Sys., Inc*., 29 F. Supp. 2d 1213, 1220 (D. Colo. 1998); *In re Williams Sec. Litig*., 339 F. Supp. 2d 1242, 1263 (N.D. Okla. 2003) ("this Court reads *Celestial Seasonings* to stand for the proposition that the heightened pleading requirements of Rule 9(b) ***do not apply*** to Section 11 claims").  Rule 8 applies to Lead Plaintiff's Securities Act Claims.  *See* §IV.A., *infra*.

---

[5]     The "SGLP Defendants" include SemGroup Energy Partners, L.P. ("SGLP"), SemGroup Energy Partners G.P., LLC ("SemGroup GP" or "General Partner"), Kevin L. Foxx ("Foxx"), Alex G. Stallings ("Stallings"), and Michael J. Brochetti ("Brochetti").  The "Individual Defendants" are defined herein as they are in ¶34 of the Complaint.  The "Underwriter Defendants" are defined herein as they are in ¶50 of the Complaint.  The "Investment Company Defendants" are defined herein as they are in ¶¶51-55 of the Complaint.

[6]     *See* SGLP Defendants' Motion to Dismiss and Brief in Support ("SGLP Mem.") at 38 n.125; Underwriter Defendants' Motion to Dismiss ("Underwriter Mem.") at 1-2.  It bears mentioning that A.R. Thane Ritchie ***properly*** applies Rule 8 to plaintiffs' Securities Act claims.  *See* Memorandum of Law in Support of Rule 12(b)(6) Motion to Dismiss of Defendants A.R. Thane Ritchie and Ritchie Opportunistic Trading, Ltd. ("Ritchie Mem.") at 9.

Undeterred, defendants then apply Rule 9 to making more or less the same three premature, merit-based arguments in support of their motions: (i) that **none** of the defendants had **any** duty to disclose **any** of the facts plaintiffs allege were materially misleading in the Registration Statements and Prospectuses; (ii) Lead Plaintiff cannot trace its shares back to the offending Registration Statements; and (iii) Lead Plaintiff did not suffer damages in the initial public offering ("IPO").  These arguments either lack merit, mischaracterize the allegations in the Complaint or are so intensely factual that they cannot and should not be decided at the pleading stage.  Indeed, "[i]n the context of securities litigation, the Tenth Circuit has warned that dismissal is 'difficult to obtain' due to the fact-sensitive nature of the relevant issues."  *In re Sprint Corp. Sec. Litig.*, 232 F. Supp. 2d 1193, 1213 (D. Kan. 2002).

Materiality, which defendants alternatively frame as a "duty to disclose" question, is one such issue.[7]  "The determination [of materiality] requires delicate assessments of the inferences a 'reasonable shareholder' would draw from a given set of facts and the significance of those inferences to him, and these assessments **are peculiarly ones for the trier of fact**." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 450 (1976).  "A statement is material if a reasonable investor would consider it important in determining whether to buy or sell stock." *In re Nature's Sunshine Prods. Sec. Litig.*, 486 F. Supp. 2d 1301, 1308 (D. Utah 2007).  It follows that "a complaint may not properly be dismissed pursuant to Rule 12(b)(6) (or even pursuant to Rule 56) on the ground that the alleged misstatements or omissions are not material unless they are so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance."[8]

---

[7]      *See Croker v. Carrier Access Corp.*, Civil Case No. 05-cv-01011-LTB-OES, 2006 U.S. Dist. LEXIS 48603, at *18 (D. Colo. July 18, 2006).

[8]      *Goldman v. Belden*, 754 F.2d 1059, 1067 (2d Cir. 1985).

Defendants turn these black-letter law principles on their head.  For instance, Gregory C. Wallace ("Wallace") suggests that "a disclosure *only* [i]s required when [*defendants*] become certain" about a fact that ought (or ought not) be disclosed to investors.[9]  However, materiality does not rest on *defendants'* certainty but rather whether a *reasonable investor* – like Lead Plaintiff – would consider a fact (*see, e.g.*, ¶¶125-147, 159-173) important in making an investment decision.  *See Basic Inc. v. Levinson*, 485 U.S. 224, 239 (1988).  This delicate assessment is typically made by a jury at trial, not by Mr. Wallace at the pleading stage.  *See Pirraglia v. Novell, Inc.*, 339 F.3d 1182, 1192 n.13 (10th Cir. 2003) (materiality is "'a question of fact that cannot render the complaints inadequate, lest…pleading requirements…replace the function of a trial'"); §IV.C., *infra*.

Next, defendants argue that Lead Plaintiff lacks standing because it was not damaged in the IPO, or because it purportedly cannot "trace" its aftermarket purchases to the offending Registration Statements.[10]  These arguments, too, are misplaced.  *See* §IV.B., *infra*.  First, Lead Plaintiff need not "trace" its SGLP common unit purchases to establish standing because Lead Plaintiff acquired those securities *in* (*i.e.*, pursuant to) the IPO and Secondary Offering.  *See* §IV.B.1., *infra*.  Moreover, like materiality, courts have long held that "[t]he issue of tracing is a merits issue not appropriate for consideration at [class certification]," let alone the pleading stage.  *Schwartz v. Celestial Seasonings, Inc.*, 178 F.R.D. 545, 557 (D. Colo. 1998).[11]  Defendants' damages arguments also go to the merits and, in any event, are an affirmative

---

[9]  Defendant Gregory C. Wallace's Motion to Dismiss and Brief in Support ("Wallace Mem.") at 2.

[10]  Defendants concede that Lead Plaintiff was damaged in the February 14, 2008 secondary public offering ("Secondary Offering").  *See* n. 40, *infra*; Underwriter Mem. at 13-15; Wallace Mem. at 11-13; BOSC, Inc.'s Motion to Dismiss ("BOSC Mem.") at 9-10.

[11]  *See In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 274 n.7 (3d Cir. 2006) ("The question [of tracing is] a factual one, to be resolved through discovery…."); *In re Lilco Sec. Litig.*, 111 F.R.D. 663, 671 (E.D.N.Y. 1986) ("[T]racing is a question of fact reserved for trial.").

defense under §§11 and 12(a)(2), not an element of plaintiffs' *prima facie* case.[12]  *See* §IV.B.2., *infra*.

Ultimately, "although [defendants] **style**[] [their] motion[s] to dismiss as a challenge to…plaintiff's pleading, [defendants] do[] not cite to specific pleading failures [but] instead mak[e] substantive challenges." *NPS Pharm.*, 2007 U.S. Dist. LEXIS 48713, at *13-*19.  "But at the motion to dismiss stage, the court cannot and does not weigh the evidence."  *Id*.  Accordingly, defendants' motions should be denied.

## II.    SUMMARY OF FACTS

### A.    SGLP Was Created, Controlled and Used by Defendants to Raise Capital for a Cash-Strapped SemGroup

SGLP was created by the Individual Defendants through the July 17, 2007 IPO of SGLP common units.  *See* ¶¶112-124.  SGLP filed a Registration Statement and Prospectus ("IPO Offering Documents") with the Securities and Exchange Commission ("SEC") in connection with the IPO.  *See id.*[13]  Seven months after the IPO, on January 18, 2008, SGLP announced that it had filed a Registration Statement and Prospectus ("Secondary Offering Documents") for a public offering to raise money to fund the $378.8 million SemMaterials transaction.[14]  ¶¶148, 151.  Plaintiffs also allege that, until their abrupt ouster immediately following the end of the Class Period,[15] SGLP was controlled by the Individual Defendants.  *See* ¶¶2, 8, 112-124, 357.

---

[12]    *See*, *e.g.*, *In re McKesson HBOC, Inc. Sec. Litig.*, 126 F. Supp. 2d 1248, 1258 (N.D. Cal. 2000) ("the [Securities Act] statute provides a number of affirmative defenses…including…lack of damages to plaintiffs").

[13]    The underwriters for the IPO were: Citigroup, Merrill Lynch, Lehman, Raymond James, RBC, Wachovia Corporation ("Wachovia"), A.G. Edwards & Sons, Inc. ("A.G. Edwards"), SMH Capital and BOSC, Inc.  ¶117.

[14]    The underwriters for the Secondary Offering were: Citigroup Global Markets Inc. ("Citigroup"), Lehman Brothers Inc. ("Lehman"), Merrill Lynch, Pierce, Fenner & Smith Inc. ("Merrill Lynch"), UBS Securities LLC, J.P. Morgan Securities Inc., Raymond James & Associates, Inc. ("Raymond James"), RBC Capital Markets Corporation ("RBC"), Wachovia, SMH Capital Inc. ("SMH Capital") and Goldman, Sachs & Co. ("Goldman Sachs").  ¶156.

[15]    The "Class Period" is from July 17, 2007 to July 17, 2008.

SemGroup GP is SGLP's general partner.  ¶121.  The General Partner is a wholly-owned subsidiary of SemGroup Holdings, L.P., which is in turn wholly-owned by SGLP's Parent, SemGroup.  ¶¶25, 116.  During the Class Period, SGLP *did not have any employees of its own* – SGLP used SemGroup's personnel and management team.  ¶¶12, 121, 137-138, 144.  All of the executive officers and some of the directors of SGLP's General Partner also served as executive officers or directors of SemGroup during the Class Period.  ¶¶26-35, 357.  For instance:

- Foxx was President, Chief Executive Officer ("CEO") and Director of SGLP's General Partner *and* a member of SemGroup's Management Committee (¶26);

- Thomas Kivisto ("Kivisto") served as a Director of SGLP's General Partner *and* was SemGroup's CEO and President (¶27);

- Brochetti was Chief Financial Officer ("CFO") and Director of SGLP's General Partner *and* Senior Vice President of SemGroup (¶28);

- Stallings was SGLP's General Partner's Chief Accounting Officer *and* held the same position at SemGroup (¶29);

- Wallace served as a Director of SGLP's General Partner *and* SemGroup's CFO (¶30).

Defendants Foxx, Brochetti, Stallings, Kivisto and Wallace also signed SGLP's IPO Offering Documents, and these same individuals along with W. Anderson Bishop ("Bishop") and Brian F. Billings ("Billings") also signed SGLP's Secondary Offering Documents.[16]  ¶¶112, 153, 277.  Despite these undisputed facts, none of these defendants claim to have owed any duties to SGLP's investors.[17]  In truth, but for the legal fiction defendants manufactured by the spin-off of SGLP in the IPO, SemGroup and SGLP were, in fact, the same entity and controlled by the same people.  ¶¶121, 144.  In other words, the Individual Defendants *were* SGLP during the Class

---

[16]   Defendants Brochetti and Foxx also signed certifications required by the Sarbanes-Oxley Act of 2002 on SGLP's behalf.  *See* ¶¶26, 28.

