**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| IN RE: SEMGROUP ENERGY PARTNERS, L.P., SECURITIES LITIGATION | ) ) ) ) ) | Case No. 08-MD-01989 GKF-FHM |

# CARLYLE/RIVERSTONE DEFENDANTS' MOTION FOR CLARIFICATION OR RECONSIDERATION OF THE COURT'S APRIL 30, 2010 OPINION AND ORDER OR, ALTERNATIVELY, FOR CERTIFICATION OF AN IMMEDIATE APPEAL OF THE OPINION AND ORDER, AND OPENING BRIEF IN SUPPORT THEREOF

VINSON & ELKINS, L.L.P
Clifford Thau (*admitted pro hac vice*)
Ari M. Berman (*admitted pro hac vice*)
Ronald Oran (*admitted pro hac vice*)
666 Fifth Avenue
26th Floor
New York, NY 10103-0040
(212) 237-0000
*cthau@velaw.com*
*aberman@velaw.com*
*roran@velaw.com*

ROBERSTON & WILLIAMS
Michael Paul Kirschner, Esq.
OK Bar Number: OBA #5056
9658 N. May Avenue, Suite 200
Oklahoma City, OK 73120-2718
Telephone: (405) 848-1944
*mike@tklf.com*
*mike@tklf.com*

*Attorneys for Defendants Carlyle/Riverstone Global Energy and Power Fund II, L.P., C/R SemGroup Investment Partnership, L.P., C/R Energy Coinvestment II, L.P., Andrew Ward, and E. Bartow Jones*

## TABLE OF CONTENTS


PRELIMINARY STATEMENT ........ 1

ARGUMENT ........ 4

I. CLARIFICATION OR RECONSIDERATION OF THE APRIL 30 ORDER IS WARRANTED ........ 4

A. The Court should clarify that it intended to dismiss Plaintiff's claims against the C/R Defendants ........ 4

B. The Court's conclusions as to Defendant Cooper apply with equal or greater force to Ward and Jones and support dismissal of all of Plaintiff's claims against Ward and Jones ........ 7

II. ALTERNATIVELY, THE COURT SHOULD CERTIFY THE APRIL 30 ORDER FOR INTERLOCUTORY APPEAL WITH RESPECT TO THE CLAIMS AGAINST THE C/R DEFENDANTS ........ 9

A. The applicable legal standard ........ 11

B. The April 30 Order involves a controlling question of law ........ 11

C. Substantial difference of opinion exists with respect to the April 30 Order's treatment of "indirect" control person liability ........ 12

1. The meaning of "indirect control" in the context of equity investments and board membership presents an important question of law ........ 14

2. The meaning of "indirect control" in the context of ownership interest in the *parent* of the primary violator and board membership on the *parent* of the primary violator is an important question of law ........ 15

D. Certification of the April 30 Order would materially advance the ultimate termination of this litigation with respect to the C/R Defendants ........ 15

III. THE PROCEEDINGS AGAINST THE C/R DEFENDANTS SHOULD BE STAYED PENDING INTERLOCUTORY REVIEW ........ 16

CONCLUSION ........ 17

# TABLE OF AUTHORITIES

**Cases**


*Adams v. Kinder-Morgan, Inc.*,
340 F.3d 1083 (10th Cir. 2003) .......... passim

*Ashcroft v. Iqbal*,
129 S. Ct. 1937 (2009) .......... 15

*Boellstorff v. State Farm Mutual Auto. Ins. Co.*,
No. 05-CV-02192, 2007 U.S. Dist. LEXIS 11611 (D. Colo. 2007) .......... 12

*Castano v. American Tobacco Co.*,
162 F.R.D. 112 (E.D. La. 1995) .......... 16

*First Interstate Bank of Denver, N.A. v. Pring*,
969 F.2d 891 (10th Cir. 1992) .......... 12, 13

*Fye v. Okla. Corp. Comm'n*,
516 F.3d 1217 (10th Cir. 2008) .......... 4

*Homeland Stores, Inc. v. Resolution Trust Corp.*,
17 F.3d 1269 (10th Cir. 1994) .......... 11

*In re Dynex Capital Inc. Sec. Litig.*,
No. 05 Civ. 1897, 2006 U.S. Dist. LEXIS 35386 (S.D.N.Y. June 2, 2006) .......... 10, 15

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
352 F. Supp. 2d 429 (S.D.N.Y. 2005) .......... 14

*In re Healthcare Compare Corp. Sec. Litig.*
75 F.3d 276 (7th Cir. 1996) .......... 10

*In re Scientific-Atlanta, Inc. Sec. Litig.*,
No. 1:01-CV-1950, 2003 U.S. Dist. LEXIS 27749 (N.D. Ga. April 15, 2003) .......... 10

*In re Thornburg Mortgages, Inc. Sec. Litig.*,
No. CIV 07-0815, 2010 U.S. Dist. LEXIS 13375 (D. N.M. Jan. 27, 2010) .......... 7

*Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.*,
537 F.3d 527 (5th Cir. 2008) .......... 10

*Kersh v. Gen. Council of the Assemblies of God*,
535 F. Supp. 494 (N.D. Cal. 1982) .......... 10

*Lambert v. Calprotrack, Inc.*,
No. 95 C 4076, 1996 U.S. Dist. LEXIS 5735 (N.D. Ill. May 1, 1996)....................................14

