**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| IN RE SEMGROUP ENERGY PARTNERS, L.P., SECURITIES LITIGATION | CASE NO. 08-MD-1989-GKF-FHM |

# LEAD PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO THE CARLYLE/OPPORTUNISTIC DEFENDANTS' MOTIONS FOR RECONSIDERATION AND CERTIFICATION PURSUANT TO 28 U.S.C. §1292(b)
## REDACTED VERSION

**NELSON, ROSELIUS, TERRY O'HARA & MORTON**
Jason E. Roselius (Bar Number 16721)
Douglas A. Terry (Bar Number 15855)
Guy R. Wood (Bar Number 15875)
P. O. Box 138800
Oklahoma City, Oklahoma 73113-8800
Telephone: (405) 705-3600
Facsimile: (405) 705-2573

*Liaison Counsel for Lead Plaintiff and the Class*

**BARROWAY TOPAZ KESSLER MELTZER & CHECK, LLP**
Ramzi Abadou (*admitted pro hac vice*)
Nichole Browning
Stacey Kaplan
Erik D. Peterson (*admitted pro hac vice*)
580 California Street, Suite 1750
San Francisco, CA 94104
Tel: (415) 400-3000
Fax: (415) 400-3001

and

Stuart L. Berman (*admitted pro hac vice*)
Lauren Wagner Pederson (*admitted pro hac vice*)
Naumon A. Amjed (*admitted pro hac vice*)
Michelle M. Newcomer (*admitted pro hac vice*)
Neena Verma
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610)667-7056

*Lead Counsel for Lead Plaintiff and the Class*

## Table of Contents

Page

I. PRELIMINARY STATEMENT ... 1

II. LEGAL STANDARDS ... 7

A. Reconsideration ... 7

B. 28 U.S.C. §1292(b) ... 7

C. §§15 and 20(a) ... 9

D. The Order ... 10

III. ARGUMENT ... 12

A. Reconsideration is Unwarranted ... 12

1. The Order Did Not "Misapprehend" the Law ... 12

2. Lead Plaintiff Pleads Control Defendants' Control Over the Activities That Underlie the Primary Violations ... 15

B. The Investment Company Defendants Fail to Meet Any of the Three Requirements for §1292(b) Interlocutory Appeal ... 20

C. Control is an Issue of Fact ... 21

1. There is No Substantial Difference of Opinion on Control-Person Liability in this Circuit ... 22

2. An Interlocutory Appeal Will Delay This Litigation ... 24

D. The Action Should Not be Stayed ... 25

IV. CONCLUSION ... 25

## TABLE OF AUTHORITIES


Page(s)

**CASES**

*In re Adam Aircraft Indus. Inc.*,
2010 U.S. Dist. LEXIS 24461 (D. Colo. 2010) .......... 5, 22, 24

*Adams v. Burlington N. R.R. Co.*,
843 F. Supp. 686 (D. Kan. 1994) .......... *passim*

*Ahrenholz v. Bd. of Trustees*,
219 F.3d 674 (7th Cir. 2000) .......... 8

*In re Alstom SA Sec. Litig.*,
454 F. Supp. 2d 187 (S.D.N.Y. 2006) .......... 19

*Batwin v. Occam, Networks Inc.*,
2008 U.S. Dist. LEXIS 52365 (C.D. Cal. 2008) .......... 5, 16

*In re Bysis Sec. Litig.*,
2005 U.S. Dist. LEXIS 28343 (S.D.N.Y. 2005) .......... 2, 6, 20, 24

*Caterpillar Inc. v. Lewis*,
519 U.S. 61 (1996) .......... 8

*Certain Underwriters at Lloyd's v. Nance*,
2006 U.S. Dist. LEXIS 95657 (D.N.M. 2006) .......... 21, 22

*In re Charles Schwab Corp. Sec. Litig.*,
257 F.R.D. 534 (N.D. Cal. 2009) .......... 15

*In re Cylink Sec. Litig.*,
178 F. Supp. 2d 1077 (N.D. Cal. 2001) .......... 19

*In re Enron Corp.*,
2008 U.S. Dist. LEXIS 7340 (S.D.N.Y. 2008) .......... 8

*In re First Am. Corp. ERISA Litig.*,
2008 U.S. Dist. LEXIS 107676 (C.D. Cal. 2008) .......... 24

*First Interstate Bank of Denver, N.A. v. Pring*,
969 F.2d 891 (10th Cir. 1992), *rev'd on other grounds*, 511 U.S. 164 (1994) .......... *passim*

*In re Grand Jury Proceedings June 1991*,
767 F. Supp. 222 (D. Colo. 1991) .......... 21, 22, 23

*Hancock v. City of Okla. City*,
857 F.2d 1394 (10th Cir. 1988) .......... 7

*Hightower v. Schwarzenegger*,
2009 U.S. Dist. LEXIS 109603 (E.D. Cal. 2009) .......... 8, 9, 25

*Hoffman v. Citibank (S.D.), N.A.*,
2007 U.S. Dist. LEXIS 98644 (C.D. Cal. 2007) .......... 22

*Hubbell v. Lincicome*,
2007 U.S. Dist. LEXIS 41477 (D. Colo. 2007) .......... 24

*Kalin v. Xanboo, Inc.*,
526 F. Supp. 2d 392 (S.D.N.Y. 2007) .......... 11, 16

*Lane v. Page*,
581 F. Supp. 2d 1094 (D.N.M. 2008) .......... 2, 4, 9

*Laperriere v. Vesta Ins. Group, Inc.*,
526 F.3d 715 (11th Cir. 2008) .......... 22

*In re LDK Solar Sec. Litig.*,
584 F. Supp. 2d 1230 (N.D. Cal. 2008) .......... 8

*Lindley v. Life Investors Ins. Co. of Am.*,
2010 U.S. Dist. LEXIS 37484 (N.D. Okla. 2010) .......... 7

*Lumpkin v. United Recovery Sys., L.P.*,
2009 U.S. Dist. LEXIS 60752 (N.D. Okla. 2009) .......... 2, 7, 16

*Maher v. Durango Metals, Inc.*,
144 F.3d 1302 .......... *passim*

*McFarlin v. Conseco Servs., LLC*,
381 F.3d 1251 (11th Cir. 2004) .......... 21

*Miller v. Norfolk S. Ry. Co.*,
208 F. Supp. 2d 851 (N.D. Ohio 2002) .......... 1

*Moody v. Ford Motor Co.*,
2007 U.S. Dist. LEXIS 78534 (N.D. Okla. 2007) .......... 1, 8

*In re Mut. Funds Inv. Litig.*,
566 F.3d 111 (4th Cir. 2009) ("*Mutual Funds*") .......... 5, 14, 16

*In re Nash Finch Co. Sec. Litig.*,
2007 U.S. Dist. LEXIS 55862 (D. Minn. 2007) .......... 6, 20, 24

*In re Nature's Sunshine Prods Sec. Litig.*,
486 F. Supp. 2d 1301 (D. Utah 2007) .......... 6, 15, 16, 23

*In re NPS Pharm., Inc. Sec. Litig.*,
2007 U.S. Dist. LEXIS 48713 (D. Utah 2007) .......... 4, 21

*In re Pall Corp. Sec. Litig.*,
2009 U.S. Dist. LEXIS 110209 (E.D.N.Y. 2009) .......... 7

*In re Parmalat Sec. Litig.*,
599 F.Supp.2d 535 (S.D.N.Y. 2009) .......... 6, 20

*Pub. Serv. Co. of N.M. v. Fed. Energy Regulatory Comm'n*,
628 F.2d 1267 (10th Cir. 1980) .......... 21

*In re Qwest Commc'ns Int'l Inc. Sec. Litig.*,
396 F. Supp. 2d 1178 (D. Colo. 2004) .......... 4

*In re Ribozyme Pharm., Inc. Sec. Litig.*,
119 F. Supp. 2d 1156 (D. Colo. 2000) .......... 21

*Richardson v. MacArthur*,
451 F.2d 35 (10th Cir. 1971) .......... *passim*

*Schaffer v. Evolving Sys. Inc.*,
29 F. Supp. 2d 1213 (D. Colo. 1998) .......... 15

*Schleicher v. Wendt*,
2007 U.S. Dist. LEXIS 94701 (S.D. Ind. 2007) .......... 8

*SEC v. Int'l Chem. Dev. Corp.*,
469 F.2d 20 (10th Cir. 1972) .......... 21, 23

*In re SemGroup Energy Partners, L.P., Sec. Litig.*,
2010 U.S. Dist. LEXIS 42791 (N.D. Okla. 2010) .......... *passim*

*Servants of the Paraclete v. John Does I-XVI*,
204 F.3d 1005 (10th Cir. 2000) .......... 7

*Sonnenfeld v. Denver*,
100 F.3d 744 (10th Cir. 1996) .......... 22

*In re Spectranetics Corp.*,
2009 U.S. Dist. LEXIS 108542 (D. Colo. 2009) .......... 7

*State of Utah v. Kennecott Corp.*,
14 F.3d 1489 (10th Cir. 1994) .......... 8

*Steinbeck v. Sonic Innovations, Inc.*,
2003 U.S. Dist. LEXIS 2378 (D. Utah 2003) ... 19, 23

*Taylor v. Turley*,
2010 U.S. Dist. LEXIS 2675 (D. Utah 2010) ... 1, 8

*In re Thornburg Mortgage, Inc. Sec. Litig.*,
2010 U.S. Dist. LEXIS (D.N.M. 2010) ... 15

*West Palm Beach Firefighters' Pension Fund v. Startek, Inc.*,
2008 U.S. Dist. LEXIS 47748 (D. Colo. 2008) ... 13

*In re Williams Sec. Litig.*,
339 F. Supp. 2d 1206 (N.D. Okla. 2003) ... 4, 5, 9, 23

**STATUTES**

28 U.S.C. §1292(b) ... *passim*

17 C.F.R. §230.405 ... 9

Lead Plaintiff respectfully submits this memorandum of law in opposition to (i) Carlyle/Riverstone Defendants' Motion for Clarification or Reconsideration of the Court's April 30, 2010 Opinion and Order or, Alternatively, for Certification of an Immediate Appeal of the Opinion and Order (the "Carlyle Motion"); and (ii) A.R. Thane Ritchie's ("Ritchie") and Ritchie Opportunistic Trading Ltd.'s Motion for Reconsideration of Motion to Dismiss the Complaint or, in the Alternative, for Certification of an Interlocutory Appeal ("Opportunistic Motion") (together, the "Carlyle/Opportunistic defendants").[1]

## I. PRELIMINARY STATEMENT

The Carlyle/Opportunistic Motions are extraordinary not only for the relief they seek, but for the manner in which they seek it.[2] "[A]t best, the motion[s] simply express[] disagreement with [the Court's] decision, and treat[], in effect, [the] ruling and [O]rder as though they were an opponent's brief, the rationale of which was subject to refutation, rather than, as a judicial order, acknowledgement."[3] Motions for reconsideration and requests for certification pursuant to 28 U.S.C. §1292(b) require far more than the disagreement, "even if vehement," of counsel. *Taylor v. Turley*, 2010 U.S. Dist. LEXIS 2675, at *3 (D. Utah 2010).[4] They are drastic remedies that require "extraordinary" circumstances, and impose "heavy burden[s]." *Moody v. Ford Motor*

---

1 The Opportunistic Motion was filed two days after the Carlyle Motion, and, given the substantial overlap between the motions, Lead Plaintiff has filed the instant consolidated opposition so as not to burden the parties or the Court with two largely overlapping memoranda. Lead Plaintiff incorporates by reference herein, the memoranda of law and supplemental memorandum Lead Plaintiff filed in opposition to defendants' motions to dismiss. *See* Dkt Nos. 220 and 221.