[17]   *See* SGLP Mem. at 22-23; Wallace Mem. at 14, 23-24; Thomas Kivisto's Motion to Dismiss and Brief in Support ("Kivisto Mem.") at 2, 9.

Period.  *See* ¶¶26-35, 357-358.  Defendants' suggestion that they lacked a duty to SGLP's investors therefore is as fictional as the legal fiction created by their spin-off of SGLP itself.  *See* §IV.C., *infra*.

**B.    Defendants' Materially Misleading False Statements and Omissions in the IPO and Secondary Offering Documents**

SemGroup and the Individual Defendants used the IPO and Secondary Offering to tap the public markets to raise money to feed SemGroup's massive need for cash to post collateral for a margin balance that exceeded $1 billion prior to the IPO and $1.7 billion by the time of the Secondary Offering.  ¶¶64-65.  Hundreds-of-millions of dollars obtained from both offerings went directly from SGLP to SemGroup, the Individual Defendants, the Underwriter Defendants and others.[18]  ¶¶7, 62, 116, 119, 154-155.

Plaintiffs allege that defendants violated §§11 and 12(a)(2) because the IPO and Secondary Offering Registration Statements and Prospectuses (collectively, the "Offering Documents") contained materially misleading statements and omissions detailing the ***positive*** aspects of SemGroup's relationship to SGLP, without fully disclosing the risks inherent in SGLP's virtually total reliance on SemGroup.  ¶¶125-131, 163.  According to the Offering Documents, SGLP was to receive "minimum revenues" totaling $135 million annually, had "minimal direct exposure to changes in crude oil prices," would receive "minimal monthly fees," and had "guaranteed" recurring annual revenues from SemGroup.  ¶¶127, 131, 149, 151, 159-160, 163-165.  SGLP's investors were additionally led to believe that SGLP did not have to rely upon unrelated third-parties for significant revenue as its relationship with SemGroup

---

[18]    Defendants also failed to disclose that the Individual Defendants, Carlyle/Riverstone, Ritchie and others received payments from the Secondary Offering totaling more than $85 million. ¶169. Defendants "Carlyle/Riverstone" and "Ritchie" are defined herein as they are in ¶¶51-52 of the Complaint.

historically provided over *80 percent of its revenues*.  These revenues were described as "stable, fee-based, contracted cash flows."  ¶¶129, 163.

The Offering Documents further stressed the benefits to SGLP of its purportedly lucrative Throughput Agreement with SemGroup.  ¶¶127, 160.  For example, the Offering Documents highlighted SemGroup's "experienced management team" as a benefit to SGLP and its investors, and touted SGLP's ability to leverage its relationship with SemGroup to minimize SGLP's exposure to commodity price risk.  ¶¶137, 162.  SGLP further stated that its acquisition of Acquired Asphalt Assets would "enhance [SGLP's] ability to generate stable and predictable cash flows." ¶163.  Similarly, the Offering Documents repeatedly touted the *minimum* monthly fees SGLP was to receive from SemGroup, which were to total $135 million annually.  ¶¶164-165.

In light of SGLP's almost total dependence on SemGroup, which defendants trumpeted as a benefit to SGLP's investors throughout the Offering Documents, defendants also should have, but failed to disclose that: (i) SemGroup LP was engaged in a speculative trading strategy that rendered the likelihood of stable, consistent revenues from SemGroup highly unpredictable (¶¶3, 5-6, 11, 90-93, 123-126); (ii) SGLP was highly exposed to commodity price fluctuations because of its heavy dependence upon SemGroup for revenues (¶¶8-19, 125, 127, 132-136, 150); (iii) Kivisto's speculative and risky hedging bets were failing (¶¶66-84, 90-94, 108, 124); (iv) SemGroup was in desperate need of additional cash to post as collateral for its trading positions, which adversely impacted its ability to satisfy its obligations to SGLP under the Throughput and Terminalling Agreements (¶167); (v) SGLP's relationship with SemGroup could not in any way "guarantee" SGLP consistent and recurring annual revenues (¶¶125, 127, 142, 160); (vi) SGLP did not enjoy "minimal direct risk" to commodity prices (¶¶11, 162); and (vii) the overlap of

management with SemGroup was not fairly characterized as a "benefit" to SGLP because SemGroup's management possessed little, if any, internal controls, which permitted Kivisto and other defendants to "bet the farm" on speculation that oil prices would fall (¶144).

Just four days after the end of the Class Period, a short five months after the Secondary Offering and less than a year after SGLP was spun-off as a publicly traded concern in July 2007, SGLP's investors learned that SemGroup – an entity that SGLP's investors were told they could rely on for 80% of SGLP's revenues – had declared bankruptcy due to "liquidity issues."  ¶17. On this news, SGLP's unit price dropped over 52% in one day.  ¶17.  Civil and criminal investigations and actions ensued.[19]  ¶18.

## III.   LEGAL STANDARDS

### A.     Rule 12(b)(6)

'"Determining whether a complaint states a plausible claim for relief [is] a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."'  *Lane v. Page*, No. CIV 06-1071 JB/ACT, 2009 U.S. Dist. LEXIS 65544, at *26 (D.N.M. July 27, 2009) (quoting *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009)).   A pleader must '"amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible."'  *Iqbal*, 129 S. Ct. at 1944; *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).   A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 129 S. Ct. at 1949.   In assessing plausibility, courts are to draw all

---

[19]        The federal securities laws "seek to maintain public confidence in the marketplace. They do so by deterring fraud, in part, through the availability of private securities fraud actions." *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 345 (2005). This point was recently reaffirmed in *Tellabs, Inc. v. Makor Issues & Rights*, Ltd., 551 U.S. 308, 313 (2007) (Ginsburg, J.), where the Court "recognized that meritorious private actions to enforce federal antifraud securities laws ***are an essential supplement to criminal prosecutions and civil enforcement actions***."

reasonable inferences in favor of plaintiffs. *See id.* at 1950; *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174 (10th Cir. 2007); *Johnson*, 2009 U.S. Dist. LEXIS 53229, at *3.

Elucidating these standards, "[t]he Tenth Circuit recently explained [that] '[i]t is not necessary for the complaint to contain factual allegations so detailed that all possible defenses would be obviated. Even after *Twombly*, the factual allegations need only contain enough allegations of fact 'to state a claim to relief that is plausible on its face.'" *Helm v. State*, Case No. 08-2459-JAR, 2009 U.S. Dist. LEXIS 62082, at *13 (D. Kan. July 21, 2009) (quoting *Christensen*, 554 F.3d at 1276); *Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir. 2009)).

In the securities context, a "court's function on a Rule 12(b)(6) motion 'is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted.'" *Pirraglia*, 339 F.3d. at 1187; *Kinder-Morgan*, 340 F.3d at 1101; *W. Palm Beach Firefighters' Pension Fund v. Startek Inc.*, Civil Action No. 05-cv-01265-WDM-MEH, 2008 U.S. Dist. LEXIS 90278, at *16 (D. Colo. Nov. 6, 2008) ("*Startek II*"); *Nature's Sunshine*, 486 F. Supp. 2d at 1308; *NPS Pharm.*, 2007 U.S. Dist. LEXIS 48713, at *13; *Sprint*, 232 F. Supp. 2d at 1213; *Schaffer*, 29 F. Supp. 2d at 1220.

As demonstrated by the well-pleaded allegations in the Complaint, the ongoing parallel civil and criminal investigations by the SEC and Department of Justice into defendants' conduct, and Kivisto's, Brent Cooper's ("Cooper") and Wallace's invocations of the Fifth Amendment in related proceedings, plaintiff's strict liability Securities Act claims should be deemed more than plausible. *See* ¶¶18, 252, 302; *Boudhir v. Lamb*, Case No. 06-CV-630-GKF-FHM, 2008 U.S. Dist. LEXIS 98657, at *3 (N.D. Okla. Dec. 5, 2009) (Frizzell, J.).

B.     Rule 8

"Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"  *Cutter v. Metro Fugitive Squad*, Case No. CIV-06-1158-GKF, 2008 U.S. Dist. LEXIS 66572, at *11 (W.D. Okla. Aug. 29, 2008).  As a general rule, Rule 8's pleading requirements apply to all actions unless defendants show that a specific exception to this requirement applies.  *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002).  As discussed in §IV.A., *infra*, defendants have failed to make this showing.

C.     The Securities Act of 1933

The Securities Act "was designed to provide investors with full disclosure of material information concerning public offerings."  *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 195 (1976); *see Pinter v. Dahl*, 486 U.S. 622, 646 (1988). "Disclosure, and **not paternalistic withholding of accurate information**, is the policy chosen and expressed by Congress."[20] *Basic*, 485 U.S. at 231-34. The Supreme Court has "recognized time and again, a 'fundamental purpose' of the various securities acts, 'was to substitute a philosophy of full disclosure for the philosophy of *caveat emptor* and thus to achieve a high standard of business ethics in the securities industry.'" *Id.*  "'For those [like defendants] whose moral responsibility to the public is particularly heavy, there is a correspondingly heavier legal liability.'" *Gustafson v. Alloyd Co.*, 513 U.S. 561, 581 (1995); *see also SEC v. Zandford*, 535 U.S. 813, 819 (2002).  Here, Lead Plaintiff's Securities Act claims arise from defendants' materially false statements and omissions

---

[20]      In seeking to have Lead Plaintiff's claims dismissed, Kivisto exemplifies this paternalistic withholding of information when he suggests that "[a]ll plaintiff has done is allege information that **was not disclosed but that it would have liked to have known**…" Kivisto Mem. at 12.

in SGLP's Registration Statements and Prospectuses filed with the SEC in connection with SGLP's IPO and Secondary Offering.  *See* ¶¶22-58.

### 1.    Section 11 (Count I)

Section 11 applies to Registration Statements such as those the Individual Defendants, General Partner and Underwriter Defendants caused SGLP to file in connection with the IPO and Secondary Offering.  *See* ¶¶112, 152.  "[W]here a material fact is misstated or omitted from a registration statement accompanying a stock filing with the SEC, '***any person*** acquiring such security' may bring an action for losses caused by the misstatement or omission."  *Joseph v. Wiles*, 223 F.3d 1115, 1158-59 (10th Cir. 2000); *Celestial Seasonings*, 124 F. 3d at 1251; *In re Juniper Networks, Inc. Sec. Litig.*, 542 F. Supp. 2d 1037 (N.D. Cal. 2008).