*Laperriere v. Vesta Ins. Group*, Inc.,
526 F.3d 715 (11th Cir. 2008)...........................................................................................10

*Maher v. Durango*,
144 F.3d 1302 (10th Cir. 1998)...................................................................................passim

*Marsi v. Wakefield*,
602 F. Supp. 404 (D. Colo. 1983) .............................................................................10, 11, 15

*McMurtry v. Aetna Life Ins. Co.*, No. CIV-05-84-C,
2006 U.S. Dist. LEXIS 81138 (W.D. Ok. Nov. 3, 2006) .......................................................11

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,
547 U.S. 71 (2006) ..................................................................................................................9

*Richardson v. MacArthur*,
451, F.2d 35 (10th Cir. 1971) .........................................................................................12, 13

*Shire LLC v. Sandoz Inc.*,
No. 07-CV-00197-PAB, 2008 U.S. Dist. LEXIS 101446 (D. Colo. Dec. 5, 2008) ..................11

*Sonnenfeld v. City of Denver*,
100 F.3d 744 (10th Cir. 1996)...............................................................................................9

*The Sorkin, LLC v. Fischer Imaging Corp.*,
No. 03-cv-00631, 2005 U.S. Dist. LEXIS 19934 (D. Colo. June 21, 2005)............................13

*State of Oklahoma v. Tyson Foods, Inc.*,
No. 05-CV-329, 2009 U.S. Dist. LEXIS 33944 (N.D. Ok. April 21, 2009)..............................4

*State of Utah v. Kennecott Corp.*,
14 F.3d 1489 (10th Cir. 1994)................................................................................................9

*Tank v. Chronister*,
998 F. Supp. 1160 (D. Kan. 1997) .......................................................................................12

*Theoharous v. Fong*,
256 F. 3d 1219 (11th Cir. 2001)...........................................................................................14

*Tidewater Oil Co. v. United States*,
409 U.S. 151 (1972) ..............................................................................................................12

*Trujillo v. Bd. Of Educ. Of Albuquerque Pub. Sch.*,
212 Fed. Appx. 760 (10th Cir. 2007) .....................................................................................4

*Zishka v. Amer. Pad & Paper Co.*,
No. 3:98-CV-0660, 2001 U.S. Dist. LEXIS 25988 (N.D. Tex. Sept. 28, 2001) ........................ 14

**Statutes**

15 U.S.C § 78t(a) ........................................................................................................ passim

15 U.S.C. § 77o.......................................................................................................... passim

15 U.S.C. § 78u-4(b) ........................................................................................................ 9

28 U.S.C. § 1292(b) ...................................................................................................... passim

Defendants Carlyle/Riverstone Global Energy and Power Fund II, L.P., C/R SemGroup Investment Partnership, L.P., C/R Energy Coinvestment II, L.P. (collectively, "***Carlyle/Riverstone***"), Andrew Ward ("***Ward***"), and E. Bartow Jones ("***Jones***") (Ward, Jones, and Carlyle/Riverstone are collectively referred to as the "***C/R Defendants***") submit this Motion for clarification or reconsideration of the Court's April 30, 2010 Opinion and Order ("***April 30 Order***") denying the C/R Defendants Motion to Dismiss with Prejudice the Corrected Consolidated Complaint filed July 17, 2009 (Doc. No. 188) ("***Motion to Dismiss***") by Plaintiff Harvest Fund Advisors LLC ("***Plaintiff***"). Alternatively, the C/R Defendants request that the Court certify its denial of their Motion to Dismiss pursuant to 28 U.S.C. § 1292 for immediate interlocutory appeal. The C/R Defendants respectfully request oral argument on this Motion.

The C/R Defendants include (1) Carlyle/Riverstone, investment funds which owned a minority interest in SemGroup, L.P. ("***SemGroup***" or the "***Parent***"), the indirect parent of alleged primary violator SemGroup Energy Partners, L.P. ("***SGLP***"), and (2) Ward and Jones, who were Carlyle/Riverstone's designees on the Management Committee of the Parent's general partner, SemGroup G.P., L.L.C. ("***SemGroup GP***")[1] during the Putative Class Period.

**PRELIMINARY STATEMENT**

The C/R Defendants respectfully request that the Court clarify or reconsider its April 30 Order and grant the C/R Defendants' Motion to Dismiss in its entirety. In light of the significant burden of time and expense that is certain to befall the C/R Defendants in the event that they are forced to remain as defendants in a securities class action of this size, the C/R Defendants

---

[1] The Complaint defines SemGroup Energy Partners G.P., L.L.C. as "SemGroup GP." In their motion to dismiss, the C/R Defendants defined SemGroup Energy Partners G.P., L.L.C. as "SGLP GP" and defined SemGroup G.P., L.L.C., the general partner of the Parent, as "SemGroup GP." The April 30 Order also initially defined SemGroup Energy Partners G.P., L.L.C. as "SGLP GP," but referred to this entity as "SemGroup GP" throughout the Order.

request that the Court clarify that it did, in fact, intend to dismiss the C/R Defendants from this case -- as the Court concluded on page 47 of the April 30 Order when it ruled that the Corrected Consolidated Complaint ("***Complaint***") "fails to allege facts supporting [the C/R Defendants] were 'controlling persons' under § 15." (April 30 Order at 47) (emphasis added). And, because the standard for pleading a control person liability claim under § 15 of the Securities Act is the same as under § 20(a) of the Exchange Act, the Court also should dismiss Plaintiff's § 20(a) claims against the C/R Defendants. *Maher v. Durango*, 144 F.3d 1302, 1305 n.7 (10th Cir. 1998) ("***Maher***") ("Although worded differently, the control person provisions of § 15 and § 20(a) are interpreted the same."). To the extent that the Court did not intend to dismiss the C/R Defendants, the C/R Defendants request that the Court reconsider its decision.