2 This is the second time defendants have sought an interlocutory appeal in this still nascent matter. On March 2, 2009, defendants filed a Petition for Writ of Mandamus challenging the Court's February 5, 2009 Order Granting Lead Plaintiff's Motion to Modify the PSLRA Stay of Discovery. On April 24, 2009, the United States Court of Appeals for the Tenth Circuit summarily denied the Petition.

3 *Miller v. Norfolk S. Ry. Co.*, 208 F. Supp. 2d 851, 853 (N.D. Ohio 2002).

4 Unless otherwise noted, all emphasis is added and internal citations are omitted.

*Co.*, 2007 U.S. Dist. LEXIS 78534 (N.D. Okla. 2007) (Frizzell, J.); *Lumpkin v. United Recovery Sys., L.P.*, 2009 U.S. Dist. LEXIS 60752, at *5-*7 (N.D. Okla. 2009) (Frizzell, J.). The Carlyle/Opportunistic defendants not only neglect to mention these standards, but they fail to point to any circumstances, let alone exceptional ones, to warrant the relief they seek. *See id.*

Moreover, while requested in the alternative, the relief the Carlyle/Opportunistic defendants seek is itself contradictory. In support of their motions for reconsideration, the Carlyle/Opportunistic defendants vigorously argue that the Court committed a "clear error" of law. Opportunistic Mem. at 5; *see* Carlyle Mem. at 4. By contrast, in support of their §1292(b) requests, the Carlyle/Opportunistic defendants suggest that there "is 'room for reasonable debate' and substantial grounds for difference of opinion … as to what is required to show 'indirect control'" in this Circuit. *See, e.g.*, Carlyle Motion at 12. A district court cannot, by definition, commit clear error when there is also "room for reasonable debate" as to what the law requires. *See In re Bysis Sec. Litig.*, 2005 U.S. Dist. LEXIS 28343, at *4 n.2 (S.D.N.Y. 2005) ("The Court notes a certain inconsistency in the moving papers.").

Nevertheless, the law of control-person liability in this Circuit is well settled. *See Lane v. Page*, 649 F. Supp. 2d 1256, 1304-10 (D.N.M. 2009). "The statute is remedial and is to be construed liberally. It has been interpreted as requiring ***only some indirect means of discipline or influence short of actual direction*** to hold a 'controlling person' liable." *Richardson v. MacArthur*, 451 F.2d 35, 41 (10th Cir. 1971) ("*Richardson*"); *First Interstate Bank of Denver, N.A. v. Pring*, 969 F.2d 891, 898 & n.11 (10th Cir. 1992) (same); *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305 n.8, 1306 (10th Cir. 1998) (same); *In re SemGroup Energy Partners, L.P., Sec. Litig.*, 2010 U.S. Dist. LEXIS 42791, at *66 (N.D. Okla. 2010) (same). Here,

consistent with these authorities, the Court found that the facts alleged in the Complaint,[5] "***taken as a whole***, create a sufficient inference of indirect control by the Ritchie Defendants and Carlyle/Riverstone of SGLP and SemGroup GP." *Semgroup*, 2010 U.S. Dist. LEXIS 42791, at *71.

In addition, the issues the Carlyle/Opportunistic defendants blanketly claim are "undisputed" are, in fact, intensely disputed. Carlyle Mem. at 2. For instance, the Carlyle defendants suggest that they "did not authorize ***any*** action by SGLP" during the Class Period. Carlyle Mem. at 3. Lead Plaintiff takes a different view. For instance, on February 13, 2008 (as members of the "Management Committee of SemGroup G.P, LLC"), A.R. Thane Ritchie ("Ritchie"), Andrew Ward ("Ward") and E. Bartow Jones ("Jones") each personally executed a memorandum of action authorizing SGLP's General Partners L.P.'s ("SGLP") to "prepare or cause to be prepared, and to execute and file with the Securities and Exchange Commission [], a Registration Statement on Form S-1 relating to the [Secondary] Offering" by SGLP.[6] Exhibit A. This is a fact that can and does establish the Carlyle/Opportunistic defendants' authorization of actions by SGLP, and it is one that goes to the heart of Lead Plaintiff's allegations. And, as the Court correctly held, these types of disputed fact issues can and will be resolved through full discovery.[7] *See* §II.A.2, *infra*.

---

5 All "¶" references are to the Corrected Consolidated Securities Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint"). Dkt. No. 99.

6 *See* ¶¶375-76; *SemGroup*, 2010 U.S. Dist. LEXIS 42791, at *71 ("plaintiff alleges defendants Thane Ritchie, Ward and Jones...signed memoranda of action authorizing the drop down of assets in connection with the Secondary Offering").

7 *See SemGroup*, 2010 U.S. Dist. LEXIS 42791, at *71 ("as a complex factual question, assessing control person liability is not ordinarily subject to resolution on a motion to dismiss") (quoting *In re Mut. Funds Inv. Litig.*, 566 F.3d 111, 130 (4th Cir. 2009) ("*Mutual Funds*") (quoting *Maher*, 144 F.3d at 1305)).

In addition to mischaracterizing the facts alleged in the Complaint, the Carlyle/Opportunistic defendants also "misapprehend[] the controlling law." Opportunistic Mem. at 6. For instance, the Carlyle/Opportunistic defendants tersely claim that the Order "does not rely upon, let alone discuss, the Tenth Circuit's binding authority in *Adams* [*v. Kinder-Morgan, Inc.*, 340 F.3d 1083 (10th Cir. 2003) ("*Adams*").]" Carlyle Mem. at 2; Opportunistic Mem. at 6 (suggesting that the Court "misapprehended the controlling law because it did not acknowledge the Tenth Circuit's rule in *Adams*"). The Court's decision to rely on *Maher* ustifies neither reconsideration nor certification pursuant to §1292(b).[8] By relying on *Maher*, rather than *Adams*, this Court simply chose to do what many other courts in this Circuit have done in interpreting and applying §§15 and 20(a) after *Adams* was decided – namely, rely solely on *Maher*.[9]

Regardless, *Adams* does not aid defendants. For instance, while defendants repeatedly propose that *Adams* "affirmed dismissal of control person claims" at the motion to dismiss stage, they fail to also mention that *Adams* also ***reversed*** the district court for dismissing control claims against two other individual defendants, finding it "***erred*** in dismissing that claim against Hall and McKenzie." *Adams*, 340 F.3d at 1109; Carlyle Mem. at 5; Opportunistic Mem. at 12. In fact, in *Adams*, the Tenth Circuit held that one of those defendants (*i.e.*, McKenzie) possessed control ***even though*** "the plaintiff merely refer[red] to his position within the company." *Adams*,

---

8 Moreover, in several other portion of the Order, the Court spends considerable time discussing and interpreting *Adams*. Hence, the Court did not overlook the decision.

9 *See SemGroup*, 2010 U.S. Dist. LEXIS 42791, at *65, *70-*71 (relying on *Maher*, not *Adams*, in finding control adequately pled); *In re Williams Sec. Litig.*, 339 F. Supp. 2d 1242, 1270 (N.D. Okla. 2003) (Holmes, J.) ***(same)***; *In re NPS Pharm., Inc. Sec. Litig.*, 2007 U.S. Dist. LEXIS 48713, at *24 (D. Utah 2007) ***(same)***; *In re Qwest Commc'ns Int'l Inc. Sec. Litig.*, 396 F. Supp. 2d 1178, 1202 (D. Colo. 2004) ***(same)***; *Lane v. Page*, 581 F. Supp. 2d 1094, 1131 (D.N.M. 2008) ***(same)***.

340 F.3d at 1109. Hence, as discussed herein, *Adams* is entirely consistent with this Court's ruling – namely, that control-person liability is a fact-intensive inquiry that depends on the "circumstances of th[e] case."[10] *Adams*, 340 F.3d at 1109. Reaching, the Carlyle/Opportunistic defendants also erroneously claim that the Court "misapprehended" *Maher*. There, the court found that "[a]lleging that a defendant is the ***sibling*** of an individual who may or may not be an officer or employee of the primary violator is not sufficient to confer control person status on that defendant." *Maher*, 144 F.3d at 1305-06. Here, by contrast, the Complaint does not allege that the Carlyle/Opportunistic defendants' siblings are control persons. Like *Adams*, *Maher* is of no help to defendants.

As they did in support of their motions to dismiss, the Carlyle/Opportunistic defendants also spend considerable time hoping to distance themselves from SGLP. *See* Opportunistic Mem. at 3 ("SemGroup LP stood three levels above SGLP"); Carlyle Mem. at 3. In doing so, defendants overlook that "the legislative purpose in enacting a control person liability provision was to ***prevent*** people and entities from using ***straw parties, subsidiaries, or other agents acting on their behalf to accomplish ends that would be forbidden directly by the securities laws***." *Mut. Funds*, 566 F.3d at 130 (quoting *Laperriere v. Vesta Ins. Group, Inc.*, 526 F.3d 715, 721 (11th Cir. 2008)). Moreover, in re-raising this argument, defendants also ignore that, given the various individual defendants' overlapping roles at SemGroup and SGLP, the Carlyle/Opportunistic defendants' ability to control SGLP through these primary violators was as

10 By extension, of course, because control is a fact issue, §1292(b) certification is inappropriate. *See In re Adam Aircraft Indus. Inc.*, 2010 U.S. Dist. LEXIS 24461, at *8 (D. Colo. 2010) (§1292(b) requires a "pure" question of law); §III.B.1, *infra*.

plain as day during the Class Period.[11] *See In re Williams Sec. Litig.*, 339 F. Supp. 2d 1206, 1237-38 (N.D. Okla. 2003).