Hence, "[t]o establish a claim under Section 11, Plaintiffs ***need only show*** that they bought the securities and that there was a material misstatement or omission in the registration statement."  *In re Direct Gen. Corp Sec. Litig.*, 398 F. Supp. 2d 888, 897 (M.D. Tenn. 2005); *see Williams*, 339 F. Supp. 2d at 1261; *see also* §IV.C., *infra* (for discussion of materially false statements and omissions).  Nothing more is required.  *See In re Giant Interactive Group Inc. Sec. Litig.*, 07-cv-10588 (RWS), 2009 U.S. Dist. LEXIS 69414, at *13 (S.D.N.Y. August 7, 2009) ("Pleading a Section 11 claim is not difficult.").  "There is no scienter requirement for §11 claims" and a "defendant may be liable under §11 for negligent material misstatements or omissions."  *Schaffer*, 29 F. Supp. 2d at 1220; *In re Qwest Commc'ns Int'l, Inc. Sec. Litig.*, 396 F. Supp. 2d 1178, 1202 (D. Colo. 2004); *Sonic Innovations, Inc.*, 2:00-cv-00848PGC, 2003 U.S. Dist. LEXIS 2378, at *18-*22 (D. Utah Feb. 11, 2003).

To have standing, Section 11 provides that:

In case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not

misleading, ***any person acquiring such security*** (unless it is proved that at the time of such acquisition he knew of such untruth or omission) ***may,*** either at law or in equity, in any court of competent jurisdiction, ***sue....***

15 U.S.C. § 77k(a). It is undisputed that Lead Plaintiff acquired SGLP common units ***in*** (*i.e.*, "pursuant to") the IPO and the Secondary Offering.[21] *See* ¶¶23, 333, 337. Section 11 also catalogues certain statutorily-enumerated persons subject to strict liability under the statute:[22]

> (1) every person who ***signed*** the registration statement;

> (2) every person who was a ***director*** of (or person performing similar functions) or ***partner*** in, the ***issuer*** at the time of the filing of the part of the registration statement with respect to which his liability is asserted;

> (3) every person who, with his consent, is named in the registration statement as being or about to become ***a director***, person performing similar functions, or partner;

> \*      \*      \*

> (5) every ***underwriter*** with respect to such security.

15 U.S.C. § 77k(a); *Williams*, 339 F. Supp. 2d at 1262. The Complaint charges SGLP, the Individual Defendants (except Cooper), SempGroup GP, the Investment Company Defendants and the Underwriters Defendants with violations of §11. *See* ¶326.

There is no dispute that: (i) SGLP was the "issuer" for the IPO and Secondary Offering (*see* ¶¶329, 340); (ii) all of the Individual Defendants[23] (except Cooper) and SemGroup GP

---

[21]     As explained in §IV.B.1., *infra*, because Lead Plaintiff acquired SGLP common units in both offerings, it need not "trace" its shares back to those offerings to establish standing. *See* ¶23 ("Harvest purchased SGLP common units in SGLP's IPO and Secondary Offering..."). Defendants concede this point. *See, e.g.*, Underwriter Mem. at 6 ("Harvest ...purchased...on the day of the IPO at the initial offering price of $22/unit...").

[22]     The Underwriter Defendants and the Investment Company Defendants (control persons) are named ***exclusively*** under the Securities Act.

[23]     Defendant Billings suggests that certain claims should be dismissed against him because he "was not a director at the time of the IPO." Defendants Billings and Bishop's Motion to Dismiss and Brief in Support ("Billings & Bishop Mem.") at 4. However, as Billings himself concedes a page earlier, "he was identified as a director-nominee in the registration statement." Billings & Bishop Mem. at 3. Accordingly, because Billings "is named in the registration statement as being or about to become a director," he is strictly liable in connection with the false offering documents used in the IPO. *See* 15 U.S.C. § 77k(a)(3).

"signed" the Registration Statements used in connection with the IPO and/or Secondary Offering (¶¶26-30, 32-33, 112, 153); (iii) SempGroup GP was a "partner" of SGLP at the time of the IPO and Secondary Offering (¶25); and (iv) the persons named in ¶¶36-50 were "underwriters" for the securities issued in the IPO and/or Secondary Offering (¶¶117, 156).[24] *See* 15 U.S.C. § 77k; *In re Fuwei Films Sec. Litig.*, No 07 Civ. 9416 (RJS), 2009 U.S. Dist. LEXIS 59658, at *26 (S.D.N.Y. July 10, 2009).

## 2.    Section 12(a)(2) (Count II)

Section 12 applies to prospectuses, such as those filed in connection with the IPO and Secondary Offering.   ¶¶112, 152.   "[T]o plead adequately a claim under section 12(a)(2), Plaintiff need only allege that (1) Defendant sold or offered a security; (2) by means of a prospectus  or oral communication; (3) that included an untrue statement of material fact or omitted a material fact necessary to make such statements not misleading." *Fuwei*, 2009 U.S. Dist. LEXIS 59658, at *30-*31; 15 U.S.C. § 77l(a)(2); *see* §IV.C., *infra* (for discussion of materially false statements and omissions).  This Count is brought exclusively against SGLP and the Underwriter Defendants.  *See* ¶338.

"Section 12(a)(2) differs from §11 in that the only class of defendants who may be subject to liability are those who 'offer or sell' unregistered securities." *Schaffer*, 29 F. Supp. 2d

---

[24]    Two of the Underwriter Defendants – Wachovia and Wells Fargo & Company ("Wells Fargo") – are named in the Complaint as successors-in-interest.  *See* ¶¶46-48.  Wachovia is named as a successor-in-interest to A.G. Edwards (which Wachovia acquired in 2007) and Wells Fargo is named as a successor-in-interest to Wachovia Capital Markets, LLC ("WCM") (which Wells Fargo acquired in 2008).  *See id.*  Wachovia and Wells Fargo argue that because they did not themselves underwrite the offerings, they should escape strict liability under §11.  *See* Wachovia and Wells Fargo's Motion to Dismiss at 1-2.  Not so.  Wachovia and Wells Fargo concede that one "way[] for a corporation to assume responsibility for the acts of another corporation" is through "an express agreement to assume the other corporation's liabilities."  *Id.* at 2.  Yet at no point in their memorandum do either Wachovia or Wells Fargo deny that they assumed responsibility for the acts of A.G. Edwards and WCM.  This still unresolved question of fact should thus be addressed in discovery.  See *Grealish v. Washington Mutual Bank FA*, Case No. 2:08-CV-763 TS, 2009 U.S. Dist. LEXIS 62084, at *6 (D. Utah July 20, 2009) ("it is the [a]greement which determines the status of [the acquiring corporation] as successor").

at 1220.  Here, because plaintiffs allege that SGLP and the Underwriter Defendants sold SGLP common units *to* Lead Plaintiff *in* both the IPO and Secondary Offering, Lead Plaintiff has §12(a)(2) standing.[25]  *See* ¶¶338, 345; *Schaffer*, 29 F. Supp. 2d at 1222-23; *Sonic Innovations*, 2003 U.S. Dist. LEXIS 2378, at *18-*21.   Moreover, as "sellers" in both offerings, the Underwriter Defendants pocketed approximately $26.1 million in fees and commissions for soliciting and underwriting the sale of SGLP common units to Lead Plaintiff and the putative class in the IPO and Secondary Offering.  *See* ¶¶117, 156, 342-343.  Like §11, damages under §12(a)(2) are an affirmative defense and "plaintiffs do not need to plead reliance, causation, or scienter in order to recover."  *Sonic Innovations*, 2003 U.S. Dist. LEXIS 2378, at *18-*21; 15 U.S.C. § 77l(b) ("if the ***person who offered or sold such security proves that***…").

### 3.      Section 15 (Counts III & IV)

Under §15, "'a person who controls a party that commits a violation of the securities laws may be held jointly and severally liable with the primary violator.'"  *Qwest*, 396 F. Supp. 2d at 1202-03; *see* 15 U.S.C. § 77o.  "A §15 claim must be predicated on liability under sections 11 or 12 of the Securities Act." *Qwest*, 396 F. Supp. 2d at 1202-03.  "To state a claim for controlling person liability, plaintiffs need only allege a primary violation of the underlying federal securities statute and 'control' by the alleged controlling person."  *Schaffer*, 29 F. Supp. 2d at 1225-26; *First Interstate Bank of Denver, N.A. v. Pring*, 969 F.2d 891, 898 (10th Cir. 1992), *rev'd on other grounds sub nom. C. Bank of Denver, N.A. v. First Interstate Bank of Denver*, *N.A.*, 511 U.S. 164 (1994).  "Whether a person is a controlling person is normally a question of fact that cannot be determined at the pleading stage."  *Direct Gen.*, 398 F. Supp. 2d at 897-98.

---

[25]      Unlike §11, a plaintiff cannot trace its shares back to a prospectus to establish standing under §12(a)(2) – it must buy its shares in the offering itself.  *See Joseph*, 223 F.3d at 1160 (distinguishing between §§11 and 12(a)(2) standing).

Plaintiffs allege "control person" liability claims against SemGroup GP, the Investment Company Defendants[26] and the Individual Defendants (including Cooper). ¶¶348, 354. Defendants are all liable as "controlling persons" because of their ownership stakes in SGLP or their positions of control and authority as senior officers of SGLP's General Partner – SemGroup GP – and SemGroup. *See* ¶¶348-358; §IV.F., *infra*.

## IV. ARGUMENT

### A. Rule 9 Does Not Apply to Plaintiffs' Securities Act Claims

The SGLP and Underwriter Defendants argue that plaintiffs' Securities Act claims must be evaluated under Rule 9 because plaintiffs' claims "sound in fraud."[27] This argument has been repeatedly and uniformly rejected by courts in this Circuit. In *Williams*, for instance, this court found (under identical facts) that the "particularity requirements of Fed. R. Civ. P. 9(b) should not be extended to Section 11 and Section 12(a)(2) claims because those claims do not require fraud." *Williams*, 339 F. Supp. 2d at 1262 (*citing* 2 Thomas Lee Hazen, *Treatise on the Law of Securities Regulation* §12.13 (4th ed. 2002)); *Qwest*, 396 F. Supp. 2d at 1202 (Rule 8 applies). The same holds true with plaintiff's Securities Act claims here. *See id.*

Further weighing against the application of the "sound in fraud" doctrine, the Complaint expressly pleads negligence in connection with plaintiffs' §§11 and 12(a)(2) claims, and disavows fraud in those Counts. ¶¶59, 125, 159, 327, 339 ("This Count does not sound in fraud. All of the preceding allegations of fraud or fraudulent conduct and/or motive are specifically excluded from this Count."); *Suprema Specialties*, 438 F.3d at 274 n.7 (finding such pleading "sufficient to survive the motions to dismiss"). The Securities Act claims in the Complaint – which are set forth in a section of the Complaint completely separate from the Exchange Act

---

[26]   The Investment Company Defendants are named as control persons under §15. *See* ¶¶348, 350.