Moreover, the C/R Defendants are mindful that the Court had to address ten motions to dismiss, made by over two dozen defendants, concerning a Complaint that is 145 pages long. The Court's April 30 Order, however, does not rely upon, let alone discuss, the Tenth Circuit's binding authority in *Adams v. Kinder-Morgan, Inc.*, 340 F.3d 1083, 1108 (10th Cir. 2003) ("***Adams***") -- holding that mere membership on the board of directors of the alleged primary violator is insufficient as a matter of law to plead control person liability -- in considering Plaintiff's control person claims arising out of Ward's and Jones's service as a minority of members of SemGroup GP's Management Committee. We respectfully submit that the Court should apply *Adams*, which requires dismissal of Plaintiff's control person claims against Ward and Jones because Plaintiff has failed to allege any fact showing that Ward and Jones could control, directly or indirectly, the day-to-day operations of nonparty SemGroup, much less the alleged primary violator, SGLP. It is undisputed that Ward and Jones were not on SGLP's

board, did not authorize *any* action by SGLP, or sign *any* of SGLP's public disclosures at issue in this case.

In the event that the Court declines to clarify or reconsider its April 30 Order to dismiss the C/R Defendants, the C/R Defendants respectfully request that the Court certify that part of the April 30 Order that denied the C/R Defendants' Motion for immediate appellate review pursuant to 28 U.S.C. § 1292(b). Interlocutory appeals under § 1292 are appropriate in cases such as this, where an immediate appeal could dispose of all the claims against the C/R Defendants in their entirety and protect them against protracted and expensive litigation. The Supreme Court and other courts have consistently emphasized the need to dismiss unmeritorious class action securities fraud cases at the pleadings stage, and explicitly recognized the potentially extortionate cost imposed by these cases once they proceed beyond a motion to dismiss. These well-settled factors make the Court's denial of the C/R Defendants' Motion to Dismiss particularly suitable for immediate appellate review.

As shown below, based on cases decided by and within the Tenth Circuit, there is a substantial difference of opinion as to whether the allegations in the Complaint that Carlyle/Riverstone owned a minority interest in the *parent* of the primary violator and that Ward and Jones were members of the Management Committee of the *parent* of the primary violator, as a matter of law, are sufficient to establish claims for "indirect" control person liability against the C/R Defendants. The parameters of "indirect" control person liability, as the Court used that term in its April 30 Order, is an important question with practical implications, including the potential exposure facing investment firms who purchase ownership stakes in companies and appoint members of boards of directors.

## ARGUMENT

### I. CLARIFICATION OR RECONSIDERATION OF THE APRIL 30 ORDER IS WARRANTED

The Court has discretion to clarify or reconsider its April 30 Order. *State of Oklahoma v. Tyson Foods, Inc.*, No. 05-CV-329, 2009 U.S. Dist. LEXIS 33944 (N.D. Ok. April 21, 2009) (Frizzell, J.) (granting defendants' motion for clarification of prior order); *Trujillo v. Bd. Of Educ. Of Albuquerque Pub. Sch.*, 212 Fed. Appx. 760, 765 (10th Cir. 2007) (a motion for reconsideration filed prior to final judgment is "an interlocutory motion invoking the district court's general discretionary authority to review and revise interlocutory ruling."). In adjudicating a motion for reconsideration, "the district court is not bound by the strict standards for altering or amending a judgment encompassed in Federal Rules of Civil Procedure 59(e) and 60." *Fye v. Okla. Corp. Comm'n*, 516 F.3d 1217, 1224 (10th Cir. 2008).

#### A. The Court should clarify that it intended to dismiss Plaintiff's claims against the C/R Defendants

The C/R Defendants moved the Court to dismiss them from this case because Plaintiff failed to plead any facts that could establish claims for "control person" liability pursuant to § 15 of the Securities Act of 1933 (the "***Securities Act***"), 15 U.S.C. § 77o, or § 20(a) of the Securities Exchange Act of 1934 (the "***Exchange Act***"), 15 U.S.C § 78t(a) – the only claims Plaintiff has even attempted to plead against the C/R Defendants. In addressing Plaintiff's control person liability claims pursuant to § 15 of the Securities Act, the Court's April 30 Order properly ruled that Plaintiff "fails to allege facts supporting" the § 15 claims against the C/R Defendants, ruling in relevant part:

> the Riverstone/Carlyle Defendants owned minority interests in the Parent Company but had no interest in SGLP or SemGroup, GP….Ward and [Jones] were members of the Management Committee of the parent but did not serve as officers or directors of SemGroup, GP or SGLP. The

> Complaint fails to allege facts supporting these defendants were "controlling persons" under § 15.

(April 30 Order at 47) (emphasis added).