Indeed, like the "outside director" defendant whose control was established through management committee membership in *In re Nature's Sunshine Prods Sec. Litig.*, 486 F. Supp. 2d 1301, 1313-14 (D. Utah 2007), here, Jones and Ritchie, together with Thomas L. Kivisto ("Kivisto"), also served on SemGroup's Compensation Committee. *See id.*, *SemGroup*, 2010 U.S. Dist. LEXIS 42791, at *71; Exhibit B. The Compensation Committee was charged with, among other things, "discharging its responsibilities relating to compensation of the Company's executive officers...." Exhibit B. And, of course, the "compensation of the Company's Executive Officers" is a central facet of Lead Plaintiff's securities fraud allegations. *See* ¶¶288-91.

Similarly, defendants' claim that there are "no facts" exist demonstrating that they had any "***day-to-day*** control" over SemGroup or SGLP is simply false. During the Class Period, [redacted] *See* Exhibit C. This is yet another "fact" that undermines defendants' claim that there are no facts "showing that Ward and Jones could control, directly or indirectly, the day-to-day operations of nonparty SemGroup, much less the alleged primary violator, SGLP."[12] *Compare* Carlyle Mem. at 2, 6 *with* Exhibit C. Finally, the

---

11 *See Batwin v. Occam, Networks Inc.*, 2008 U.S. Dist. LEXIS 52365, at *80-*81 (C.D. Cal. 2008) (finding control adequately pled against ***investment company defendants who controlled individual primary violators***); *Williams*, 339 F. Supp. 2d at 1215 ("WCG was a wholly-owned subsidiary of The Williams Companies ("WMB"), and as such was controlled and dominated by WMB and its executives.").

12 The Opportunistic defendants try to raise the same baseless inference. *Compare* Opportunistic Mem. at 2-3, 6 *with* Exhibit C. Moreover, defendants fail to acknowledge that SemGroup itself is alleged to be a primary violator and is a non-party simply by virtue of its bankruptcy filing, which precludes it from being named as a party. *See* ¶56. Defendants have

Carlyle/Opportunistic motions should be denied because district courts routinely reject, as here, requests for interlocutory appeal involving §§15 and 20(a). *See generally In re Parmalat Sec. Litig.*, 599 F.Supp.2d 535 (S.D.N.Y. 2009); *In re Nash Finch Co. Sec. Litig.*, 2007 U.S. Dist. LEXIS 55862 (D. Minn. 2007); *Bysis*, 2005 U.S. Dist. LEXIS 28343; *see also* §III.B.1-3, *infra.*

## II. LEGAL STANDARDS

### A. Reconsideration

'Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. John Does I-XVI*, 204 F.3d 1005, 1012 (10th Cir. 2000); *Lumpkin*, 2009 U.S. Dist. LEXIS 60752, at *5-*7 (same). "Stated another way, a motion for reconsideration is not properly grounded in a request for a district court to rethink a decision it has already made, rightly or wrongly." *Lindley v. Life Investors Ins. Co. of Am.*, 2010 U.S. Dist. LEXIS 37484 (N.D. Okla. 2010). The decision of whether to grant or deny a motion for reconsideration is committed to the court's discretion. *See Hancock v. City of Okla. City*, 857 F.2d 1394, 1395 (10th Cir. 1988). Here, "[m]ost of [defendants'] arguments in support of [their] motions have been previously urged by [defendants] and considered by the court." *Lumpkin*, 2009 U.S. Dist. LEXIS 60752, at *5-*7.

### B. 28 U.S.C. §1292(b)

"The terms of [28 U.S.C. §1292(b)] admit of four criteria that must be satisfied before an issue may be certified for pretrial appeal: (1) the action must be a civil action; (2) the court must conclude that the order involves a controlling question of law; (3) there must be substantial ground for difference of opinion as to the resolution of that question; ***and*** (4) it must appear that

---

not and cannot dispute that they controlled SemGroup, and SemGroup's bankruptcy provides no dispensation of their control person liability.

an immediate appeal from the order may materially advance the ultimate termination of the litigation." *In re Spectranetics Corp.*, 2009 U.S. Dist. LEXIS 108542, at *11-*14 (D. Colo. 2009) (denying motion for reconsideration and §1292(b) appeal in PSLRA case). "As a general matter, rulings on the sufficiency of pleadings are not appropriate for interlocutory review." *In re Pall Corp. Sec. Litig.*, 2009 U.S. Dist. LEXIS 110209, at *7 (E.D.N.Y. 2009) (rejecting §1292 appeal in PSLRA case); *Schleicher v. Wendt*, 2007 U.S. Dist. LEXIS 94701, at *5 (S.D. Ind. 2007) (same) (Hamilton, J.).

"Even if these three requirements are satisfied, a district court still has the discretion in deciding whether or not to grant a party's motion for certification." *In re LDK Solar Sec. Litig.*, 584 F. Supp. 2d 1230, 1258 (N.D. Cal. 2008) (denying motion for reconsideration and §1292(b) appeal in PSLRA case). "Only exceptional circumstances justify departure from the basic policy of postponing appellate review until after the entry of final judgment." *Hightower v. Schwarzenegger*, 2009 U.S. Dist. LEXIS 109603, at *6 (E.D. Cal. 2009); *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 74 (1996). *State of Utah v. Kennecott Corp.*, 14 F.3d 1489, 1495 (10th Cir. 1994) ("A report by a Tenth Circuit committee addressing [§1292(b) appeals] found…the right to appeal should be limited to extraordinary cases."). Hence, "[a] motion for certification must be granted sparingly, and the movant bears the heavy burden of demonstrating that the case is an exceptional one in which immediate appeal is warranted." *Moody*, 2007 U.S. Dist. LEXIS 78534, at *2.

"Mere disagreement, even if vehement, with a court's ruling on a motion to dismiss does not establish a 'substantial ground for difference of opinion' sufficient to satisfy the statutory requirements for an interlocutory appeal." *Taylor*, 2010 U.S. Dist. LEXIS 2675, at *2-*4. Moreover, a controlling question of law, as used in §1292(b), means a pure question of law,

requiring the resolution of "abstract" legal issues; ***it is not the application of a legal question to the particular facts of a case***. *See Ahrenholz v. Bd. of Trustees*, 219 F.3d 674, 677 (7th Cir. 2000). "It must be purely a question of law that the reviewing court could decide quickly and cleanly without having to study the record." *In re Enron Corp.*, 2008 U.S. Dist. LEXIS 7340, at *11 (S.D.N.Y. 2008). As here, "[t]he antithesis of a proper §1292(b) appeal is one that turns on whether there is a genuine issue of fact." *Hightower*, 2009 U.S. Dist. LEXIS 109603, at *7.

**C. §§15 and 20(a)**

To state a *prima facie* case of control person liability, a plaintiff must establish a primary violation of the securities laws and direct or indirect control over the primary violator. *See Maher*, 144 F.3d at 1305; *Richardson*, 451 F.2d at 41-42. The SEC defines "control" as "the possession, direct or indirect, of the power to direct or cause the direction of the management and policies of a person, whether ***through ownership of voting securities, by contract, or otherwise***." 17 C.F.R. §230.405. "This regulatory definition of control is a broad definition that the United States Court of Appeals for the Tenth Circuit has cited 'with approval.'" *Lane*, 649 F. Supp. 2d at 1273; *see, e.g., First Interstate*, 969 F.2d at 897.

In addition, the "control person liability" is a factual question "not ordinarily subject to resolution on a motion to dismiss." *SemGroup*, 2010 U.S. Dist. LEXIS 42791, at *71; *Williams*, 339 F. Supp. 2d at 1237. Moreover, control "has been interpreted as requiring only some indirect means of discipline or influence short of actual direction to hold a controlling person liable." *See SemGroup*, 2010 U.S. Dist. LEXIS 42791, at *66 (citing *Maher*, 144 F.3d at 1305). Taking the broadest possible view of control, the Tenth Circuit has also "expressly rejected those decisions that may be read to require a plaintiff to show the defendant actually or culpably participated in the primary violation." *Adams*, 340 F.3d at 1109.

### D. The Order

The Order's control-person analysis begins with the plain language of the statute. *See SemGroup*, 2010 U.S. Dist. LEXIS 42791, at *65. Next, relying on the SEC's and the Tenth Circuit's broad interpretation of control, the Court found that the "statute is remedial and is to be construed liberally. It has been interpreted as requiring only some indirect means of discipline or influence ***short of actual direction to hold a controlling person liable***." *Id.* (quoting *Maher* (citing SEC Rule 17 C.F.R. §230.405); *Richardson*, 451 F.2d at 41-42 (same); *First Interstate*, 969 F.2d 891, 898 & n.11 (same). After finding that Lead Plaintiff had alleged a primary violation of the federal securities law by the individual defendants (except Cooper), the Order then reasoned, in relevant part, that the Carlyle/Opportunistic defendants were liable as control persons because:

> Ritchie Capital, through its affiliates, held a 25.2% interest in the Parent and the Carlyle/Riverstone entities held a 29.3% interest in Parent. A.R. Thane Ritchie was Ritchie Capital's designee and Andrew Ward and E. Bartow Jones were designees of the Carlyle/Riverstone entities on the Parent's Management Committee.
>
> * * *
>
> Citing *Maher*, Defendants contend their minority ownership interest in the Parent and membership on the Parent's Management Committee do not establish 'control' of SGLP. SemGroup owned 100% of SemGroup Holdings, L.P., which in turn owned 100% of SemGroup GP and beneficially held the Parent's SGLP units.
>
> * * *
>
> [T]he parent, through SemGroup Holding, owned 100% of SemGroup GP and 47.7% of the units of SGLP . Moreover, plaintiff alleges defendants Thane Ritchie, Ward and Jones, as members of the Parent's Management Committee, signed memoranda of action authorizing the drop down of assets in connection with the Secondary Offering, and that the Ritchie Defendants and Carlyle/Riverstone defendants reaped distributions from the IPO and Secondary Offering totaling $48,383,432 for the Ritchie Defendants and $56,361,878 for the Carlyle/Riverstone Defendants. These facts, taken as a whole, create a sufficient

inference of indirect control by the Ritchie Defendants and Carlyle/Riverstone of SGLP and SemGroup GP.