[27]   *See* SGLP Mem. at 38 n.125; Underwriter Mem. at 1-3.

claims – also clearly explain that they are based on defendants' negligence and failure to conduct reasonable investigations, not fraud. *See* ¶¶59, 125, 159, 327, 339; *Celestial Seasonings*, 124 F.3d at 1252; *In re Refco, Inc. Sec. Litig.*, 503 F. Supp. 2d 611, 631-32 (S.D.N.Y 2007) (the complaint "is carefully structured so as to draw a clear distinction between negligence and fraud claims"). Indeed, several of the defendants – including the Underwriter Defendants – are not even charged with fraud.[28]

Accordingly, the Court should apply Rule 8 to Lead Plaintiff's Securities Act claims. *See Celestial Seasonings*, 124 F.3d at 1251-52; *Williams*, 339 F. Supp. 2d at 1263; *Qwest*, 396 F. Supp. 2d at 1202; *Suprema Specialties*, 438 F.3d at 272; *In re NationsMart Corp. Sec. Litig.*, 130 F.3d 309, 314-15 (8th Cir. 1997) ("We hold that…Rule 9(b) *does not* apply to claims under §11 of the Securities Act.").[29]

### B.    Lead Plaintiff Has §§11 and 12(a)(2) Standing

Defendants raise two interrelated (and merit-based) arguments – *i.e.*, tracing and damages – to challenge Lead Plaintiff's §§11 and 12(a)(2) standing.[30] Defendants' arguments are unavailing.

---

[28]    Although the Underwriter Defendants are named as defendants exclusively under the Securities Act's strict liability, non-fraud provisions, their brief makes it appear as though they are being sued for fraud simply to benefit from Rule 9's heightened pleading requirements. *See* Underwriter Mem. at 2-3.

[29]    Nor is this case anything like *Rombach v. Chang*, 355 F.3d 164 (2d Cir. 2004), in which the Second Circuit held that Rule 9(b) would apply to Securities Act claims that sound in fraud. There, unlike here, the Securities Act claims *expressly* incorporated paragraphs containing allegations of fraud. *See Rombach v. Chang*, No. 00 Civ. 0958 (SJ), 2002 WL 1396986, at *4 (E.D.N.Y. June 7, 2002), *aff'd*, 355 F.3d 164 (2d Cir. 2004). Moreover, the Securities Act claims in *Rombach* did "not assert any claim of negligence," *Rombach*, 2002 WL 1396986, at *4, and did not provide "any other basis for the claims" other than fraud. *Rombach*, 355 F.3d at 172.

As explained by the Tenth Circuit in *Celestial Seasonings*, defendants' reliance on *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 287-89 (3d Cir. 1992), fails for the same reasons. *See Celestial Seasonings*, 124 F.3d at 1251-52 (distinguishing *Shapiro*).

[30]    *See* Underwriter Mem. at 4; Billings & Bishop Mem. at 4, 20-21; Wallace Mem. at 9-13.

### 1.    Defendants' "Tracing" Arguments Lack Merit

Section 11 confers standing on "any person" that acquires securities pursuant to *or* traceable to a materially false or misleading registration statement.  *See* 15 U.S.C. § 77k(a); §III.C.1., *supra*; *Hertzberg v. Dignity Partners, Inc.*, 191 F.3d 1076, 1079-82 (9th Cir. 1999) ("The term 'any person' is quite broad, and we give words their ordinary meaning.").  "Plaintiffs must allege that they purchased securities pursuant to a materially false or misleading registration statement, *or* that they purchased such securities in the aftermarket, but only if they can demonstrate they bought their securities pursuant to the registration statement, *a concept referred to as 'tracing*.'"  *W. Palm Beach Firefighters' Pension Fund v. Startek, Inc.*, Civil Action No. 05-cv-01265-WDM-MEH, 2008 U.S. Dist. LEXIS 47748, at *16 (D. Colo. Mar. 28, 2008) ("*Startek I*"); *Joseph*, 223 F.3d at 1159.

It follows that an investor – like Lead Plaintiff – who acquires publicly-traded securities in (*i.e.*, pursuant to) an offering need not trace its shares to possess §11 standing.  *See Startek II*, 2008 U.S. Dist. LEXIS 90278, at *22-*23 (denying motion to dismiss when plaintiffs alleged purchases directly in the offering at issue); *In re Stratosphere Corp. Sec. Litig.*, 1 F. Supp. 2d 1096, 1119 (D. Nev. 1998) (same); *In re Paracelsus Corp. Sec. Litig.*, 6 F. Supp. 2d 626, 631 (S.D. Tex. 1998) (same); *In re Twinlab Corp. Sec. Litig.*, 103 F. Supp. 2d 193, 202 (E.D.N.Y. 2000) (same).[31]

---

[31]     Defendants do not (and cannot) dispute Lead Plaintiff's acquisition of SGLP common units pursuant to the IPO and Secondary Offering.  *See* ¶¶1, 23, 329, 337-338, 344-347; *In re Kendall Square Research Corp. Sec. Litig.*, 868 F. Supp. 26, 29 (D. Mass. 1994) (rejecting motion to dismiss where shareholder purchased at offering price on offering date); *In re Hamilton Bankcorp, Inc.*, 194 F. Supp. 2d 1353, 1356-57 (S.D. Fla. 2002) (holding plaintiff's allegation that he bought on the day of the offering was sufficient to show standing); Shapiro, 964 F.2d at 286 (reversing lower court's dismissal of Section 11 claim where plaintiff alleged stock purchase "'pursuant to' a DRISP registration statement").

For investors who do not acquire their securities pursuant to a registration statement, the "tracing" doctrine enables them to avail themselves of §11's broad, remedial measures. *See* §III.C., *supra.* The Tenth Circuit has specifically endorsed the tracing doctrine:

> After considering the statutory language, legislative history, analogous Supreme Court authority, and case law from other circuits…*we conclude that an aftermarket purchaser has standing* to pursue a claim under section 11 *so long as he can prove* the securities he bought were those sold in an offering covered by the false registration statement.

*Joseph*, 223 F.3d at 1159; *see Danis v. USN Commc'ns, Inc.*, 73 F. Supp. 2d 923, 931 (N.D. Ill. 1999) ("a plaintiff who purchases stock on the open market *after* the initial offering has standing to sue under §11").

Here, then, because Lead Plaintiff alleges that it acquired SGLP common units in the IPO and Secondary Offering and *also* in the aftermarket for both offerings, Lead Plaintiff's standing is beyond dispute. *See* ¶1 ("This is a federal securities class action…on behalf of purchasers of common units issued *pursuant to or traceable* to the Registration Statements…"); ¶23 ("Harvest purchased SGLP common units in SGLP's IPO and Secondary Offering…"); ¶329 ("SGLP is strictly liable to Lead Plaintiff and members of the Class who purchased or otherwise acquired the SGLP securities issued in the IPO and Secondary Offering, pursuant to Registration Statements, for the misstatements and omissions contained therein."); ¶¶333, 337.

Despite the foregoing, defendants claim "that no court in the Tenth Circuit has spoken directly to th[e] issue" whether "the ability to trace to one offering or to a subsequent offering is [] sufficient to satisfy Section 11's tracing requirement."[32]  Defendants are wrong. [33]  Courts

---

[32]     Wallace Mem. at 11; *see* Billings & Bishop Mem. at 20-21; Underwriter Mem. at 3-4.

[33]     The Underwriter Defendants argue that "[o]nly investors who purchased the securities in a public offering have standing to sue under Section 12(a)(2)." Underwriter Mem at 10-11 (emphasis in original). To the extent defendants are suggesting that aftermarket or secondary market purchasers lack standing as a matter of law under §11, as set forth above, the Tenth Circuit holds otherwise. *See Joseph*, 223 F.3d at 1159. Lead Plaintiff agrees that aftermarket purchasers do not possess §12(a)(2) standing. *See id.* at 1161 (distinguishing between §§ 11 and

*have* spoken to this issue and they have generally done so *in plaintiffs' favor*.  *See*, *e.g.*, *Schwartz*, 178 F.R.D. at 556 ("under the plain language of § 11, any purchaser may bring a claim as long as he can prove that the securities acquired were issued in connection with a false registration statement, *i.e.*, if the shares can be traced to the offering"); *Startek II*, 2008 U.S. Dist. LEXIS 90278, at *22-*23.

In *Schwartz*, for instance, a decision cited with approval by the Tenth Circuit in *Joseph*, defendants argued that plaintiffs lacked standing to pursue their §11 claims on tracing grounds. *Schwartz*, 178 F.R.D. at 556.  After finding defendants' arguments procedurally infirm – even at the advanced class certification stage – the court held:

> I conclude, under the express terms of §11, Plaintiffs Schwartz and Ritter have standing to bring §11 claims, provided that they can trace their stock to one of the two offerings. *The issue of tracing is a merits issue, not appropriate for consideration here*.  It would be improper to deny class certification because…Plaintiff might have difficulties in *proving* his or her case.

*Id.* at 557. Undeterred, the Underwriter Defendants turn to *Startek I.*[34]  What the Underwriter Defendants fail to mention in citing *Startek I*, however, is that in *Startek II*, Judge Miller *sustained* plaintiffs' §11 claims on tracing grounds.  *See Startek II*, 2008 U.S. Dist. LEXIS 90278, at *22-*23.  In *Startek II*, as here, "[d]efendants assert[ed] that if a company's stock was in the marketplace before a subsequent offering, *no buyer can definitely prove* that stock purchased on the day of a public offering is traceable to the offering, as opposed to the same type or class of stock already in the market."  *Startek II*, 2008 U.S. Dist. LEXIS 90278, at *22.[35]  In rejecting defendants' argument, Judge Miller reasoned that:

---

12(a)(2)).  That said, because Lead Plaintiff purchased in the IPO and Secondary Offering, Lead Plaintiff possesses §12(a)(2) standing.

[34]      *See* Underwriter Mem. at 15.