By contrast, in the Court's discussion of Plaintiff's purported claim against the C/R Defendants pursuant to § 20(a) of the Exchange Act, despite recognizing that "the relationship between [the C/R Defendants] and SGLP is more tenuous than is the relationship between Individual Defendants who served as officers or directors of both the Parent and SemGroup GP" (April 30 Order at 39), the Court stated that the allegations in the Complaint could create "a sufficient inference of indirect control by [the C/R Defendants] of SGLP and SemGroup GP." (April 30 Order at 40). The April 30 Order's "Conclusion" also states that the "Motion to Dismiss of the Carlyle/Riverstone Defendants [Doc. 201] is denied." (April 30 Order at 48).

The Court's apparent dismissal of Plaintiff's § 15 claims against the C/R Defendants is compelled by the Tenth Circuit's holdings in *Maher* and *Adams* – both of which affirmed dismissal of control person claims at the motion to dismiss stage and are on all fours here. And, because the standard for pleading a control person liability claim under § 15 of the Securities Act is the same as under § 20(a) of the Exchange Act, to the extent that the Court intended to dismiss Plaintiff's § 15 claims, the Court also should dismiss Plaintiff's § 20(a) claims against the C/R Defendants. *Maher,* 144 F.3d at 1305, n.7 ("Although worded differently, the control person provisions of § 15 and § 20(a) are interpreted the same.").

In *Maher*, the Tenth Circuit affirmed the District Court's grant of a defendant's motion to dismiss and held that an allegation of defendant's minority ownership interest in the alleged primary violator, even when coupled with a right to appoint a board member, was not sufficient to plead control person liability. 144 F.3d at 1305-06. Under the standards announced in that case, the Complaint does not allege facts that are sufficient to plead a control person claim against

Carlyle/Riverstone because, if, as in *Maher*, a minority ownership interest in the alleged ***primary*** violator is not sufficient to sustain a claim, then certainly a claim against the C/R Defendants should not be sustained based on allegations of Carlyle/Riverstone's minority ownership interest in the ***parent*** of the alleged primary violator. Moreover, while the April 30 Order states that "assessing control person liability is not ordinarily subject to resolution on a motion to dismiss" (April 30 Order at 40, *citing In re Mutual Funds Inv. Litig.*, 566 F.3d 111, 130 (4th Cir. 2009)), in both *Maher* and *Adams*, however, the Tenth Circuit affirmed the District Courts' grants of motions to dismiss claims for control person liability where, as here, the plaintiff failed to plead any facts from which it can reasonably be inferred the defendant was a control person.

Similarly, the Tenth Circuit's holding in *Adams* requires dismissal of Plaintiff's control person claims against Ward and Jones. In *Adams*, the Tenth Circuit held that, to survive a motion to dismiss, a complaint against a director must either allege executive officer status or make some other non-conclusory factual allegation from which control of the alleged primary violator's day-to-day operations can be inferred. 340 F.3d at 1108. In other words, membership on the board of directors of the alleged primary violator is insufficient as a matter of law to plead control person liability. We respectfully submit that the Court should apply the Tenth Circuit's holding in *Adams* in ruling on Plaintiff's claims against Ward and Jones because Plaintiff has failed to allege any fact showing that Ward and Jones, as a minority of the members of SemGroup GP's Management Committee, could control, directly or indirectly, the day-to-day operations of nonparty SemGroup, much less the alleged primary violator, SGLP. It is undisputed that Ward and Jones were not on SGLP's board, did not authorize *any* action by SGLP, or sign *any* of SGLP's public disclosures. Moreover, in connection with its discussion of Plaintiff's § 20(a) claims, the Court noted that Carlyle/Riverstone received certain distributions

from SemGroup. (April 30 Order at 40). While the C/R Defendants submit that receipt of such distributions -- which companies make to shareholders or equity owners in the ordinary course of business -- are not relevant to the Court's analysis of "indirect control," to the extent the Court disagrees, it is important to note that neither Ward nor Jones received any such distributions.

The most recent case within the Tenth Circuit to apply *Adams* to control person claims against directors of an alleged primary violator is the District of New Mexico's January 27, 2010 decision in *In re Thornburg Mortgages, Inc. Sec. Litig.*, No. CIV 07-0815, 2010 U.S. Dist. LEXIS 13375, at *140-44 (D. N.M. Jan. 27, 2010). There, the District Court granted the defendants' motion to dismiss the plaintiff's control person claims against certain directors, holding that, based on the Tenth Circuit's ruling in *Adams*, non-executive membership on the board of the alleged primary violator is legally insufficient to establish control person liability.[2]

### B. The Court's conclusions as to Defendant Cooper apply with equal or greater force to Ward and Jones and support dismissal of all of Plaintiff's claims against Ward and Jones

The April 30 Order dismissed Plaintiff's control person claims against Defendant Cooper, SemGroup's Treasurer, who managed SemGroup's day-to-day financial decisions. In so doing, the Court stated that "Cooper was Treasurer of the Parent, but unlike the other Individual Defendants, was not an officer or director of [SGLP GP] and signed no public offering documents." (April 30 Order at 47). The Court also stated that the Complaint does not allege that Cooper "actively participated in preparing or issuing SGLP's SEC filings" or in "any other dissemination of false information by SGLP." (April 30 Order at 25). As such, "Cooper's relationship with SGLP was more attenuated than the other Individual Defendants'." (*Id.* at 24).

[2] The District Court denied other directors' motions to dismiss where the plaintiff alleged that those directors also held executive officer positions -- such as CEO, CFO, and Chief Lending Officer -- which were sufficient to sustain an inference of control. *Id.* at *144.