* * *

***The court finds plaintiff has alleged facts sufficient to state a claim for control person liability against the Ritchie Defendants and the Carlyle/Riverstone Defendants.***

*SemGroup*, 2010 U.S. Dist. LEXIS 42791, at *70-*72; *Kalin v. Xanboo, Inc.*, 526 F. Supp. 2d 392, 405 (S.D.N.Y. 2007) (non-majority ownership interest supplied control). Like the Order, in *First Interstate*, the Tenth Circuit held on summary judgment that evidence showing that a defendant was a ***25%*** shareholder in a corporation was sufficient to demonstrate that he had at least some control over that corporation. 969 F.2d at 898. The Order therefore is consistent with *First Interstate*.[13] *See SemGroup*, 2010 U.S. Dist. LEXIS 42791, at *69-*70 ("Ritchie Capital, through its affiliates, held a ***25.2%*** interest in the Parent and the Carlyle/Riverstone entities held a ***29.3%*** interest in Parent.").

The Court then incorporates its §20(a) reasoning by reference into its §15 control-person analysis, and concludes that: (i) "The Motion to Dismiss of the Carlyle/Riverstone Defendants [Doc. No. 201] is ***denied***;" and (ii) "The Motion to Dismiss of the Ritchie Defendants [Doc. No. 218] is ***denied***." *SemGroup*, 2010 U.S. Dist. LEXIS 42791, at *83. In the same section of the Order, defendant Jones is typographically mistaken as "Johnson" and, while the Court denied their motions to dismiss under §§15 and 20(a), the Order does not then sustain Lead Plaintiff's §15 control claims against these defendants.[14] *See SemGroup*, 2010 U.S. Dist. LEXIS 42791, at *82.

---

[13] While this, too, is "controlling authority," the Opportunistic defendants fail to cite, "let alone discuss," *First Interstate* anywhere in their brief.

[14] Under Fed. R. Civ. P. 60(a), the "court may correct a clerical mistake…whenever one is found in [an] order…The court may do so on motion or on its own, with or without notice."

## III. ARGUMENT

### A. Reconsideration is Unwarranted

#### 1. The Order Did Not "Misapprehend" the Law

The Carlyle/Opportunistic defendants vehemently argue that the "incorrect legal standard was applied" in this case.[15] Opportunistic Mem. at 2; Carlyle Mem. at 3. They are wrong. The court relied on *Maher* (*i.e.*, the controlling legal standard), to find control adequately pled against the Carlyle/Opportunistic defendants. *See SemGroup*, 2010 U.S. Dist. LEXIS 42791, at *65, *70-*72. There was nothing erroneous about the Court's ruling. In *Maher*, the court found that plaintiff had insufficiently pled control where one defendant, COM, "possessed only the ability to acquire the power to control." *Maher*, 144 F.3d at 1305 n.8, 1306. The court explained that the "ability to acquire the power to control is necessarily one step removed from the power to control and two steps removed from the actual exercise of control." *Id.* Thus, *Maher* found that allegations that another defendant owned an interest in COM, making her one step further removed from control than COM, and was the ***sister of an officer*** or employee of the primary violator, was insufficient to plead control. *Id.* Here, the Complaint does not allege control based on biological relationships.

Defendants also ignore that, in *Maher*, the Tenth Circuit held that the "control person determination is a factual question ***not ordinarily subject to resolution on a motion to dismiss***," (144 F.3d at 1306) especially in cases, as here, where Lead Plaintiff alleges that the Carlyle/Opportunistic defendants' Management Committee designees (*i.e.*, Ritchie, Ward and

---

Here, to remove any doubt that the Court's lengthy reasoning upholding Lead Plaintiff's §20(a) claims against these defendants applies with equal force to Lead Plaintiff's §15 claims against these same defendants, the Court can, if it so chooses, clarify this language in the Order. *See id.*

15 Defendants do not argue that there has been any "intervening change in the controlling law or new that evidence previously unavailable" with which to justify reconsideration. *See* §II.A, *supra*.

Jones) had a duty to monitor (i) SemGroup's business, financial and operating condition, including its undisclosed speculative trading practices; (ii) increasing margin balance; (iii) cash-strapped position resulting from margin calls; and (iv) cash collateral requirements from Kivisto's failed speculative trading strategy. *See* ¶¶169, 236, 281, 287(d), 289, 291, 348-53, 368-77. Ignoring these allegations, the Opportunistic defendants rely on *Startek*, where the court dismissed §20(a) control liability allegations against two defendants, the ***sister and the wife*** of the chairman of the board and co-founder of the company. *See West Palm Beach Firefighters' Pension Fund v. Startek, Inc.*, 2008 U.S. Dist. LEXIS 47748, at *53 (D. Colo. 2008). Opportunistic Mem. at 5. Here, again Lead Plaintiff does not allege that the Carlyle/Opportunistic defendants' relatives are control persons.[16]

Rather, Lead Plaintiff alleges that (i) the Carlyle/Opportunistic defendants had three designees on SemGroup's Management Committee; (ii) Carlyle/Riverstone owned a 29.3% interest in SemGroup; (iii) Ritchie owned a 25.2% interest in SemGroup; (iv) the Carlyle/Opportunistic defendants received direct compensation of approximately ***$105 million*** during the Class Period; and (v) Ritchie testified that during a telephonic Management Committee meeting in late 2007, "***a large unrealized loss from SemGroup's trading was discussed....***" *See* ¶¶286(b), 281, 291. All of these allegations "taken as a whole, create a sufficient inference of indirect control by the Ritchie Defendants and Carlyle/Riverstone of SGLP and SemGroup GP." *SemGroup*, 2010 U.S. Dist. LEXIS 42791, at *71.

---

[16] The Carlyle defendants complain that the Order is unfair because it granted Cooper's motion to dismiss. *See* Carlyle Mem. at 7-9. Cooper, however, unlike the Carlyle/Opportunistic defendants, was neither a director nor executive in this case. *See SemGroup*, 2010 U.S. Dist. LEXIS 42791, *67-*68 ("Cooper was a Treasurer of the Parent but was neither an officer nor director...and is not alleged to have received any benefit from the offerings."). While Lead Plaintiff disagrees with the Court's decision to dismiss Cooper, the Court's ruling did not and does not in any way justify transforming Lead Plaintiff's disagreement into a motion for reconsideration or request for interlocutory appeal. *See* n.3, *supra*.

Next, seeking to manufacture error where none exists, the Carlyle defendants imagine a split between *Richardson* and *First Interstate*, on the one hand, and *Maher* and *Adams* on the other. Carlyle Mem. at 12-13. In all four cases, however, the Tenth Circuit's approach to control remains the same, examining the facts alleged in light of the circumstances of the case. *See Richardson*, 451 F.2d at 42; *First Interstate*, 969 F.2d at 898; *Maher*, 144 F.3d at 1306; *Adams*, 340 F.3d at 1108-09. In addition, while *Adams* viewed the ability to control day-to-day operations as one way to determine control, *Adams* also found control person liability properly pled against a defendant who "possessed the power to direct or cause the direction of the management and policies" of a primary violator. 340 F.3d at 1108. Here, Lead Plaintiff alleges that the Carlyle/Opportunistic defendants "were able to, and did, directly or indirectly, control the conduct of SGLP's business, the information contained in its filings with the SEC, and public filings about its business." ¶375. Moreover, although the Court never held that the Carlyle/Opportunistic defendants' "mere status" as outside directors was sufficient to plead control, in *Adams*, the Tenth Circuit ***did*** find that "mere status," standing alone, established control person liability. *See* 340 F.3d at 1109.

Consistent with these authorities, and relying on *Mutual Funds*, the Court aptly reasoned that "as a complex factual question, assessing control person liability is not ordinarily subject to resolution on a motion to dismiss." *SemGroup*, 2010 U.S. Dist. LEXIS 42791, at *71. The Carlyle Motion takes issue with the Court's reliance on *Mutual Funds* to the exclusion of what is, it turns out, considerable Tenth Circuit authority holding what *Mutual Funds* held. In fact, the language the Order quoted from *Mutual Funds* is one that the Fourth Circuit itself quoted (in its entirety) from the Tenth Circuit in *Maher*. *See Mut. Funds*, 566 F.3d at 130. And, relying on *Maher*, *Mutual Funds* interprets control liability in a manner that eviscerates the

Carlyle/Opportunistic defendants' efforts to absolve themselves of liability by "using straw parties, subsidiaries, or other agents acting on their behalf to accomplish ends that would be forbidden directly by the securities laws."[17] *Compare Mut. Funds*, 566 F.3d at 130 *with* Carlyle Mem. at 3, 6 *and* Opportunistic Mem. at 3; *see In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 550 (N.D. Cal. 2009).

Finally, as they did in support of their motions to dismiss, the Carlyle/Opportunistic defendants also repeatedly suggest that the Court "misapprehended the law because "outside directors" like Ward, Jones and Ritchie are typically not held liable as control-persons. Opportunistic Memo. at 2; Carlyle Memo. at 2. Courts in this circuit take a different view. *See e.g., Nature's Sunshine*, 486 F. Supp. 2d at 1313-14 (holding "outside director" liable under §20(a)); *Schaffer v. Evolving Sys. Inc.*, 29 F. Supp. 2d 1213, 1225-26 (D. Colo. 1998) (holding "outside directors" liable under §§15 and 20(a)).[18]

**2. Lead Plaintiff Pleads Control Defendants' Control Over the Activities That Underlie the Primary Violations**

While the Order concluded that Lead Plaintiff has "alleged facts sufficient to state a claim for control person liability against the Ritchie Defendants and the Carlyle/Riverstone Defendants," the Carlyle/Opportunitic defendants stridently suggest that (i) Lead Plaintiff has not alleged "***any*** facts that could establish claims for 'control person' liability;" (ii) it is "***undisputed*** that Ward and Jones...did not authorize any action by SGLP...;" and (iii) Lead Plaintiff "does not – ***and cannot*** – allege that Ward and Jones actively participated in preparing or issuing any

---

17 *See* Carlyle Motion at 6.