[35]      Underwriter Mem. at 11-15; Wallace Mem. at 10-13; Billings & Bishop Mem. at 20-21.

Because this is a motion to dismiss and I must make all favorable inferences in favor of Plaintiff, I conclude that Plaintiff has adequately alleged that its shares are traceable to the secondary offering *under the law of this circuit*. *Joseph v. Wiles*, 223 F.3d 1155, 1159-61 (10th Cir. 2000); *see also In re Qwest Communs Int'l., Inc.,* 396 F. Supp. 2d 1178, 1202 (D. Colo. 2004). Plaintiff may or may not have a problem of proof on this issue as this litigation proceeds, *but I am unwilling to hold that a buyer in a secondary offering is automatically foreclosed from pursuing a Section 11 claim in the absence of further guidance from the Tenth Circuit or other persuasive authority*.

*Startek II*, 2008 U.S. Dist. LEXIS 90278, at *23; *Schwartz*, 178 F.R.D. at 557.[36]

Defendants' heavy reliance on *Krim v. pcOrder.com, Inc.*, 402 F.3d 489 (5th Cir. 2005) is similarly unavailing.[37] First, there, unlike Lead Plaintiff here, the proposed class representative *did not* acquire shares in the offering at issue. Accordingly, the Fifth Circuit was confronted with the question whether an investor who *did not purchase securities "pursuant to" an offering* could trace their aftermarket shares back to the offerings to have standing. *Krim*, 402 F.3d at 498 ("Section 11 *is* available for anyone who purchased directly in the offering *and* any aftermarket purchasers who can demonstrate that their shares are traceable to the registration statement") (emphasis in original and added). Again, here, because Lead Plaintiff acquired its shares pursuant to SGLP's false and misleading Registration Statement, *Krim* is inapposite.[38] *See Vicuron*, 233 F.R.D. at 425 n.2; *Schwartz*, 178 F.R.D. at 555-57; *In re Data Access Sys. Sec. Litig.*, 103 F.R.D. 130, 146 (D.N.J. 1984).

---

[36]     Moreover, notably, the pleading deficiency noted by Judge Miller in *Startek I* that plaintiffs cured in *Startek II* is not present here because Lead Plaintiff alleges that it purchased shares *in* the IPO and in the Secondary Offering. *See* ¶¶23, 333. Defendants do not (and cannot) seriously challenge these facts.

[37]     *See* Wallace Mem. at 11-12; Underwriter Mem. at 12-15.

[38]     Moreover, as for absent class members who did not acquire their shares *in* the IPO or Secondary Offering, district courts routinely "decline to address those [tracing] assertions as they concern the merits of the action." *In re Vicuron Pharm. Inc. Sec. Litig.*, 233 F.R.D. 421, 425 n.2 (E.D. Pa. 2006); *Freeland v. Iridium World Commc'ns, Ltd.*, 233 F.R.D. 40 (D.D.C. 2006); *In re PE Corp. Sec. Litig.*, 228 F.R.D. 102, 108-09 (D. Conn. 2005); *In re Direct Gen. Corp. Sec. Litig.*, No. 3:05-0077, 2006 U.S. Dist. LEXIS 56128, at *12 (M.D. Tenn. Aug. 8, 2006); *Schwartz*, 178 F.R.D. at 554 n.4.

Ultimately, for pleading purposes, "[i]t is sufficient…if a plaintiff generally alleges that he or she purchased securities pursuant to the registration statement or statements at issue." *In re Metro. Sec. Litig.*, 532 F. Supp. 2d 1260, 1280 (E.D. Wash. 2007); *Caiafa v. Sea Containers Ltd.*, 525 F. Supp. 2d 398, 407 (S.D.N.Y. 2007) (citing *In re Marsh & Mclennan Cos. Sec. Litig.*, 501 F. Supp. 2d 452, 491 (S.D.N.Y 2006)). Lead Plaintiff has done so. *See* ¶¶1, 23, 326, 329, 331-33, 337; *Qwest*, 396 F. Supp. 2d at 1202; *Suprema Specialties*, 438 F.3d at 274 (plaintiffs' assertions of purchases "in" and "traceable to" the stock offerings or "pursuant to" the registration statement were sufficient at the pleading stage); *In re Numerex Corp., Sec. Litig.*, 913 F. Supp. 391, 395 n.4 (E.D. Pa. 1996). Whether or not "aftermarket" purchasers can later trace their shares to the offending registration statements is a question of proof of the degree of class-wide damages that would be inappropriate to decide at the pleading stage.[39]

## 2.    Lead Plaintiff's Damages Are *Presumed* at the Pleading Stage

Next, defendants suggest that Lead Plaintiff did not suffer damages in connection with its IPO purchases.[40] Again, defendants fail to accept the allegations in the Complaint as true. *See* ¶23 ("Harvest purchased SGLP common units in SGLP's IPO and Secondary Offering…and was damaged thereby."); ¶336 ("Lead Plaintiff and the other members of the Class have sustained damages."). Lead Plaintiff *did* suffer losses from SGLP common units acquired in the IPO

---

[39]    *See Adair v. Bristol Tech. Sys.*, 179 F.R.D. 126, 133 (S.D.N.Y. 1998) ("To limit liability only to buyers in the IPO and not to buyers who can trace their shares to the registration statement allows the issuers to escape a margin of liability for which §11 was drafted to cover."); *Lilco*, 111 F.R.D. at 671 ("tracing is a question of fact reserved for trial"); *In re Elscint, Ltd. Sec. Litig.*, 674 F. Supp. 374, 382 (D. Mass. 1987) (addressing traceability on the pleadings would "unfairly convert motions to dismiss into motions for summary judgment without adequate notice and opportunity to respond").

[40]    *See* Underwriter Mem. at 3-7; Wallace Mem. at 10-11; Billings & Bishop Mem. at 20. Defendants concede, however, that Lead Plaintiff was damaged in the Secondary Offering. *See* Billings & Bishop at 20 ("units it purchased *prior to* the Secondary Offering must be dismissed because plaintiff suffered no damages"); Wallace Mem. at 10 ("Harvest has no conceivable damages for the shares it bought and sold *between* the initial and secondary offerings."); Underwriter Mem. at 3, 9-10 ("to the extent that Harvest asserts Section 11 claims for purchases *on or after* the date of the Secondary Offering – the only purchases for which Harvest has any losses").

aftermarket that it alleges are *traceable* to the IPO Registration Statement. *See* ¶¶1, 23, 326, 329, 331-333, 337.[41]   The Tenth Circuit enables plaintiffs to avail themselves of tracing at the pleading stage and defendants offer no argument as to why binding Tenth Circuit precedent should not be followed here. *See Joseph*, 223 F.3d at 1158-61; *Startek II*, 2008 U.S. Dist. LEXIS 90278, at *22-*23; *Schwartz*, 178 F.R.D. at 557.

Importantly, in attacking Lead Plaintiff's IPO damages, defendants also overlook that damages are not an element of plaintiffs' *prima facie* case under §§11 and 12(a)(2) – they are *presumed* for pleading purposes. "Because §11(a) imposes strict liability for misrepresentations contained in a registration statement, *any decline in value is presumed to be caused by the misrepresentation*." *In re Dynegy, Inc. Sec. Litig.*, 226 F.R.D. 263, 283 (S.D. Tex. 2004); 15 U.S.C. § 77k(b), (c), (e).   These damages are presumptive because they are subject to a statutory proviso creating an affirmative loss causation defense for defendants at summary judgment or trial.  *See* 15 U.S.C. § 77k(e) ("Provided, *That if the defendant proves*…."); *McKesson*, 126 F. Supp. 2d at 1258 ("the [Securities Act] statute provides a number of affirmative defenses…including…lack of damages to plaintiffs").

Defendants' affirmative defense of "negative causation" can only occur "where a defendant proves that the decline in the value of the security in question was not caused by the material omissions or misstatements in the registration statement [and that the] plaintiff is not entitled to recover any damages."  *McMahan & Co. v. Wherehouse Entm't*, 65 F.3d 1044, 1048 (2d Cir. 1995). Defendants' burden is a "heavy" one. *In re WorldCom, Inc. Sec. Litig.*, 346 F. Supp. 2d 628, 659 (S.D.N.Y. 2004); *In re Flag Telecom Holdings, Ltd., Sec. Litig.*, 411 F. Supp.

---

[41]       At a bare minimum, Lead Plaintiff suffered a loss on the 25,000 SGLP common units it purchased on January 15, 2008.  *See* Affidavit of Douglas A. Terry in Support of the Motion of Harvest Fund Advisors LLC to Be Appointed Lead Plaintiff and for Approval of Lead Plaintiff's Selection of Lead Counsel and Liaison Counsel, Exhibit A- schedule of trades.

2d 377, 383 (S.D.N.Y. 2006) ("it is 'the defendant [that] bears the burden of proving that the price decline was not related to the misrepresentations in the registration statement'"); *In re WRT Energy Sec. Litig.*, 98 Civ. 3610 (JFK), 2005 U.S. Dist. LEXIS 18701, at *4 (S.D.N.Y. Aug. 30, 2005); *Abrams v. Van Kampen Funds, Inc.*, No. 01 C7530, 2005 U.S. Dist. LEXIS 531, at *30 (N.D. Ill. Jan. 13, 2005).

Citing *Dura Pharm.*, 544 U.S. at 345-46, which does not speak to damages under §11, defendants argue that plaintiff "fails to allege the elements of causation and damages."[42] Plaintiffs need not allege the "elements" of damages or causation, however, because neither are elements of Lead Plaintiff's *prima facie* §§11 or 12(a)(2) case.  *See* ¶¶23, 336; *In re Giant Interactive Group, Inc. Sec. Litig.*, 07 cv 10588 (RWS), 2009 U.S. Dist. LEXIS 69414, at *22-*24 (S.D.N.Y. August 7, 2009) (collecting cases); *Sonic Innovations*, 2003 U.S. Dist. LEXIS 2378, at *18-*21 ("plaintiffs do not need to plead…causation…in order to recover"); 15 U.S.C. § 77k(e) ("Provided, ***That if the defendant proves***…."); *McKesson*, 126 F. Supp. 2d at 1258; *In re Countrywide Financial Corp. Sec. Litig.*, 588 F. Supp. 2d 1132, 1168, n.40 (C.D. Cal. 2008) ("Damages are not an element.").