As is true of Cooper, Ward and Jones were not officers or directors of SGLP GP. Significantly, the Complaint does not -- and cannot -- allege that Ward and Jones actively participated in preparing or issuing any of SGLP's SEC filings or offering documents.

Moreover, although the Court granted his motion to dismiss, Cooper is alleged to have been directly involved in the misconduct that caused SemGroup to file for bankruptcy, including possessing "specific knowledge about Kivisto's speculative trading activity." (April 30 Order at 24, n. 6). He also "refused to cooperate with the Examiner's investigation . . . and invoked his Fifth Amendment privilege against self-incrimination when questioned under oath by the Examiner." (*Id.*). The Examiner concluded that Cooper "provided inaccurate and misleading information" to SemGroup's Management Committee (which included Ward and Jones) and others concerning SemGroup's financial condition and trading operations." (Examiner's Report at 16-17, attached as Ex. 1 to Declaration of Ari Berman in Support of C/R Defendants' Motion to Dismiss).

By contrast, the Examiner's Report, relied on by Plaintiff in its Complaint, contains no finding that Ward or Jones engaged in any misconduct. And, the only allegations relating to Ward and Jones upon which the Court relied are that they served as members of the Parent's Management Committee and that they signed memoranda of action authorizing SemGroup to sell certain assets to SGLP (April 30 Order at 40). The memoranda of action only demonstrate that Ward and Jones acted as members of a Management Committee (or a board of directors) normally would by voting to authorize SemGroup to enter into certain transactions. Under binding Tenth Circuit authority, this is not enough to establish that Ward and Jones had control over the "day-to-day operations" of SemGroup, let alone over the primary violator, SGLP.

At bottom, the Court's decision to dismiss Cooper should apply with equal, if not greater, force to Ward and Jones, and we respectfully request that the Court rule that they should be dismissed from this case.

## II. ALTERNATIVELY, THE COURT SHOULD CERTIFY THE APRIL 30 ORDER FOR INTERLOCUTORY APPEAL WITH RESPECT TO THE CLAIMS AGAINST THE C/R DEFENDANTS

In the event that the Court is not inclined to clarify or reconsider its April 30 Order and dismiss the C/R Defendants, we respectfully urge the Court to certify the April 30 Order for immediate appellate review pursuant to § 1292(b).

While courts, including the Tenth Circuit, allow for immediate appellate review of interlocutory orders in only certain circumstances, the Tenth Circuit has emphasized the utility and appropriateness of § 1292(b) as a means of "avoiding unnecessary litigation." ***State of Utah v. Kennecott Corp.***, 14 F.3d 1489, 1495 (10th Cir. 1994) (§ 1292(b) is "an obvious statutory basis for appeal in the context of avoiding unnecessary litigation"); ***see also*** Report of the Committee of the Judicial Conference of the Tenth Circuit, S. Rep. No. 2434, 85th Cong., 2d Sess. 1 (1958) (appendix to the Senate report), reprinted in 1958 U.S.C.C.A.N. 5255, 5262 (interlocutory appeal is appropriate where "extended and expensive proceedings probably can be avoided by immediate final decision of controlling questions encountered early in the action.").

Moreover, Congress and the Supreme Court have emphasized that securities fraud class action cases present a unique risk of protracted and expensive litigation. ***See, e.g.***, the Private Securities Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(b); ***Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit***, 547 U.S. 71, 80 (2006) (recognizing the "danger of vexatiousness" and "perceived abuses of the class-action vehicle"). Accordingly, federal courts, including courts in the Tenth Circuit, repeatedly have certified for immediate appeal denials of motions to dismiss securities fraud complaints. ***See, e.g., Sonnenfeld v. City of Denver***, 100 F.3d

744, 746 (10th Cir. 1996) (accepting jurisdiction pursuant to § 1292(b) of appeal of district court's order denying motion to dismiss a complaint alleging securities fraud); ***Indiana Elec. Workers' Pension Trust Fund IBEW v. Shaw Group, Inc.***, 537 F.3d 527 (5th Cir. 2008) (same); ***In re Healthcare Compare Corp. Sec. Litig.***, 75 F.3d 276, 279 (7th Cir. 1996) (same); ***In re Dynex Capital Inc. Sec. Litig.***, No. 05 Civ. 1897, 2006 U.S. Dist. LEXIS 35386, at * 8-9 (S.D.N.Y. June 2, 2006) (certifying for interlocutory appeal order denying defendants' motion to dismiss securities fraud complaint); ***In re Scientific-Atlanta, Inc. Sec. Litig.***, No. 1:01-CV-1950, 2003 U.S. Dist. LEXIS 27749, at *10-11 (N.D. Ga. April 15, 2003) (same); ***Marsi v. Wakefield***, 602 F. Supp. 404, 406 (D. Colo. 1983) (same).

Recognizing the burden that control person liability claims can place on parties, courts also have certified for interlocutory appeal cases involving control person liability. ***See Kersh v. Gen. Council of the Assemblies of God***, 535 F. Supp. 494, 498 (N.D. Cal. 1982) (certifying for interlocutory appeal order denying motion to dismiss claims under § 20(a)); ***see also Laperriere v. Vesta Ins. Group***, Inc., 526 F.3d 715, 719 (11th Cir. 2008) (accepting jurisdiction pursuant to § 1292(b) of appeal of district court's order regarding aspects of § 20(a) of the Exchange Act).