18 The Carlyle/Opportunistic defendants misstate *Thornburg*. *See* Carlyle Mem at 7. There, plaintiffs' §20(a) claims were found insufficient because plaintiffs alleged that each defendant was merely a director. *In re Thornburg Mortgage, Inc. Sec. Litig.*, 2010 U.S. Dist. LEXIS, at *143 (D.N.M. 2010). Here, Plaintiff alleges much more than the Carlyle defendants' positions as members of the Management Committee. ¶¶169, 236, 281, 286(b), 287(d), 289, 291, 348-53, 368-77; *SemGroup*, 2010 U.S. Dist. LEXIS 42791, at *70-*71.

of SGLP's SEC filings or offering documents."[19] *SemGroup*, 2010 U.S. Dist. LEXIS, at *72; Carlyle Mem. at 2-4, 6, 8; Opportunistic Mem. at 3. All of these arguments, which the Court already considered and dismissed in denying their motions, lack merit. *See Lumpkin*, 2009 U.S. Dist. LEXIS 60752, at *4-*5 ("motion to reconsider is designed to permit relief in extraordinary circumstances and not to offer a second bite at the proverbial apple") (Frizzell, J.).

Throughout the Class Period, the Carlyle/Opportunistic defendants had control over the activities that underlie the primary violations in this case. Through their ownership interest in SemGroup and right to appoint a majority of SemGroup's Management Committee, these defendants oversaw SemGroup's and SGLP's operations, including SemGroup's trading and drop-down of assets to SGLP. *See* ¶¶53-55, 236, 239, 281, 289, 374; *Mut. Funds*, 566 F.3d at 130; *First Interstate*, 969 F.2d at 898 & n.11; *Kalin*, 526 F. Supp, 2d at 405. Moreover, Jones, Ritchie and Kivisto also served together on SemGroup's Compensation Committee. *See Nature's Sunshine*, 486 F. Supp. 2d at 1313-14 (audit committee membership of outside director supported inference of control). Like the drop-downs, executive compensation is also conduct that underlies the primary violations here. *See SemGroup*, 2010 U.S. Dist. LEXIS 42791, at *71; Exhibit B; ¶¶288-91. Given their two-thirds majority on the Compensation Committee, the Carlyle/Opportunistic defendants certainly possessed at least the "***indirect means of discipline or influence***" over Kivisto as he plundered SGLP. *See Batwin*, 2008 U.S. Dist. LEXIS 52365, at *80-*81 (finding control adequately pled against investment company defendants who controlled individual primary violator).

Rather than exercise their control in a manner that would have prevented this fraud, however, "[a]ccording to the Examiner's Report, Foxx stated that ***it was 'Riverstone's idea to***

[19] These arguments were also already raised, verbatim, in support of the Carlyle/Opportunistic defendants' motions to dismiss.

***distribute a portion of the dropdowns…instead of keeping it all in working capital.***'" *Compare* ¶289 with Opportunistic Mem. at 9 ("The Complaint ***nowhere suggests*** that Ritchie Opportunistic received any special treatment with respect to those distribution[s], ***or exercised any influence whatsoever*** over the day-to-day operations of SemGroup LP or SGLP."); *see SemGroup*, 2010 U.S. Dist. LEXIS 42791, at *57. Defendants also claim there are "no facts" demonstrating that they had "day-to-day" control, indirect or otherwise, of SemGroup or SGLP. Carlyle Mem. at 7; Opportunistic Mem. at 11. Perhaps defendants simply forget that, during the Class Period, [redacted] *See* Ex C. This fact, without more, eviscerates defendants' arguments that there are no facts "showing that Ward and Jones could control, directly or indirectly, the day-to-day operations of nonparty SemGroup, much less the alleged primary violator, SGLP." *Compare* Carlyle Mem. at 2, 6 *with* Exhibit C; *compare* Opportunistic Mem. at 2-3, 6 *with* Exhibit C.

Next, relying on the natural law principle of "common sense" (Opportunitic Mem. at 6), defendants suggest the Court erred because the "[a]pproval of the asset 'drop down' and receipt of equity distributions ***have nothing to do with*** derivative trading or the financial reporting related thereto." Opportunistic Mem. at 4. In fact, the "asset drop downs" ***have everything to do with*** the derivative trading alleged in this case. *See SemGroup*, 2010 U.S. Dist. LEXIS 42791, at *25-*37 ("[T]he market effect of these concealed risks [*i.e.*, speculative trading] materialized…when news about SemGroup's ***liquidity crisis*** leaked to the public."). As this Court held, the speculative trading defendants seek to brush aside is the very conduct that caused the liquidity crisis at and that required defendants to obtain cash at whatever price – including defrauding SGLP's investors. *Id.* at *55-*57 .

According to the Tenth Circuit, a defendants' "***power to control the transactions underlying the alleged securities violations***" – here the Secondary Offering, May 2008 dropdowns and undisclosed bonuses – all, together, conclusively establish that the Carlyle/Opportunistic defendants are control persons under §§15 and 20(a). *Maher*, 144 F.3d at 1305-06. There is no doubt but that these defendants could have stopped these transactions. The close ties between the primary violators (who directly controlled SemGroup and SGLP) and the Carlyle/Opportunistic defendants made them akin to insiders at SemGroup and, by extension, SGLP. *SemGroup*, 2010 U.S. Dist. LEXIS 42791, at *54 ("Defendants' positions at SemGroup and SemGroup GP gave them access to material non-public information regarding SemGroup's core operations and financial condition that they knew had not been disclosed to SGLP's investors.")

A series of e-mails between the primary violators and Ward, Jones and/or Ritchie confirm Lead Plaintiff's allegations. [redacted] *See* Exhibit E. [redacted] *See* Exhibit E. In another e-mail [redacted] *See* Exhibit F; *see also* Exhibit D. Not coincidentally, the $300 million figure correlates almost exactly to the amount of the Westback Purchasing Co. LLC receivable which stood at approximately "$290 million" in the summer of 2008. *See* ¶86. In yet another e-mail, [redacted]

[redacted] *See* Ex. G.

Finally, a slideshow presentation prepared for a January 8, 2008 (*i.e.*, a full six months before the truth was revealed) SemGroup, G.P. Management Committee Meeting in Tulsa internally disclosed that SemGroup was facing serious liquidity issues and that SGLP could and would be used to address liquidity – the heart of Lead Plaintiff's allegations. *See* Exhibit H. Despite this Management Committee presentation, a month later, in February 2008, the Carlyle/Opportunistic defendants authorized SGLP's Secondary Offering and, in May 2008, authorized the asset drop downs even though they likely ***knew*** that the Parent was suffering a liquidity crisis of epic proportions. *See* ¶¶236, 239.

With only the limited document discovery Lead Plaintiff has obtained to date, this is all evidence that confirms defendants' "power to control the transactions underlying the alleged securities violations." *Maher*, 144 F.3d at 1305; *see In re Alstom SA Sec. Litig.*, 454 F. Supp. 2d 187, 203-04 (S.D.N.Y. 2006); *First Interstate*, 969 F.2d at 898 & n.11; *see also In re Cylink Sec. Litig.*, 178 F. Supp. 2d 1077, 1089 (N.D. Cal. 2001) (sufficient, at the pleading stage to identify the defendants' positions and allege that they "'had the power to control and influence [the defendant], which they exercised'"). In *Sonic Innovations*, relying solely on *Maher*, the court found control adequately pled against certain director defendants, reasoning:

> The Second Amended Complaint pleads numerous facts which would render the Director Defendants liable as 'control persons.' For instance, plaintiffs allege that the Director Defendants controlled Sonic's board of directors, were members of the audit and ***compensation committees***, reviewed Sonic's financial statements, and ***attended and participated in Sonic's committee meetings*** and Sonic's operations. Plaintiffs also allege that the Director Defendants were '***in frequent contact' with Raguskus and Wilson to get information about Sonic's business and 'received copies of Sonic's operating budget reports***.'

*Steinbeck v. Sonic Innovations, Inc.*, 2003 U.S. Dist. LEXIS 2378, *28-*30 (D. Utah 2003). As set forth herein, the Complaint makes virtually the identical allegations. *See* ¶¶236, 239, 281, 286(b), 287(d), 289, 291, 348-53, 368-77; *see also* §III.A.2, *infra*.

These defendants will not be permitted to reap over $100+ million in profits from their control over these activities and subsequently turn a blind eye to investors claiming that the profits were based on misrepresentations that the Carlyle/Opportunistic defendants had the power to control and prevent. Lead Plaintiff will continue to vigorously prosecute this case against these defendants who, as control persons, are "jointly and severally" liable for the full extent of damages under §§15 and 20(a).

### B. The Investment Company Defendants Fail to Meet Any of the Three Requirements for §1292(b) Interlocutory Appeal

The Carlyle/Opportunistic defendants' requests for immediate appeal under §1292(b) fall woefully short of what is required under the statute. In *Parmalat*, the court denied an outside auditor's motion for §1292(b) certification of a control liability question at the pleading stage, finding that it failed to meet ***any*** of the requirements for certification of interlocutory appeal. Similarly, in *Nash Finch*, defendants argued that:

> [i]f the Court's decision [that McDermott is potentially liable as a control person] was ***based upon McDermott's position as general counsel***, then Defendants respectfully submit that whether such an allegation is sufficient to establish control person liability is a pure legal question that should be certified for appeal to the Eighth Circuit, because the Eighth Circuit has not yet addressed the issue and it is a position that is contrary to the law in several other jurisdictions.

2007 U.S. Dist. LEXIS 55862, at *6-*7 n.3 (alteration in original). The court's response to defendants' argument was justifiably terse – "[***t***]***here is no reason to certify an interlocutory appeal on this basis***." *Id.* The same result should obtain here. Similarly, in *Bysis*, the court denied defendants' motion for reconsideration and alternative request for interlocutory. *Bysis*, 2005 U.S. Dist. LEXIS 28343, at *4-*5. Notably, *Bysis* involved the disputed question in the

Second Circuit whether §20(a) requires "culpable participation." *Bysis*, 2005 U.S. Dist. LEXIS 28343, at *4-*5. Here, "culpable participation" presents no such issue. *See Adams*, 340 F.3d at 1109 ("we have 'expressly rejected those decisions that may be read to require a plaintiff to show the defendant actually or culpably participated in the primary violation'").