Finally, in raising damages at this stage, defendants are yet again prematurely seeking to raise a question of fact for the jury.[43]  *See NPS*, 2007 U.S. Dist. LEXIS 48713, at *18 ("at this early stage in the process, the court confines its inquiry to the pleadings and does not explore the evidence" on damages); *In re Rhythms Sec. Litig.*, 300 F. Supp. 2d 1081, 1092 (D. Colo. 2004); *In re CIGNA Corp. Sec. Litig.*, 459 F. Supp. 2d 338, 356-57 (E.D. Pa. 2006).  The portions of

---

[42]     *See*, *e.g.*, Underwriter Mem. at 5.

[43]     Defendants also inappropriately raise other affirmative defenses.  *Compare* Billings & Bishop Mem. at 21-22 (raising affirmative defense of due diligence) *with Fuwei*, 2009 U.S. Dist. LEXIS 59658, at *26 ("Defendants may, ***on a motion for summary judgment***, avail themselves of the various 'due diligence' or 'reasonable care' affirmative defenses provided for by sections 11 and 12(a)(2).").

defendants' memoranda discussing plaintiffs' presumed damages are, therefore, misplaced and premature. *See Giant Interactive*, 2009 U.S. Dist. LEXIS 69414, at *22-*24. Defendants can assert their affirmative defense of "negative causation" to damages in their answer and pursue that defense through discovery if they so choose.[44] *Id.* ("the affirmative defense of negative causation is generally not properly raised on a Rule 12(b)(6) motion").

### C. The Complaint Alleges Materially False Statements and Omissions in the Offering Documents

No defendant disputes the fact that the Offering Documents failed to provide any information regarding SemGroup's speculative trading strategies to SGLP's investors. *See* ¶¶77, 125-147, 159, 166-168. Indeed, SGLP's Offering Documents failed to disclose that SemGroup's speculative trading accounted for approximately 50% of SemGroup's revenue in the years ***before*** 2007, and ***before*** the IPO. ¶¶77, 126. Defendants' failure to advise SGLP's investors of SemGroup's speculative trading scheme and inability to effectively manage the risks associated therewith in the Offering Documents was undeniably information a reasonable SGLP investor would have considered important in the "total mix" of information. *See* ¶124 ("In light of SGLP's parasitic dependency on its Parent, Defendants were obligated to disclose…SemGroup's speculative trading."); *Williams*, 339 F. Supp. 2d at 1256; *In re Elan Corp. Sec. Litig.*, 543 F. Supp. 2d 187, 208 (S.D.N.Y. 2008); *In re K-tel Int'l Sec. Litig.*, 300 F.3d 881, 898 (8th Cir. 2002).

While defendants failed to disclose SemGroup's reliance on speculative trends to drive its business, the defendants repeatedly touted the benefits SGLP's investors could expect from the

---

[44] Importantly, nothing prevents Lead Plaintiff from adding class representatives to address damage, tracing or standing-related defenses at class certification under Fed. R. Civ. P. 23. *See Hevesi v. Citigroup Inc.*, 366 F.3d 70, 82-83 (2nd Cir. 2004); *In re Global Crossing, Ltd. Sec. Litig.*, 313 F. Supp. 2d 189, 204 (S.D.N.Y. 2003) ("nothing in the PSLRA requires that the lead plaintiffs have standing to assert all of the claims that may be made on behalf of all of the potential classes and subclasses of holders of different categories of security at issue in the case").

company's relationship with SemGroup. *See, e.g.*, ¶¶ 126-129, 137, 162. For instance, the SGLP Offering Documents, that all of the Individual Defendants (except Cooper) and SemGroup GP signed, detailed, *inter alia*, that: (i) SGLP's Throughput Agreement with SemGroup would provide SGLP with "minimum revenues of $6.4 million per month" (¶127), and subsequently, with the addition of the Terminalling Agreement, $135 million per year (¶166); (ii) SemGroup's strong financial condition was instrumental to the success and growth of SGLP (¶¶128-129); (iii) as a result of its close relationship with SemGroup, SGLP had minimal exposure to changes in crude oil prices (¶131); and (iv) SGLP benefited from SemGroup's experienced management team (¶137). Thus, by their own undeniable conduct, defendants made clear to investors the material importance of SemGroup's business operations to SGLP. *See Schaffer*, 29 F. Supp. 2d at 1221 (holding that "[d]efendant [who] chose to release selective positive information...while allegedly withholding negative information" has duty to speak fully and truthfully).

Yet, while promoting SemGroup to SGLP's investors in great detail, defendants also failed to disclose that: (i) SemGroup's trading strategy had begun to fail and went beyond merely managing risk and hedging against crude oil supplies and pricing (¶132); (ii) the true nature of SemGroup's troubled business presented a real and material risk to SGLP (¶133); (iii) SemGroup's liquidity was impaired (¶134); (iv) SemGroup was in desperate need of additional cash (¶¶167-169); and (v) SemGroup's management team did not have a system of controls in place to address these issues (¶144). *See Schaffer*, 29 F. Supp. 2d at 1221.

While defendants attempt to argue that a public company (SGLP) has no duty to disclose material information of an "affiliated" company (SemGroup), this argument bends the term "affiliated" to the breaking point.[45] SGLP, unlike a corporate affiliate, was a limited partnership

---

[45]   *See* Wallace Mem. at 14; Billings & Bishop Mem. at 13; Kivisto Mem. at 8-10; SGLP Mem. at 22-24.

without any of its own employees.  SGLP was controlled and used, like a bank, by SemGroup,

Kivisto, Wallace, Cooper, Foxx, Stallings and Brochetti.  ¶¶64, 138, 144, 173.  And SemGroup,

of course, was controlled by these same individuals.  In other words, the Individual Defendants

*were*, before their abrupt resignations, ***SGLP***.  *See* ¶¶26-35, 144.  As such, they had a duty to

SGLP's common unit holders to speak fully and truthfully, particularly when they chose to tout

SemGroup to SGLP's investors.[46]

      *J&R Marketing, SEP v. Gen. Motors Corp.*, 549 F. 3d 384 (6th Cir. 2008), a case upon

which defendants heavily rely, is distinguishable.  In *J&R Marketing*, plaintiffs alleged that

defendants failed to disclose "***all*** material, non-public, adverse" information it knew about

General Motors simply because the defendant represented that "its performance and credit rating

were closely related to GM's performance and credit rating" in its registration statement.  549

F.3d at 388, 394.  Unlike in the instant case, where the Individual Defendants had knowledge of

the information regarding SemGroup, in *J&R Marketing*, plaintiffs could "not contend that

[defendant] had any knowledge about the information at GM."  *Id*. at 391.  Instead, they only

argued "that the information was 'knowable' to [defendant]."  *Compare id. with* ¶¶145-146.  In

holding that the law does not require this type of blanket disclosure, the Sixth Circuit drew sharp

contrast to a situation, as here, where a company must provide additional information "when

what it has disclosed would be rendered misleading without that additional information." *J&R

Marketing*, 549 F.3d at 394.

---

[46]     Defendants repeatedly make the boilerplate assertion that defendants had no duty to disclose a problem that did not exist.  Kivisto Mem. at 5-7; Underwriter Mem. at 2; SGLP Mem. at 21.  Defendants are "pummeling a straw man."  *Carrier Access*, 2006 U.S. Dist. LEXIS 48603, at *16. First, SemGroup's speculative trading and resulting $1 billion margin balance did exist at the time of the IPO, as Foxx's testimony to former FBI Director Louis Freeh demonstrates.  ¶77.  Next, whether or not a fact existed "***is a fact question and is not an appropriate point of resolution on these motions***."  *Carrier Access*, 2006 U.S. Dist. LEXIS 48603, at *18; *Schaffer, Inc.*, 29 F. Supp 2d at 1220.

Importantly, plaintiff does ***not*** argue, as defendants suggest, that defendants were under a blanket obligation to disclose everything about SemGroup.  *See* ¶¶132-133, 135, 146, 167. Plaintiff merely alleges that by choosing to include specific, positive and detailed information about SemGroup's financial health and operations while failing to also disclose that its operating revenue was generated in large part by its speculative trading scheme – all of which was known to defendants – defendants' omissions became materially misleading.  *See* ¶¶125, 134, 136, 146, 159, 166, 173.  It is this omission that makes the partial information provided investors about SemGroup's operations misleading.  *See K-tel Int'l*, 300 F.3d at 898.

These omitted facts were not "so obviously unimportant to a reasonable investor that reasonable minds could not differ on the question of their importance."  *Goldman*, 754 F.2d at 1067.  Stated differently, once defendants chose to voluntarily disclose ***specific*** positive facts about SemGroup's business operations (*see* ¶¶125-131, 137, 159, 161-166) their failure to disclose that SemGroup derived approximately 50% of its revenue through SemGroup's speculative trading, made the statements in the IPO Offering Documents regarding SemGroup's business operations materially misleading to SGLP's investors.  And by the time of the Secondary Offering, defendants' failure to disclose SemGroup's then spiraling out of control speculative trading was even more material, thus making the omission that much more misleading to investors.  *See* §II.B., *supra*.

The market reaction to the disclosures about these previously-undisclosed facts at the end of the Class Period demonstrates the importance of this information to investors.  *See* ¶¶306-311. On June 17, 2008, the day the market learned of the likelihood of SemGroup's bankruptcy filing, SGLP's common units closed almost ***52%*** lower than the prior day's close on unusually heavy trading volume.  ¶306.  *See Ganino v. Citizens Utils. Co.*, 228 F.3d 154, 166-67 (2nd Cir. 2000)

(market response shortly after "poor earnings outlook first emerged" is indicia of materiality); *Nature's Sunshine*, 486 F. Supp. 2d at 1308 ("'the materiality of disclosed information may be measured *post hoc* by looking to the movement, in the period immediately following disclosure, of the price of the firm's stock."").  Clearly, as the stock chart below demonstrates, investors believed that these issues were important in the "total mix" of information about SGLP then in the marketplace:



While defendants may argue that the market was reacting only to news of SemGroup's insolvency, SemGroup's insolvency was a result of the trading that defendants omitted from the Offering Documents.   Plaintiffs allege that SemGroup's self-destructive speculative trading triggered the market reaction.  *See* ¶¶125, 173, 306-311.  And this was the same information that was not disclosed to SGLP's investors in the Offering Documents.  A "reasonable investor" would have considered this information important in determining whether to buy or sell SGLP common units. *See Pirraglia*, 339 F.3d at 1192 n.13; *Basic*, 485 U.S. at 239; *TSC Indus.*, 426 U.S. at 450; *Nature's Sunshine*, 486 F. Supp. 2d at 1308; *Sprint*, 232 F. Supp. 2d at 1215-16; *Williams*, 339 F. Supp. 2d at 1256.