In the event that they remain in this case as defendants, the C/R Defendants face the prospect of precisely the sort of protracted and expensive litigation with which Congress and the Supreme Court and other courts have evinced serious concern -- one that could easily involve a sprawling discovery process, including massive electronic document production and dozens of depositions. As the Court is aware, to prove control person liability under the Exchange Act and Securities Act, Plaintiff must demonstrate a primary violation of the securities laws; accordingly, the C/R Defendants will have no choice other than to be involved in virtually all aspects of the case. While the C/R Defendants recognize that, if they were dismissed from the case, the

remaining parties could seek to subpoena discovery from the C/R Defendants, the burden of complying with non-party discovery is dwarfed by the burdens of being a defendant in a large securities class action. The C/R Defendants can avoid these significant burdens by an immediate appeal of the Court's April 30 Order.

**A. The applicable legal standard**

A District Court may certify an interlocutory order for immediate appeal if it "involves [1] a controlling question of law [2] as to which there is substantial ground for difference of opinion and . . . [3] an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b); *see Homeland Stores, Inc. v. Resolution Trust Corp.*, 17 F.3d 1269, 1271 (10th Cir. 1994). Each of these elements is satisfied here.

**B. The April 30 Order involves a controlling question of law**

It is well-settled that an order involves a "controlling question of law" within the meaning of § 1292 when reversal of such an order saves time for the district court, and time and expense for the litigants. *See McMurtry v. Aetna Life Ins. Co.*, No. CIV-05-84-C, 2006 U.S. Dist. LEXIS 81138, at *4 (W.D. Ok. Nov. 3, 2006) (question is controlling if "interlocutory reversal might save time for the district court, and time and expense for the litigants") (citations omitted); *see also Shire LLC v. Sandoz Inc.*, No. 07-CV-00197-PAB, 2008 U.S. Dist. LEXIS 101446, at *5 (D. Colo. Dec. 5, 2008) ("a question is controlling if it has 'the potential for substantially accelerating disposition of the litigation' or 'will end the matter pending.'") (citations omitted); *Marsi*, 602 F. Supp. at 406 (certifying order denying motion to dismiss). A reversal of the April 30 Order's determination that Plaintiff sufficiently pled facts to create an inference of "indirect control" by the C/R Defendants would not only save time and expense for the Court and the C/R Defendants, it would dispose of the claims against the C/R Defendants in their entirety. The usefulness of § 1292(b) at this stage of the litigation is underscored by the Supreme Court's view

that the "express purpose of § 1292(b)" is the "expeditious termination of litigation in the district courts." *Tidewater Oil Co. v. United States*, 409 U.S. 151, 171-172 (1972).

### C. Substantial difference of opinion exists with respect to the April 30 Order's treatment of "indirect" control person liability

There appears to be substantial difference of opinion with respect to the Court's conclusion that Plaintiff has sufficiently pled facts to create an inference of "indirect control" by the C/R Defendants under § 15 of the Securities Act and § 20(a) of the Exchange Act. Because the Tenth Circuit twice has affirmed dismissals of control person liability claims under similar circumstances, *see Adams* and *Maher*, at a minimum, the April 30 Order presents a question of law which should be resolved by the Circuit Court. There is "room for reasonable debate" and substantial grounds for difference of opinion within and outside the Tenth Circuit as to what is required to show "indirect control" under the Securities Act and Exchange Act. *Boellstorff v. State Farm Mutual Auto. Ins. Co.*, No. 05-CV-02192, 2007 U.S. Dist. LEXIS 11611, at *10 (D. Colo. 2007) (certifying for appeal under § 1292(b) order relating to application of tolling doctrine); *Tank v. Chronister*, 998 F. Supp. 1160, 1162 (D. Kan. 1997) (certifying case for interlocutory appeal where case "raises an important and close question of law").

The Tenth Circuit first used the term "indirect control" in *Richardson v. MacArthur*, 451 F.2d 35, 41-42 (10th Cir. 1971), where it held that an insurance company controlled its employee, who handled the company's business in one state. In so doing, the Tenth Circuit stated that a Plaintiff must demonstrate "only some indirect means of discipline or influence short of actual direction to hold a 'controlling person' liable." *Id.* at 42.

The Tenth Circuit next addressed "indirect control" in *First Interstate Bank of Denver, N.A. v. Pring*, 969 F.2d 891 (10th Cir. 1992), where it applied *Richardson* and ruled that a defendant's stock ownership, position as a director, and creditor status, all in the company

directly controlling the primary violator, put the defendant in "a position of at least indirect control" over the primary violator. *Id.* at 898.[3]

By contrast, in its more recent decisions in *Maher* and *Adams*, the Tenth Circuit has taken a significantly narrower view of "indirect control," and has done so in affirming the grants of motions to dismiss. In *Maher*, the Tenth Circuit acknowledged its prior decisions in *Richardson* and *First Interstate Bank*, but nonetheless affirmed the District Court's grant of a motion to dismiss where the plaintiff had alleged control person liability based upon a defendant's minority ownership interest in, and right to appoint a board member of, the alleged primary violator -- holding that it was "unwilling to stretch the boundaries" of control person liability where such liability is founded on a "tenuous connection." 144 F.3d at 1305-06. Most recently in *Adams*, the Tenth Circuit held that alleging non-executive membership on the board of directors of the alleged primary violator is insufficient as a matter of law to establish control person liability -- "[t]he assertion that a person was a member of a corporation's board of directors, without any allegation that the person individually exerted control or influence over the day-to-day operations of the company, does not suffice to support an allegation that the person is a control person within the meaning of the Exchange Act." 340 F.3d at 1108.[4]