**C. Control is an Issue of Fact**

"[B]efore an issue may be certified for appeal under §1292(b) ... the court must conclude that the order from which the appeal is to be taken involves a 'controlling question of law.'" *In re Grand Jury Proceedings June 1991*, 767 F. Supp. 222, 25 (D. Colo. 1991). "Irrespective of whether the resolution of a particular question will materially advance the litigation, ***only questions of law are appropriate for interlocutory review***." *Certain Underwriters at Lloyd's v. Nance*, 2006 U.S. Dist. LEXIS 95657, at *11 (D.N.M. 2006). While never explicitly articulated, it appears that the "question" the Carlyle/Opportunistic defendants seek permission to appeal is "whether the Plaintiff's allegations are sufficient to plead control person liability [in this case]."[20] Opportunistic Mem. at 11; Carlyle Mem. at 11. Section 1292(b), however, requires that the "legal question must be stated at a high enough level of abstraction to lift the question out of the details of the evidence ***or facts of a particular case*** and give it general relevance to other cases in the same area of law." *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004).

In this Circuit, "control" has long been a fact question. *Maher*, 144 F.3d at 1306 ("control person determination is a factual question"); *SEC v. Int'l Chem. Dev. Corp.*, 469 F.2d 20, 28 (10th Cir. 1972) ("***Control is a question of fact***"); *Pub. Serv. Co. of N.M. v. Fed. Energy Regulatory Comm'n*, 628 F.2d 1267, 1269 (10th Cir. 1980) ("***We have held that control is a fact question***"); *see NPS Pharm.*, 2007 U.S. Dist. LEXIS 48713, at *23 ("the control person

[20] Customarily, the moving party under §1292(b) expressly set forth the question(s) presented. For whatever reason, the Carlyle/Opportunistic did not do so.

determination ***is a factual question*** not ordinarily subject to resolution on a motions to dismiss"); *In re Ribozyme Pharm., Inc. Sec. Litig.*, 119 F. Supp. 2d 1156, 1167 (D. Colo. 2000) (same). "The phrase 'question of law' as used in 28 U.S.C. §1292(b) [also] does not refer to a particular application of facts to the law." *Underwriters*, 2006 U.S. Dist. LEXIS 95657, at *8. Accordingly, the Carlyle/Opportunistic defendants' request for certification should be denied.[21] *Certain Underwriters*, 2006 U.S. Dist. LEXIS 95657, at *11.

**1. There is No Substantial Difference of Opinion on Control-Person Liability in this Circuit**

A substantial ground for difference of opinion relates to a "controlling question of law," not to a difference of opinion between the parties over the facts alleged in a complaint. *See, e.g.*, *Hoffman v. Citibank (S.D.), N.A.*, 2007 U.S. Dist. LEXIS 98644, at *7 (C.D. Cal. 2007). In this circuit, there is no difference of opinion on the question of control person liability defendants seek to certify. For a question to raise substantial grounds for differences of opinion, the "standard implies that the question is ***difficult***, ***novel***, and either a question on which there is ***little precedent*** or one whose correct resolution is not substantially guided by previous decisions." *Grand Jury*, 767 F. Supp. at 225-26. "An interlocutory appeal is not justified '[s]imply because...the parties themselves disagree as the interpretation of persuasive authority.'" *Adam Aircraft*, 2010 U.S. Dist. LEXIS 24461, at *10 (alteration in original).

21 The Carlyle defendants also state that "federal courts, including courts in the Tenth Circuit, repeatedly have certified for immediate appeal denials of motions to dismiss securities fraud complaints." Carlyle Mem. at 9. In support, defendants cite *Sonnenfeld*. There, the question was whether "there is [an] implied private right of action against municipalities under §10(b) or Rule 10(b)-5." *Sonnenfeld v. Denver*, 100 F.3d 744, 746 (10th Cir. 1996). Similarly, in *Laperriere*, the court accepted a §1292(b) appeal which "presents ***an issue of first impression in the circuit courts***: whether, and to what extent, the proportionate liability scheme of section 21(D)(f)...amends section 20(a) of the Act..." 526 F.3d at 718; *see* Carlyle Mem. at 10. Both of these cases implicated pure questions of law worthy of §1292(b) as their resolution would have broad applicability to other similar cases regardless of the facts.

Control person liability is not a "difficult" or "novel" question, nor, "a question on which there is little precedent or one whose correct resolution is not substantially guided by previous decisions" in the Tenth Circuit. *Grand Jury*, 767 F. Supp. at 225-26. Rather, as the Table of Contents demonstrates, control person liability has been repeatedly addressed and numerous Tenth Circuit precedent provides ample, consistent guidance on the issue. *See Int'l Chem.*, 469 F.2d at 28; *Maher*, 144 F.3d at 1305 n.8, 1306; *Adams*, 340 F.3d at 1109; *Richardson*, 451 F.2d at 41; *First Interstate*, 969 F.2d at 898 & n.11; *Nature's Sunshine*, 486 F. Supp. 2d at 1313-14; *Steinbeck*, 2003 U.S. Dist. LEXIS 2378, at *29-*30; *Williams*, 339 F. Supp. 2d at 1270.

The Carlyle defendants try to claim that the Tenth Circuit, "has taken a significantly narrower view of 'indirect control,' and has done so in affirming the grants of motions to dismiss." Carlyle Mem. at 13. However, in *Adams*, the Tenth Circuit reversed the district court's dismissal, finding that plaintiff "adequately pleads control person liability" as to two defendants and only affirmed the dismissal as to one. 340 F.3d at 1109. And, as to the one defendant where plaintiffs "merely refer[ed] to his position within the company," the Tenth Circuit found, "it is reasonable to infer that [defendant] had at least indirect control." *Id.* Similarly, in *Maher*, the Tenth Circuit stated that "control person determination is a factual question," and to survive dismissal, plaintiffs must plead "facts from which it can reasonably be inferred the defendant was a control person." 144 F.3d at 1306; *see Int'l Chem.*, 469 F.2d at 28 (control "is concerned with the realities of the situation"); *Adams*, 340 F.3d at 1108 (same). The Order found that Lead Plaintiff did so. *See SemGroup*, 2010 U.S. Dist. LEXIS 42791, at *70-*71.

Finally, the Carlyle/Opportunistic defendants fail to meet their "heavy burden" to show any "genuine doubt" as to whether the court applied the correct legal standard because the court applied the correct legal standard in finding that the "facts, taken as a whole, create a sufficient

inference of indirect control by Ritchie Defendants and Carlyle/Riverstone of SGLP and SemGroup GP."[22] *SemGroup*, 2010 U.S. Dist. LEXIS 42791, at *71; *Adam Aircraft*, 2010 U.S. Dist. LEXIS 24461, at *10. Because the Carlyle/Opportunistic defendants merely disagree with the Court's decision or its application of controlling law to the facts of this case, their request for §1292(b) certification should be denied.

### 2. An Interlocutory Appeal Will Delay This Litigation

"Interlocutory orders are not to be certified routinely, ***even where the standards set forth in Section 1292(b) are met*** ... This Court sees little likely advantage in the management or speed of resolution of this case that might be derived from an interlocutory determination of this issue. The action would be likely to consume substantially as much time with the individual defendants out of it as parties as it would if they remain. ***Regardless of whether they are parties, the individual defendants will be involved in the action as witnesses***." *Bysis*, 2005 U.S. Dist. LEXIS 28343, at *5. "The ultimate termination of this litigation is advanced by proceeding to discovery and moving the case forward, not by granting an immediate appeal." *Nash Finch*, 2007 U.S. Dist. LEXIS 55862, at *4. "There is no basis to conclude that the normal course of proceedings, motions practice, and trial in the district court followed by an appeal, will not lead to a prompt determination of this litigation. More likely than not, an interlocutory appeal would interrupt and delay this process rather than advancing it." *Hubbell v. Lincicome*, 2007 U.S. Dist. LEXIS 41477, at *5-*6 (D. Colo. 2007).

Moreover "[t]here is no assurance that the [Tenth] Circuit would accept the appeal as, even if this Court were to certify the case for appeal, [the Carlyle/Opportunistic defendants]

22 Defendants also cite to several out-of-circuit decisions to demonstrate that "substantial grounds for difference of opinion" exists here. Those authorities are unavailing. *See In re First Am. Corp. ERISA Litig.*, 2008 U.S. Dist. LEXIS 107676, at *3 (C.D. Cal. 2008) ("the fact that there is non-binding precedent in jurisdictions other than the [] is insufficient to show a 'substantial ground' for difference of opinion").

would still have 'the burden of persuading the court of appeals that exceptional circumstances justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment.'" *Hightower*, 2009 U.S. Dist. LEXIS 109603, at *13 (quoting *Coopers v. Livesay*, 437 U.S. 463, 475 (1978)). "If the [Tenth] Circuit ruled against [defendants], there would most likely be a remand to this Court which would only have prolonged the action. An orderly appeal can be taken from entered judgment."[23] *Id.*

### D. The Action Should Not be Stayed

The mere filing of the Carlyle/Opportunistic motions, by itself, does not automatically stay discovery. *See* 28 U.S.C. §1292(b) ("application for an appeal hereunder ***shall not stay proceedings in the district court unless*** the district judge or the Court of Appeals or a judge thereof shall so order"). Their request to stay these proceedings should therefore be denied. *See id.*

## IV. CONCLUSION

For the foregoing reasons, the Carlyle/Opportunistic Motions should be denied in their entirety.

Dated: June 11, 2010

*/s/ Ramzi Abadou*

**BARROWAY TOPAZ KESSLER MELTZER & CHECK, LLP**
Ramzi Abadou (*pro hac vice*)
Nichole Browning
Stacey Kaplan
Erik D. Peterson (*pro hac vice*)
580 California Street, Suite 1750
San Francisco, CA 94104
Tel: (415) 400-3000

[23] The Opportunistic defendants cite *Adams v. Burlington N. R.R. Co.*, but may have failed to recognize that, there, the court ***denied*** defendant's motion to certify, reasoning it "d[id] not find, despite defendant's arguments to the contrary, that a substantial ground for difference of opinion exists with respect to the controlling question of law." *Adams v. Burlington N. R.R. Co.*, 843 F. Supp. 686, 688 (D. Kan. 1994); Opportunistic Mem. at 12-13.