The statements challenged by defendants were thus clearly material.   Defendants' repeated representations to the market would lead a reasonable investor to believe that the source of over 80% of SGLP's revenue stemmed from SemGroup's legitimate business practices rather than its high-risk speculative trading.   ¶123.   Given these material omissions, the Offering Documents fostered the belief in SGLP's investors that SemGroup's business was vastly more conservative than it actually was. *Goldman*, 754 F.2d at 1068-69 (defendants liable where "there was no note of caution in the defendants' statements and [] defendants knew caution was warranted").   Defendants are liable to Lead Plaintiff and the Class for their materially false and misleading statements and omissions in the Offering Documents.

**D.     The "Bespeaks Caution" Doctrine Does Not Shield Defendants from Liability**

Defendants assert that, even if their statements were false and misleading, their misrepresentations are protected by the "bespeaks caution" doctrine.[47]  *See* SGLP Mem. at 26-

---

[47]      The "bespeaks caution" doctrine applies to forward-looking statements and protects the speaker when the "'cautionary statements [are] substantive and tailored to the specific future projections, estimates, or opinions…which the plaintiffs challenge.'"  *Grossman v. Novell, Inc.*, 120 F. 3d 1112, 1120 (10th Cir. 1997) (quoting *In re Donald J. Trump Casino Sec. Litig.*, 7 F.3d 357, 371 (3d Cir. 1993)).

28; Billings & Bishop Mem. at 14-15.   "The bespeaks caution doctrine stands for the 'unremarkable proposition that statements must be analyzed in context' when determining whether or not they are materially misleading."   *Schaffer*, 29 F. Supp. 2d at 1221 (quoting *Grossman*, 120 F.3d at 1120).   "'A duty to speak the *full* truth arises when a defendant undertakes at duty to say anything.'"   *Schaffer*, 29 F. Supp. 2d at 1221; *Giant Interactive*, 2009 U.S. Dist. LEXIS 69414, at *20-*22.

Here, the actionable statements alleged in the Complaint are not forward-looking at all, but rather are either false because of omissions, or are statements concerning the present situation facing the company.  *See* ¶142 ("The foregoing boilerplate warnings…omitted material information that SGLP's Parent *was already engaged* in unauthorized, speculative trading…"). The bespeaks-caution "doctrine does not apply to misleading statements concerning 'present factual conditions,'" such, for instance, as SemGroup's omission of its then-present speculative trading strategy.  *Schaffer*, 29 F. Supp. 2d at 1221.  In the years before 2007, approximately 50% of SemGroup's revenue came from such trading.  ¶¶75, 77.

Thus, the misleading statements in the Offering Documents concerned "present factual conditions," not protected by the bespeaks caution doctrine. *Schaffer*, 29 F. Supp. 2d at 1221; *see In re Ribozyme Pharm., Inc. Sec. Litig.*, 119 F. Supp. 2d 1156, 1162-63 (D. Colo. 2000); *In re Stone & Webster, Inc., Sec. Litig.*, 414 F.3d 187, 213 (1st Cir. 2005) ("In our view, the [bespeaks-caution doctrine] does not confer a *carte blanche* to lie in such representations of current fact."); *P. Stolz Family P'ship L.P. v. Daum*, 355 F.3d 92, 96-97 (2nd Cir. 2004); *In re Veeco Instruments, Inc. Sec. Litig.*, 235 F.R.D. 220, 236 (S.D.N.Y. 2006).  Nor was it "designed to protect the dissemination of [] misleading information by simply adding the necessary cautionary language to a misrepresentation." *Williams*, 339 F. Supp. 2d at 1257.

Moreover, for the doctrine to protect the speaker for forward-looking statements, any "cautionary statements must be substantive and tailored to the specific future projections, estimates or opinions…which the plaintiffs challenge." *Sprint*, 232 F. Supp. 2d at 1221-22 (quoting *Grossman*, 120 F.3d at 1120). The limited cautionary language contained in the Offering Documents was insufficiently specific to nullify the misleading effect of defendants' material misrepresentations. *See Grossman*, 120 F. 3d at 1120; *Williams*, 339 F. Supp. 2d at 1257; *see also In re Initial Pub. Offering*, 358 F. Supp. 2d 189, 211-12 (S.D.N.Y. 2004). The Offering Documents' risk disclosures do not allude to, let alone disclose, SemGroup's speculative trading program. *See* ¶¶ 141-143. Instead, the risk disclosures generically warn that SGLP is dependent on SemGroup for a substantial majority of its revenue and that as a result, SGLP would be affected by any general inability of SemGroup to generate its own revenue. ¶¶139-143. This is precisely the type of vague, boilerplate warning that courts in this Circuit routinely reject under the "bespeaks caution" doctrine. *See Schaffer*, 29 F. Supp. 2d at 1221; *Williams*, 339 F. Supp. 2d at 1257.

The SGLP Defendants also contend that certain statements in the Complaint are not actionable because the statements contain or imply the word "believe."[48] Defendants misapply the holding of *Virginia Bankshares, Inc. v. Sandberg*, 501 U.S. 1083 (1991), and overlook the Complaint's allegations. Once an executive makes a specific statement concerning an issue, he or she takes on the duty to speak *the whole truth* concerning that topic. *K-tel Int'l*, 300 F.3d at 898 ("'a party who discloses material facts in connection with securities transactions assume[s] a duty to speak fully and truthfully on those subjects'").

It does not matter whether he or she states a fact as a "belief." The executive must state *all facts* necessary in order not to make the statement false or misleading. *In re Stellent, Inc. Sec.*

---

[48]        *See* SGLP Mem. at 27.

*Litig.*, 326 F. Supp. 2d 970, 983 (D. Minn. 2004).   Defendants remain liable for their false statements – even if they may have phrased a few of those statements as "opinions" or "beliefs." *Brogren v. Pohlad*, 960 F. Supp. 1401, 1408 (D. Minn. 1997) (statement of belief is actionable if the speaker is "aware of any undisclosed facts tending to seriously undermine the accuracy of the statement").   As Justice Scalia aptly put it:

> [N]ot every sentence that has the word "opinion" in it, or that refers to motivation for directors' actions, leads us into [a] physic thicket.  Sometimes such a sentence actually represents facts as facts rather than opinions – and in that event no more need be done than apply the normal rules for…liability.   I think that is the situation here.

*Virginia Bankshares*, 501 U.S. at 1109 (Scalia, J., concurring).   And that is also the situation **here**.   The statements quoted by defendants are undeniably false for failing to disclose SemGroup's liquidity issues.  *See* ¶¶125, 134, 136, 150, 166, 173.   "[M]erely packaging a false or misleading statement as a belief or opinion does not automatically insulate the speaker from" liability.  *Sprint*, 232 F. Supp. 2d at 1214.

Cherry-picking other statements out of the Complaint, defendants also contend certain false statements are so vague and innocuous that they are immaterial as a matter of law.[49]   They are wrong.   Materiality is almost always a question of fact.  *See Williams*, 339 F. Supp. 2d at 1252; *Schaffer*, 29 F. Supp. 2d at 1220; *Carrier Access*, 2006 U.S. Dist. LEXIS 48603, at *18; *Qwest*, 396 F. Supp. 2d at 1202; *TSC Indus., Inc.*, 426 U.S. at 450; *Nature's Sunshine*, 486 F. Supp. 2d at 1308; *Basic*, 485 U.S. at 239; *In re Xcel Energy*, 286 F. Supp. 2d 1047, 1055 (D. Minn. 2003) ("Circumstances are rarely such that immateriality is obvious at the pleadings stage.").   Immateriality can only be demonstrated on a motion to dismiss if ***defendants*** establish that the omitted information is ***so insignificant*** "in relation to the total mix of data available, that it would not have mattered to a reasonable investor."  *Gebhardt v. ConAgra Foods, Inc.*, 335

---

[49]      *See* SGLP Mem. at 26, 28-29.

F.3d 824, 829 (8th Cir. 2003).

Of course defendants do not attempt to meet this burden – nor could they.  The nature of SGLP's relationship with SemGroup was significant to SGLP's financial health and critical to defendants' investment case for SGLP.  Undeniably, the omitted facts "mattered to a reasonable investor" and defendants' false and misleading statements cannot therefore be considered immaterial as a matter of law.  *Gebhardt*, 335 F.3d at 829; *Asher v. Baxter Int'l Inc.*, 377 F.3d 727 (7th. Cir. 2004) (Easterbrook, J.); *EP Medsystems, Inc. v. Echocath, Inc.*, 235 F.3d 865, 872-75 (3rd Cir. 2000).

### E.     The Complaint Asserts a Claim Under §12(a)(2) of the Securities Act

Lead Plaintiff charges SGLP and the Underwriter Defendants with violations of §12(a)(2) for the materially false statements and omissions in the IPO and Secondary Offering Prospectuses.  *See* ¶¶36-50, 338-347.  The Prospectuses, like the Registration Statements, contained untrue statements of material fact and omitted other facts necessary to make the statements made not misleading, and failed to disclose material facts, as set forth in §IV.C., *supra*.

SGLP issued the Prospectuses and was an offeror and/or solicitor of sales of securities offered pursuant to the Prospectuses.  ¶340.  As the issuer, SGLP is strictly liable for the materially false and misleading statements contained in the Prospectuses for the IPO and Secondary Offering.  ¶341; *see* §III.C.2., *supra*.   Plaintiffs also allege that the Underwriter Defendants: (i) sold SGLP common units to the public, including Lead Plaintiff (¶¶36-50); (ii) transferred title to Lead Plaintiff and other members of the Class who purchased SGLP common units (¶343); (iii) transferred title of SGLP common units to other underwriters and/or broker-dealers that sold those securities as agents for the Underwriter Defendants (*id.*); and (iv) solicited the purchase of SGLP common units by Lead Plaintiff and other members of the Class,

motivated at least in part by the desire to serve the Underwriter Defendants' own financial interest – to the tune of $26 million – and the interests of SGLP.  *See* ¶¶ 340-347.  Nothing more is required.[50]  *Schaffer*, 29 F. Supp. 2d at 1222-23; *Sonic Innovations*, 2003 U.S. Dist. LEXIS 2378, at *18-*21; *Fuwei*, 2009 U.S. Dist. LEXIS 59658, at *26; 15 U.S.C. § 77l(a)(2).