Cases outside the Tenth Circuit also provide a substantial basis for disagreement concerning whether Plaintiff has sufficiently pled "indirect control" by the C/R Defendants over

---

[3] In *First Interstate*, the following facts were sufficient to demonstrate that a defendant had "indirect control" over a primary violator: (1) defendant, Pring, was director of a company, AmWest, whose officers and directors constituted the entire board of the primary violator; (2) Pring was VP of AmWest for a period of time; (3) Pring was the sole general partner of an entity that held a 20% ownership interest in AmWest; (4) Pring was, with his wife, a creditor of AmWest. 969 F.2d at 898.

[4] *See also The Sorkin, LLC v. Fischer Imaging Corp.*, No. 03-cv-00631, 2005 U.S. Dist. LEXIS 19934, at *33-34 (D. Colo. June 21, 2005) (applying Adams and dismissing control person claim against director defendant because none of the alleged facts show that the defendant "exerted control or influence over the day-to-day operations of the [primary violator]").

SGLP. *See, e.g., ., Theoharous v. Fong*, 256 F. 3d 1219, 1227-28 (11th Cir. 2001) (ownership of 39 percent of a corporation's stock insufficient to show control); *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 352 F. Supp. 2d 429, 458–59 (S.D.N.Y. 2005) (allegations of 30 percent ownership of voting shares and ability to appoint three of nine board members did not constitute control); *Zishka v. Amer. Pad & Paper Co.*, No. 3:98-CV-0660, 2001 U.S. Dist. LEXIS 25988, at *4-5 (N.D. Tex. Sept. 28, 2001) (dismissing control person liability claims where plaintiff alleged that parent owned 38 to 50 percent of stock of alleged primary violator subsidiary and placed three designees on subsidiary's board); *Lambert v. Calprotrack, Inc.*, No. 95 C 4076, 1996 U.S. Dist. LEXIS 5735, at *5-7 (N.D. Ill. May 1, 1996) (allegation that defendant company controlled the primary violator through its control of company that owned primary violator not sufficient to allege "indirect control"; individual defendant's board membership on parent of subsidiary that had a 20 percent interest in primary violator not sufficient to allege "indirect control").

### 1. The meaning of "indirect control" in the context of equity investments and board membership presents an important question of law

It is common for private equity firms, and other types of investment firms, to acquire minority ownership interests in companies as well as the ability to designate one or more members of the company's board of directors. The extent to which such arrangements expose investment firms to control person liability based upon a theory of "indirect control" is an important question for commercial and investment firms. While the Tenth Circuit's *Maher* and *Adams* decisions are instructive -- and the C/R Defendants believe these decisions require dismissal of all of Plaintiff's claims against the C/R Defendants -- the April 30 Order reveals a substantial difference in opinion over the pleading requirements for control person liability claims cases arising from such investments.

**2. The meaning of "indirect control" in the context of ownership interest in the *parent* of the primary violator and board membership on the *parent* of the primary violator is an important question of law**

We are aware of no authority (nor has Plaintiff cited any) addressing whether a plaintiff has satisfied the Supreme Court's requirement to plead "a plausible claim for relief" by alleging a claim for control person liability based upon an investment fund's minority ownership interest in the *parent* of the primary violator and the fund's right to appoint members to the board of the *parent* of the primary violator. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950-51 (2009). Given the apparent absence of authority addressing this issue, and the substantial ground for reasonable disagreement with the April 30 Order's conclusion that such facts create "a sufficient inference of indirect control" by the C/R Defendants of SGLP, certification for interlocutory appeal also will allow the Tenth Circuit to weigh in on this important area of the law.

**D. Certification of the April 30 Order would materially advance the ultimate termination of this litigation with respect to the C/R Defendants**

If the Tenth Circuit agrees with the C/R Defendants, an appeal will not only "materially advance" the termination of this lawsuit as to the C/R Defendants, it would terminate Plaintiff's case against them altogether. *See Marsi*, 602 F. Supp. at 406 (certifying order denying motion to dismiss because "an appeal may materially advance the ultimate termination of the litigation"); *In re Dynex Capital Inc. Sec. Litig.*, 2006 U.S. Dist. LEXIS 35386, at * 8-9 (District Court certified for interlocutory appeal its denial of a defendant's motion to dismiss a securities fraud claim because such appeal "will 'materially advance' the termination of litigation and is in the interest of judicial efficiency" as "substantial resources may be expended in vain both by the parties and this court if [his] initial conclusion proves incorrect.").