Fax: (415) 400-3001

and

Stuart L. Berman (*pro hac vice*)
Lauren Wagner Pederson (*pro hac vice*)
Sharan Nirmul (*pro hac vice*)
Naumon A. Amjed (*pro hac vice*)
Michelle M. Newcomer (*pro hac vice*)
Neena Verma
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056

*Lead Counsel for Lead Plaintiff and the Class*

**NELSON, ROSELIUS, TERRY O'HARA & MORTON**
Douglas A. Terry (Bar Number 15855)
Jason E. Roselius (Bar Number 16721)
Guy R. Wood (Bar Number 15875)
P. O. Box 138800
Oklahoma City, Oklahoma 73113-8800
Tel: (405) 705.3600
Fax: (405) 705.2573

*Liaison Counsel for Lead Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I certify that on the 11th day of June 2010, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF Registrants:

### Electronic Mail Notice List

- **Ramzi Abadou**
  rabadou@btkmc.com,knguyen@btkmc.com
- **Stacy L Acord**
  sacord@mlak-law.com,jwaller@mlak-law.com
- **Naumon A Amjed**
  namjed@btkmc.com,ecf_filings@btkmc.com
- **Ari M Berman**
  aberman@velaw.com
- **Stuart L Berman**
  ecf_filings@btkmc.com
- **Paul Richard Bessette**
  bessettep@gtlaw.com,worshamj@gtlaw.com,cisnerosc@gtlaw.com
- **Michael J Biles**
  bilesm@gtlaw.com,worshamj@gtlaw.com,bryankat@gtlaw.com
- **Clark Otto Brewster**
  Cbrewster@brewsterlaw.com,jcobler@brewsterlaw.com,rcornelius@brewsterlaw.com
- **William Robert Burns**
  bburns@kslaw.com,jkmiec@kslaw.com,scaracio@kslaw.com
- **Gregory M Castaldo**
  gcastaldo@btkmc.com,mswift@btkmc.com
- **Gary S Chilton**
  gchilton@holladaychilton.com
- **Bruce W Collins**
  bcollins@ccsb.com
- **Theodore William Daniel**
  tdaniel@fulbright.com,khisel@fulbright.com,mmulvihill@fulbright.com
- **Kimberly Geiler Davis**
  daviskg@gtlaw.com,worshamj@gtlaw.com,bartonr@gtlaw.com
- **Karl Glenn Dial**
  kdial@fulbright.com,kevans@fulbright.com
- **Frederic Dorwart**
  fdorwart@fdlaw.com,vvessels@fdlaw.com
- **Stuart William Emmons**
  swe@federmanlaw.com,ngb@federmanlaw.com,law@federmanlaw.com
- **William Bernard Federman**
  wbf@federmanlaw.com,ngb@federmanlaw.com,law@federmanlaw.com
- **Lisa S Gallerano**
  lgallerano@akingump.com

- **Sean M Handler**
  shandler@btkmc.com,ecf_filings@btkmc.com
- **Orrin Harrison , III**
  oharrison@akingump.com,cvarner@akingump.com,kdunning@akingump.com,cblea@akingump.com
- **William Brad Heckenkemper**
  brad@barrowgrimm.com,t.costa@barrowgrimm.com
- **Don G Holladay**
  dholladay@holladaychilton.com,jwarner@holladaychilton.com,lspencer@holladaychilton.com
- **Mark Byron Jennings**
  MJennings@brewsterlaw.com,aelmore@brewsterlaw.com,joomen@brewsterlaw.com
- **James David Jorgenson**
  pf@att.net,djorgenson@att.net
- **Michael Paul Kirschner**
  mike@robertsonwilliams.com
- **Gideon Andrew Lincecum**
  glincecum@holladaychilton.com,lgorrell@holladaychilton.com
- **Heidi J Long**
  hlong@holladaychilton.com
- **Randall Edwin Long**
  rlong@rhodesokla.com,bcalnan@rhodesokla.com
- **Gerald Joseph Lovoi**
  GLovoi@aol.com
- **Edward John Main**
  emain@secresthill.com,tlaignel@secresthill.com
- **Archer Scott McDaniel**
  smcdaniel@mlak-law.com,jwaller@mlak-law.com
- **Daniel Allan McLaughlin**
  dmclaughlin@sidley.com
- **Michelle M Newcomer**
  mnewcomer@btkmc.com,mswift@btkmc.com
- **Sharan Nirmul**
  snirmul@btkmc.com,ecf_filings@btkmc.com
- **Nora Rose O'Neill**
  noneill@fdlaw.com,jalexander@fdlaw.com
- **Ronald L Oran**
  roran@velaw.com,cthau@velaw.com,aberman@velaw.com
- **Lauren Wagner Pederson**
  lpederson@btkmc.com,neena.verma@btkmc.com
- **Erik D Peterson**
  epeterson@btkmc.com
- **Alfred Robert Pietrzak**
  rpietrzak@sidley.com
- **Laurence Lindsay Pinkerton**
  pf@att.net,pinknav@aol.com

- **B Warren Pope**
  wpope@kslaw.com
- **Mary Quinn-Cooper**
  general_delivery@ecslok.com,mcooper@ecslok.com
- **Joshua Z Rabinovitz**
  joshua.rabinovitz@kirkland.com,deirdre.oreilly@kirkland.com
- **Carolyn R Raines**
  craines@ccsb.com,jmcnatt@ccsb.com
- **Robert Bradley Sartin**
  sartin@barrowgrimm.com,dcampbell@barrowgrimm.com
- **James Keith Secrest , II**
  jsecrest@secresthill.com,dcrutcher@secresthill.com
- **Michael R Smith**
  mrsmith@kslaw.com,blee@kslaw.com,wpope@kslaw.com
- **Owen H Smith**
  osmith@sidley.com
- **Douglas Anthony Terry**
  terry@nrtlaw.com,docketing@nrtlaw.com,rhendrickson@nrtlaw.com
- **Clifford Louis Thau**
  cthau@velaw.com,nvydashenko@velaw.com
- **Douglas Michael Todd**
  dmtodd@phillipsmurrah.com,pjbrown@phillipsmurrah.com
- **Colin Hampton Tucker**
  chtucker@rhodesokla.com,sadams@rhodesokla.com
- **John H Tucker**
  jtuckercourts@rhodesokla.com,gbarber@rhodesokla.com,mhales@rhodesokla.com
- **James E Warner**
  jwarner@holladaychilton.com
- **Jesse Z Weiss**
  weissjz@gtlaw.com,worshamj@gtlaw.com,cisnerosc@gtlaw.com
- **Michael W Youtt**
  myoutt@kslaw.com,scaracio@kslaw.com,ibutler@kslaw.com

I further certify that on the 11th day of June 2010, I served the same document by U.S. Postal service on the following, who are not registered participants of the ECF system:

**Penny P Reid**
Weil Gotshal & Manges
767 5th Ave
New York, NY 10153

**Samuel H Rudman**
**David A Rosenfeld**
Robbins Geller Rudman & Dowd LLP
58 S Service Road Ste 200
Melville, NY 11747

**Roger W Kirby**
**Mark A Strauss**
**Richard L Stone**
**Ira M Press**
Kirby McInerney LLP
825 Third Ave, 16th Floor
New York, NY 10022

**Darren J Robbins**
Robbins Geller Rudman & Dowd LLP
655 N Broadway Ste 1900
San Diego, CA 92101

**Steven J Toll**
**Daniel S Sommers**
**Catherine A Torell**
**Jason M Leviton**
Cohen Milstein Sellers & Toll PLLC
1100 New York Ave NW Ste 500
Washington, DC 20005

**Michael Swick**
**Kim Elaine Miller**
Kahn Gauthier Swick, LLC
12 E 41st Street
12th Floor
New York, NY 10017

**Joseph Weiss**
**Mark D Smilow**
**Moshe Balsam**
Weiss & Lurie
551 Fifth Ave
New York, NY 10176

**Laurence D Paskowitz**
Paskowitz & Associates
60 E 42nd Street Floor 46th
New York, NY 10165

**Alan I Ellman**
**Christopher J Keller**
**Andrei V Rado**
Labaton Sucharow LLP
140 Broadway
New York, NY 10005

**Roy L Jacobs**
Roy Jacobs & Associates
60 E 42nd Street Floor 46th
New York, NY 10165

**Robert Craig Finkel**
**Natalie Marie Mackiel**
Wolf Popper LLP
845 3rd Ave
New York, NY 10022

**Gabor Balassa**
Kirkland & Ellis LLP
300 N Lasalle
Chicago, IL 60654

/s/ Ramzi Abadou
Ramzi Abadou

# EXHIBIT B

SemGroup

# MEMO

**DATE:** February 15, 2008

**TO:** A.R. Thane Ritchie
Bartow Jones

**FROM:** Thomas L. Kivisto

**SUBJECT:** Compensation Committee

---

Please find enclosed the following:

- Compensation Committee Charter
- SemCAMS proposed 2007 incentive compensation information
- Employment Agreements for Thomas L. Kivisto, Kevin L. Foxx and Gregory C. Wallace
- Summary of Compensation for top 25 employees for years 2005, 2006 and 2007
- Summary of business segment Incentive Compensation Plans

| 2007 | SALARY | BONUS | TOTAL |
|---|---|---|---|
| Scott Milburn | $ 84,166.79 | $ 121,000.00 | $ 205,166.79 |
| Brian Jobe | $ 98,000.16 | $ 143,000.00 | $ 241,000.16 |
| Chris Hayes | $ 200,000.00 | $ 143,000.00 | $ 343,000.00 |
| Parker Strickland | $ 142,916.82 | $ 246,000.00 | $ 388,916.82 |
| Brian Majeska | $ 175,000.00 | $ 311,000.00 | $ 486,000.00 |
| Pete Schwiering | $ 220,000.08 | $ 325,000.00 | $ 545,000.08 |
| Don Jensen | $ 200,000.16 | $ 354,155.00 | $ 554,155.16 |
| Connie Dean-Milino | $ 235,000.00 | $ 328,600.00 | $ 563,600.00 |
| Darrin Marine | $ 262,000.00 | $ 375,000.00 | $ 637,000.00 |
| Frank Panzer | $ 225,000.00 | $ 441,000.00 | $ 666,000.00 |
| Sara Hordinski | $ 180,000.00 | $ 575,000.00 | $ 755,000.00 |
| David Wunch | $ 197,435.94 | $ 633,421.67 | $ 830,857.61 |
| Tim O'Sullivan | $ 175,000.00 | $ 677,000.00 | $ 852,000.00 |
| Vance Harrington | $ 220,000.08 | $ 633,421.67 | $ 853,421.75 |
| Larry Payne | $ 275,000.16 | $ 633,421.67 | $ 908,421.83 |
| Alex Stallings | $ 257,986.35 | $ 651,000.00 | $ 908,986.35 |
| Michael Brochetti | $ 276,041.70 | $ 801,000.00 | $ 1,077,041.70 |
| Darin Holst | $ 250,000.00 | $ 900,000.00 | $ 1,150,000.00 |
| Roger Magnuson | $ 240,000.00 | $ 1,350,000.00 | $ 1,590,000.00 |
| Brent Brown | $ 205,000.00 | $ 1,450,000.00 | $ 1,655,000.00 |
| Dave Keay | $ 300,000.00 | $ 2,320,000.00 | $ 2,620,000.00 |
| Kevin Foxx | $ 408,333.35 | $ 4,500,000.00 | $ 4,908,333.35 |
| Greg Wallace | $ 325,000.08 | $ 10,500,000.00 | $ 10,825,000.08 |
| Darrell Weakland | $ 300,000.00 | $ 16,760,404.00 | $ 17,060,404.00 |
| Tom Kivisto | $ 350,000.16 | $ 17,000,000.00 | $ 17,350,000.16 |