### F.    The Complaint Asserts a Claim Under §15 of the Securities Act

"To state a claim for controlling person liability, plaintiff need only allege a primary violation of the underlying federal securities statute and 'control' by the alleged controlling person."  *Schaffer*, 29 F. Supp. 2d at 1225-26; *First Interstate Bank*, 969 F.2d at 898.   The Complaint properly asserts claims for control person liability by alleging both primary violations of the Securities Act and that SemGroup GP, the Investment Company Defendants and the Individual Defendants (including Cooper) controlled the primary violator.  ¶¶348-358; 15 U.S.C. § 77o; *Qwest*, 396 F. Supp. 2d at 1202-03 (under §15, "'a person who controls a party that commits a violation of the securities laws may be held jointly and severally liable with the primary violator'").

Because of either their ownership stake in SGLP and/or because of their positions of control and authority as senior officers of SGLP's General Partner, SemGroup GP, the Investment Company Defendants and all the Individual Defendants are liable as "controlling persons."  *See* ¶¶348-358.  While some defendants suggest that plaintiffs' §15 claims must be dismissed because Lead Plaintiff must plead facts that the alleged control person "induced or

---

[50]      Though defendants cite cases holding that, at trial, a plaintiff must prove that he or she purchased from a particular underwriter, these cases do not address pleading requirements.  *See, e.g., Dartley v. ErgoBilt Inc.*, No. CIV A. 398CV1442M, 2001 WL 313964, at *2 (N.D. Tex. Mar. 29, 2001).   Both SGLP and the Underwriter Defendants are liable under §12(a)(2) because "liability is not limited to the person who passes title to the securities, but extends to the person who successfully solicits the purchase, motivated at least in part by a desire to serve his own financial interests or those of the securities owner."  *Schaffer*, 29 F. Supp. 2d at 1222.  Here, the Underwriter Defendants generated approximately $26 million in fees through their role in the offerings.  *See* ¶¶117, 156.

participated in the alleged violation,"[51] the "Tenth Circuit **has expressly 'rejected those decisions that may be read to require a plaintiff to show the defendant actually or culpably participated in the primary violation**.'"  *Sonic Innovations*, 2003 U.S. Dist. LEXIS 2378, at *29.

## V.   CONCLUSION

For the foregoing reasons, defendants' motions to dismiss plaintiffs' §§11, 12(a)(2) and 15 claims should be denied.

Dated: September 1, 2009                    */s/ Ramzi Abadou*

**BARROWAY TOPAZ KESSLER
  MELTZER & CHECK, LLP**
Ramzi Abadou (*admitted pro hac vice*)
Erik D. Peterson (*admitted pro hac vice*)
580 California Street, Suite 1750
San Francisco, CA 94104
Tel: (415) 400-3000
Fax: (415) 400-3001

and

Stuart L. Berman (*admitted pro hac vice*)
Lauren Wagner Pederson (*admitted pro hac vice*)
Sharan Nirmul (*admitted pro hac vice*)
Naumon A. Amjed (*admitted pro hac vice*)
Michelle M. Newcomer (*admitted pro hac vice*)
280 King of Prussia Road
Radnor, PA 19087
Tel:    610.667-7706
Fax:    610.667-7056

*Lead Counsel for Lead Plaintiff and the Class*

**NELSON, ROSELIUS, TERRY
O'HARA & MORTON**
Douglas A. Terry (Bar Number 15855)
Jason E. Roselius (Bar Number 16721)
Guy R. Wood (Bar Number 15875)
P. O. Box 138800

---

[51]     Wallace Mem. at 34.

Oklahoma City, Oklahoma 73113-8800
Tel:    405.705.3600
Fax:    405.705.2573

*Liaison Counsel for Lead Plaintiff
and the Class*

## CERTIFICATE OF SERVICE

I certify that on the 1st day of September 2009, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF Registrants:

### Electronic Mail Notice List

- Alfred Robert Pietrzak      rpietrzak@sidley.com

- Archer Scott McDaniel      smcdaniel@mhla-law.com, jwaller@mhla-law.com

- B Warren Pope      wpope@kslaw.com

- Bruce W Collins      bcollins@ccsb.com

- Carolyn R Raines      craines@ccsb.com, jmcnatt@ccsb.com

- Christopher Wayne Ahart      ahartc@gtlaw.com, bartonr@gtlaw.com, worshamj@gtlaw.com

- Clark Otto Brewster      Cbrewster@brewsterlaw.com, jcobler@brewsterlaw.com, rcornelius@brewsterlaw.com

- Colin Hampton Tucker      chtucker@rhodesokla.com, scottom@rhodesokla.com

- Daniel Allan McLaughlin      dmclaughlin@sidley.com

- Don G Holladay      dholladay@holladaychilton.com, jwarner@holladaychilton.com, lspencer@holladaychilton.com

- Douglas Anthony Terry      terry@nrtlaw.com, docketing@nrtlaw.com, rhendrickson@nrtlaw.com

- Douglas Michael Todd      dmtodd@phillipsmurrah.com, pjbrown@phillipsmurrah.com

- Edward John Main      emain@secresthill.com, tlaignel@secresthill.com

- Edwin Takeshi Aradi      earadi@akingump.com, pdismuke@akingump.com, txdocketing@akingump.com

- Emily Coleman McCall      emccall@ccsb.com

- Frederic Dorwart      fdorwart@fdlaw.com, vvessels@fdlaw.com

- Gary S Chilton      gchilton@holladaychilton.com

- Gerald Joseph Lovoi      GLovoi@aol.com

- Gideon Andrew Lincecum    glincecum@holladaychilton.com,
  lgorrell@holladaychilton.com

- Heidi J Long    hlong@holladaychilton.com

- James David Jorgenson    pf@att.net, djorgenson@att.net

- James E Warner    jwarner@holladaychilton.com

- James Keith Secrest , II    jsecrest@secresthill.com,
  dcrutcher@secresthill.com, mcasey@secresthill.com

- Jesse Z Weiss    weissjz@gtlaw.com, cisnerosc@gtlaw.com,
  worshamj@gtlaw.com

- Joe H Witherspoon    joewitherspoon@cox.net, D.Malone100@yahoo.com,
  Michelle.quarles@sbcglobal.net

- John H Tucker    jtuckercourts@rhodesokla.com, gbarber@rhodesokla.com,
  lwhite@rhodesokla.com

- Joshua Z Rabinovitz    joshua.rabinovitz@kirkland.com,
  deirdre.oreilly@kirkland.com

- Kimberly Geiler Davis    daviskg@gtlaw.com, bartonr@gtlaw.com,
  worshamj@gtlaw.com

- Laurence Lindsay Pinkerton    pf@att.net, pinknav@aol.com

- Lisa S Gallerano    lgallerano@akingump.com

- Mark Byron Jennings    MJennings@brewsterlaw.com

- Mary Quinn-Cooper    general_delivery@ecslok.com, mcooper@ecslok.com

- Michael J Biles    bilesm@gtlaw.com, bryankat@gtlaw.com,
  worshamj@gtlaw.com

- Michael Paul Kirschner    mike@tklf.com, docketclerk@tklf.com

- Michael R Smith    mrsmith@kslaw.com, blee@kslaw.com,
  wpope@kslaw.com

- Michael W Youtt    myoutt@kslaw.com, ibutler@kslaw.com,
  scaracio@kslaw.com

- Nora Rose O'Neill    noneill@fdlaw.com, kmintz@fdlaw.com

- Orrin Harrison , III    oharrison@akingump.com, cblea@akingump.com,
  cvarner@akingump.com, kdunning@akingump.com

- Owen H Smith    osmith@sidley.com

- Paul Richard Bessette    bessettep@gtlaw.com, cisnerosc@gtlaw.com, worshamj@gtlaw.com

- Randall Edwin Long    rlong@rhodesokla.com, bcalnan@rhodesokla.com

- Robert Bradley Sartin    sartin@barrowgrimm.com, dcampbell@barrowgrimm.com

- Ronald L Oran    roran@velaw.com, aberman@velaw.com, cthau@velaw.com

- Stacy L Acord    sacord@mhla-law.com, jwaller@mhla-law.com, rwhitt@mhla-law.com

- Stuart William Emmons    swe@federmanlaw.com, law@federmanlaw.com, ngb@federmanlaw.com

- William Bernard Federman    wbf@federmanlaw.com, law@federmanlaw.com, ngb@federmanlaw.com

- William Brad Heckenkemper    brad@barrowgrimm.com, t.costa@barrowgrimm.com

- William Robert Burns    bburns@kslaw.com, jkmiec@kslaw.com, scaracio@kslaw.com

I further certify that on the 2nd day of September, 2009, I served the same document by U.S. Postal service on the following, who are not registered participants of the ECF system:


**Penny P Reid**
Weil Gotshal & Manges (New York)
767 5th Ave
New York, NY 10153


**Roger W Kirby**
**Mark A Strauss**
**Richard L Stone**
**Ira M Press**
Kirby McInerney LLP
825 THIRD AVE, 16TH FLOOR
NEW YORK, NY 10022

**Samuel H Rudman**
**David A Rosenfeld**
Coughlin Stoia Geller Rudman & Robbins
LLP (NY)
58 S SERVICE RD  STE 200
MELVILLE, NY 11747


**Darren J Robbins**
Coughlin Stoia Geller Rudman & Robbins
LLP
655 N BROADWAY STE 1900
SAN DIEGO, CA 92101

**Steven J Toll**
**Daniel S Sommers**
**Catherine A Torell**
**Jason M Leviton**
Cohen Milstein Sellers & Toll PLLC
1100 NEW YORK AVE NW STE 500
WASHINGTON, DC 20005-3964

**Joseph Weiss**
**Mark D Smilow**
**Moshe Balsam**
Weiss & Lurie (New York)
551 FIFTH AVE
NEW YORK, NY 10176

**Alan I Ellman**
**Christopher J Keller**
**Andrei V Rado**
Labaton Sucharow LLP
140 BROADWAY
NEW YORK, NY 10005

**Robert Craig Finkel**
**Natalie Marie Mackiel**
Wolf Popper LLP
845 3rd Ave
New York, NY 10022

**Michael Swick**
**Kim Elaine Miller**
Kahn Gauthier Swick, LLC
12 E 41ST ST
12TH FLOOR
NEW YORK, NY 10017

**Laurence D Paskowitz**
Paskowitz & Associates
60 E 42ND ST FLR 46TH
NEW YORK, NY 10165

**Roy L Jacobs**
Roy Jacobs & Associates
60 E 42ND ST FLR 46TH
NEW YORK, NY 10165

/s/ Ramzi Abadou
Ramzi Abadou