## III. THE PROCEEDINGS AGAINST THE C/R DEFENDANTS SHOULD BE STAYED PENDING INTERLOCUTORY REVIEW

Section 1292(b) specifically contemplates that a stay of District Court proceedings may be appropriate pending resolution of the certified ruling on appeal. 28 U.S.C. § 1292(b). Judicial efficiency concerns that counsel in favor of permitting an immediate appeal of the April 30 Order -- avoiding potentially "vexatious discovery requests" and protracted and expensive litigation -- support imposing a stay of the proceedings against the C/R Defendants during the pendency of an appeal. *See Dabit*, 547 U.S. at 81 (listing "vexatious discovery requests" as among the problems Congress recognized as present in class action securities fraud cases); *Castano v. American Tobacco Co.*, 162 F.R.D. 112, 117 (E.D. La. 1995) (recognizing that a stay of proceedings is appropriate when substantial costs of litigation may be obviated by appeal). Moreover, Plaintiff will not be prejudiced by a limited stay because the Court already has lifted the PSLRA's automatic discovery stay, which has enabled Plaintiff to obtain a large amount of discovery from Defendants, including the C/R Defendants.

**CONCLUSION**

For the reasons set forth herein, the C/R Defendants respectfully request that the Court grant the C/R Defendants' Motion for Clarification or Reconsideration, or, in the Alternative, for Certification for Interlocutory Appeal Under § 1292(b) of the April 30 Order. In addition, the C/R Defendants respectfully request oral argument on this Motion.

Dated: May 19, 2010

By: s/ Clifford Thau ________

VINSON & ELKINS, L.L.P
Clifford Thau (*admitted pro hac vice*)
Ari M. Berman (*admitted pro hac vice*)
Ronald Oran (*admitted pro hac vice*)
666 Fifth Avenue, 26th Floor
New York, NY 10103-0040
(212) 237-0000
*cthau@velaw.com*
*aberman@velaw.com*
*roran@velaw.com*

ROBERSTON & WILLIAMS
Michael Paul Kirschner, Esq.
OK Bar Number: OBA #5056
9658 N. May Avenue, Suite 200
Oklahoma City, OK 73120-2718
Telephone: (405) 848-1944
*mike@tklf.com*

*Attorneys for Defendants Carlyle/Riverstone Global Energy and Power Fund II, L.P., C/R SemGroup Investment Partnership, L.P., C/R Energy Coinvestment II, L.P., Andrew Ward, and E. Bartow Jones*

CERTIFICATE OF SERVICE

I certify that on May 19, 2010, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Douglas A. Terry
Ramzi Abadou
Erik D. Peterson
Stuart L. Berman
Lauren Wagner Pederson
Sharan Nirmul
Naumon A. Amjed
Michelle M. Newcomer
Gregory M. Castaldo
Sean M. Handler
John H. Tucker
Colin H. Tucker
Randall E. Long
Paul R. Bessette
Michael J. Biles
Jesse Z. Weiss
James K. Secrest, II
Karl G. Dial
Robert Sartin
Michael Paul Kirschner
Ari M. Berman
Laurence L. Pinkerton

Kimberly G. Davis
Don G. Holladay
Gary S. Chilton
Heidi J. Long
Gideon A. Lincecum
James E. Warner
Michael W. Youtt
William R. Burns
Michael R. Smith
B. Warren Pope
Orrin L. Harrison, III
Lisa S. Gallerano
Clark 0. Brewster
Mark B. Jennings
Bruce W. Collins
Carolyn R. Raines
Edward J. Main
Theodore W. Daniel
Brad Heckenkemper
Clifford Thau
Ronald L. Oran
J. David Jorgenson

I further hereby certify that on May 19, 2010, I served the attached document by U.S. First Class Mail, postage prepaid to the following, who are not registered participants of the EFC system:

Catherine A. Torell
Cohen, Milstein, Hausfeld & Toll, PLLC
150 E. 52nd Street, 30th Floor
New York, NY 10022

Daniel S. Sommers
Jason M. Leviton
Steven J. Toll
Cohen, Milstein, Sellers & Toll, PLLC
1100 New York Ave. NW, Suite 500
Washington, DC 20005-3964

Darren J. Check
Steven D. Resnick
Barroway, Topaz, Kessler, Meltzer & Check, LLP
280 King of Prussia Road
Radnor, PA 19087

Darren J. Robbins
Coughlin, Stoia, Geller, Rudman & Robbins, LLP
655 N. Broadway, Suite 1900
San Diego, CA 92101

David A Rosenfeld
Samuel H. Rudman
Coughlin, Stoia, Geller, Rudman & Robbins, LLP 58 S. Service Road, Suite 200
Melville, NY 11747

Roy L. Jacobs
Roy Jacobs & Associates
60 East 42nd Street, 46th Floor
New York, NY 10165

Roger W. Kirby
Richard L Stone
Mark A. Strauss
Ira M. Press
Kirby, Mclnerney, LLP
825 Third Avenue, 16th Floor
New York, NY 10022

Joseph H. Weiss
Mark D. Smilow
Moshe Balsam Weiss & Lurie
551 Fifth Avenue
New York, NY 10176

Gabor Balassa
Kirkland & Ellis, LLP
300 N. LaSalle
Chicago, IL 60654

Robert Craig Finkel
Natalie Marie Mackiel
Wolf Popper LLP
845 3rd Avenue
New York, NY 10022

Kim Elaine Miller
Michael Swick
Kahn, Gauthier, Swick, LLC
12 E.41st Street, 12th Floor
New York, NY 10017
Penny P. Reid
Weil, Gotshal & Manges
767 5th Avenue
New York, NY 10153

Laurence D. Paskowitz
Paskowitz & Associates
60 E. 42nd Street, 46th Floor
New York, NY 10165

s/ Michael Paul Kirschner
Michael Paul Kirschner, Esq.