| 2006 | SALARY | BONUS | TOTAL |
|---|---|---|---|
| Brian Jobe | $ 85,000.08 | $ 41,000.00 | $ 126,000.08 |
| Darrin Marine | $ 250,000.00 | $ - | $ 250,000.00 |
| Chris Hayes | $ 190,000.00 | $ 123,000.00 | $ 313,000.00 |
| Tim O'Sullivan | $ 175,000.08 | $ 146,000.00 | $ 321,000.08 |
| Sara Hordinski | $ 130,000.00 | $ 221,000.00 | $ 351,000.00 |
| Connie Dean-Milino | $ 225,000.00 | $ 130,500.00 | $ 355,500.00 |
| Parker Strickland | $ 140,000.16 | $ 246,000.00 | $ 386,000.16 |
| Alex Stallings | $ 178,333.44 | $ 251,000.00 | $ 429,333.44 |
| Brian Majeska | $ 175,000.08 | $ 290,583.34 | $ 465,583.42 |
| Michael Brochetti | $ 178,333.44 | $ 417,441.22 | $ 595,774.66 |
| Pete Schwiering | $ 160,000.08 | $ 625,000.00 | $ 785,000.08 |
| Frank Panzer | $ 213,333.38 | $ 626,000.00 | $ 839,333.38 |
| David Wunch | $ 220,000.08 | $ 661,000.00 | $ 881,000.08 |
| Vance Harrington | $ 220,000.08 | $ 661,000.00 | $ 881,000.08 |
| Larry Payne | $ 275,000.16 | $ 661,000.00 | $ 936,000.16 |
| Tim Purcell | $ 225,000.00 | $ 1,001,000.00 | $ 1,226,000.00 |
| Don Jensen | $ 200,000.00 | $ 1,078,236.00 | $ 1,278,236.00 |
| Brent Brown | $ 205,000.00 | $ 1,075,000.00 | $ 1,280,000.00 |
| Roger Magnuson | $ 240,000.00 | $ 1,350,000.00 | $ 1,590,000.00 |
| Dave Pope | $ 429,000.00 | $ 1,775,000.00 | $ 2,204,000.00 |
| Dave Keay | $ 300,000.00 | $ 2,320,000.00 | $ 2,620,000.00 |
| Kevin Foxx | $ 250,000.08 | $ 4,450,000.00 | $ 4,700,000.08 |
| Greg Wallace | $ 311,875.08 | $ 9,800,000.00 | $ 10,111,875.08 |
| Darrell Weakland | $ 300,000.00 | $ 10,704,513.00 | $ 11,004,513.00 |
| Tom Kivisto | $ 350,000.00 | $ 17,800,000.00 | $ 18,150,000.00 |

| 2005 | SALARY | BONUS | TOTAL |
|---|---|---|---|
| Brian Jobe | $ 70,000.00 | $ 27,000.00 | $ 97,000.00 |
| Michael Brochetti | $ 51,041.69 | $ 76,000.00 | $ 127,041.69 |
| Parker Strickland | $ 75,833.42 | $ 76,000.00 | $ 151,833.42 |
| Sara Hordinski | $ 95,000.16 | $ 112,000.00 | $ 207,000.16 |
| Connie Dean-Milino | $ 156,000.00 | $ 79,159.00 | $ 235,159.00 |
| Brian Majeska | $ 102,083.38 | $ 150,000.00 | $ 252,083.38 |
| Tim O'Sullivan | $ 175,000.08 | $ 131,000.00 | $ 306,000.08 |
| Pete Schwiering | $ 160,000.08 | $ 166,000.00 | $ 326,000.08 |
| Don Jensen | $ 200,000.16 | $ 174,500.00 | $ 374,500.16 |
| Chris Hayes | $ 163,000.00 | $ 223,988.00 | $ 386,988.00 |
| Tim Purcell | $ 225,000.00 | $ 175,000.00 | $ 400,000.00 |
| Alex Stallings | $ 175,000.08 | $ 273,000.00 | $ 448,000.08 |
| Frank Panzer | $ 185,000.16 | $ 278,000.00 | $ 463,000.16 |
| Roger Magnuson | $ 189,000.00 | $ 357,000.00 | $ 546,000.00 |
| David Wunch | $ 220,000.08 | $ 403,000.00 | $ 623,000.08 |
| Vance Harrington | $ 220,000.08 | $ 403,000.00 | $ 623,000.08 |
| Dave Keay | $ 225,000.00 | $ 457,000.00 | $ 682,000.00 |
| Larry Payne | $ 275,000.16 | $ 426,000.00 | $ 701,000.16 |
| Brent Brown | $ 205,000.00 | $ 543,000.00 | $ 748,000.00 |
| Kevin Foxx | $ 250,000.08 | $ 1,701,000.00 | $ 1,951,000.08 |
| Dave Pope | $ 429,000.00 | $ 2,452,200.00 | $ 2,881,200.00 |
| Greg Wallace | $ 280,000.08 | $ 4,801,000.00 | $ 5,081,000.08 |
| Darrell Weakland | $ 300,000.00 | $ 5,417,392.00 | $ 5,717,392.00 |
| Tom Kivisto | $ 350,000.00 | $ 11,201,000.00 | $ 11,551,000.00 |

## SEMGROUP G.P., L.L.C.

## COMPENSATION COMMITTEE CHARTER

**Purpose**

The Compensation Committee (the "Committee") of the Management Committee (the "Management Committee") of SemGroup G.P., L.L.C. (together with its affiliates, including SemGroup, L.P., the "Company") will assist the Management Committee in discharging its responsibilities relating to compensation of the Company's executive officers. The Compensation Committee has overall responsibility for approval, evaluation and oversight of all compensation plans, policies and programs of the Company.

**Committee Membership**

The Committee shall consist of no fewer than three members. The members of the Committee may be officers or employees of the company or directors, officers, or employees of the Company's affiliates, including SemGroup, L.P. The Management Committee shall appoint the members of the Committee with the members initially being Thomas L. Kivisto, Bartow Jones and A.R. Thane Ritchie. The Management Committee shall also have the power to replace any of the members of the Committee. The Management Committee shall appoint one member of the Committee as the Chair of the Committee with such person initially being Thomas L. Kivisto.

**Committee Meetings**

The Committee shall meet at such times and with such frequency as it determines to be necessary or appropriate, or as meetings may be called by the Chair of the Committee, any two members of the Committee or the Chairman of the Management Committee. The Committee may invite members of the management group or others to attend meetings and/or to furnish pertinent information. The Committee shall also meet in executive session. The Chair of the Committee shall be responsible for scheduling meetings of the Committee, determining the agendas for meetings (following consultation, as the Chair considers appropriate, with other members of the Committee and with management), presiding over meetings of the Committee and coordinating reporting to the Management Committee. In the absence of the Chair, the majority of the members of the Committee present at a meeting shall appoint a member to preside at the meeting.

**Committee Authority and Responsibilities**

1. The Committee shall have the sole authority to retain and terminate any compensation consultant to be used to assist in the evaluation of senior executive compensation and shall have sole authority to approve the consultant's fees and other retention terms. The Committee shall have the authority to cause the Company to pay the fees and expenses of such consultants. The Committee shall also have the authority to obtain advice and assistance from internal or external human resource, legal, accounting or other advisors.

2. The Committee shall annually review and approve general compensation policies of the Company with respect to all officers, including each of the named executive officers, and other key executives and directors.

3. The Committee shall annually review and approve the Company's goals and objectives relevant to the compensation of the senior executives (including the named executive officers), shall evaluate the senior executives' performance in light of those goals and objectives and shall approve the compensation levels of the senior executives based on this evaluation.

4. The Committee shall annually review and make recommendations to the Management Committee, for the senior executives, including each of the named executive officers, of the Company:

   (a) The annual base salary level;

   (b) Awards under other incentive compensation plans and equity-based plans, including under any long-term incentive plan;

   (c) Employment agreements, severance arrangements, and change in control agreements/provisions, in each case as, when and if appropriate;

   (d) Any special or supplemental benefits; and

   (e) Any promotions of senior executives.

   In determining the long-term incentive component of any compensation of the senior executives of the Company, including the chief executive officer and the other named executive officers, the Committee shall consider the Company's performance and relative unit-holder return, the value of similar incentive awards to senior executives at comparable companies and such other factors that the Committee deems relevant.

5. The Committee may form and delegate authority to subcommittees when appropriate.

6. The Committee shall make regular reports to the Management Committee and keep records of its meetings.

7. The Committee shall review and reassess the adequacy of this Charter annually and recommend any proposed changes to the Management Committee for approval. The Compensation Committee shall annually review its own performance.

**Resources**

The Committee shall have the resources and authority appropriate to discharge its duties and responsibilities, including the authority to select, retain, terminate and approve the fees and other retention terms of special counsel or other experts or consultants, as it deems appropriate, without seeking approval of the Management Committee or management. With respect to consultants retained to assist in the determination or evaluation of director, Chief Executive Officer or named executive officer compensation, this authority shall be vested solely in the Committee.

822023.1:731257:00950

Tom, please find attached the information that you requested for Thane and Bartow:

- Employment agreements for Kivisto, Foxx, and Wallace.
- Summary of compensation information for the top 25 employees for 2005, 2006 and 2007.
- Summary of business segments bonus pool plans.

Also, the remaining 5% for the 2007 Executive Pool is calculated below:

| | |
|---|---|
| Total Pool | $63,556 |
| Bonus Pool Paid | ($32,000) |
| Unpaid Bonus Pool | $31,556 |

Let me know if you need anything else.