**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

|  |  |  |
|---|---|---|
| IN RE: SEMGROUP ENERGY PARTNERS, L.P., SECURITIES LITIGATION | ) ) ) ) ) ) | 08-MD-1989-GKF-FHM |

**OPINION AND ORDER**

This matter comes before the court on the Carlyle/Riverstone Defendants'[1] Motion for Clarification or Reconsideration of the Court's April 30, 2010 Opinion and Order or Alternatively, for Certification of an Immediate Appeal of the Opinion and Order [Doc. Nos. 256-257] and the Motion of A.R. Thane Ritchie and Ritchie Opportunistic Trading, Ltd. For Reconsideration of Motion to Dismiss the Complaint or, in the Alternative, for Certification of an Interlocutory Appeal [Doc. Nos. 258-259] (collectively, the "Investment Defendants"). For the reasons set forth below, the Motions for Reconsideration are granted in part and denied in part. The alternative Motions for Certification for Interlocutory Appeal are denied.

The court's April 30, 2010, Opinion and Order [Doc. No. 253] denied motions by defendants to dismiss control person liability claims against them brought under Section 15 of the Securities Act, 15 U.S.C. §77o, and Section 20 of the Securities Exchange Act of 1934, 15 U.S.C. §78t(a). A correction to the order was entered on July 27, 2010. [Doc. No. 296]. The correction clarified that–consistent with the court's denial of the Investment Defendants' Motions to Dismiss-- [Doc. No. 253, p. 48]–the court had found plaintiff's complaint adequately

---

[1]The Carlyle/Riverstone Defendants are Carlyle/Riverstone Global Energy and Power Fund II, L.P., C/R Semgroup Investment Partnership, L.P., C/R Energy Coinvestment II, LP, Andrew Ward and E. Bartow Jones.

pled facts which supported its claim under Count VI for control person liability under Section 15, as well as Section 20, of the Exchange Act.

The Investment Defendants seek reconsideration of the April 30, 2010 Opinion and Order. Alternatively, pursuant to 28 U.S.C. §1292(b), they ask the court to certify for interlocutory appeal the court's denial of their motions to dismiss and to stay of proceedings pending appellate review.

Lead Plaintiff Harvest Fund Advisors LLC opposes the Investment Defendants' motions.

## I. Motion for Reconsideration

### A. Standard of Review

The decision of whether to grant or deny a motion for reconsideration is committed to the court's discretion. *Hancock v. City of Okla. City,* 857 F.2d 1394, 1395 (10th Cir. 1988). A motion to reconsider "is designed to permit relief in extraordinary circumstances and not to offer a second bite at the proverbial apple." *Syntroleum Corp. v. Fletcher Int'l, Ltd.,* No. 08-CV-384-JHP-FHM, 2009 WL 761322, at *1 (N.D. Okla. March 19, 2009) (quoting *Maul v. Logan Cty. Bd. of Cty. Comm's,* No. CIV-05-605, 2006 WL 3447629, at *1 (W.D. Okla. Nov. 29, 2006)). A motion to reconsider may be considered on the following grounds: "(1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice." *Servants of the Paraclete v. Does,* 204 F.3d 1005, 1012 (10th Cir. 2000) (citing *Brumark Corp. v. Samson Resources Corp.,* 57 F.3d 941, 948 (10th Cir. 1995)). In other words, when the court has "misapprehended the facts, a party's position, or the controlling law," a motion to reconsider is appropriate. *Id.; see Syntroleum Corp.,* 2009 WL 761322, at *1. Parties' efforts to "revisit issues already addressed or advance

arguments that could have been raised in prior briefing" will not be considered.  *Maul,* 2006 WL 3447629, at *1.

## B.  Analysis

The Investment Defendants assert the court, in its April 30 order,  erred in the following respects:

> 1. The court's conclusions as to defendant Brent Cooper apply with equal or greater force to defendants A.R. Thane Ritchie, Andrew Ward and E. Bartow Jones, and warrant dismissal of the control person liability claims against them;
>
> 2. The order failed to apply the Tenth Circuit's requirement that a plaintiff plead facts showing the defendants  individually exercised day to day control;
>
> 3. The order erred in failing to acknowledge the requirement that plaintiffs plead control over the activities that underlie the alleged primary violations.

The April 30 order stated the standard for determining whether a complaint states a claim for control person liability under Section 20(a) as follows:

> Liability under §20(a) is derivative in nature.  To state a claim Section 20(a) claim, plaintiff must allege (1) a primary violation of the securities laws and (2) defendant's control over the primary violator.  15 U.S.C. §78t(a); *Maher v. Durango Metals, Inc.,* 144 F.3d 1302, 1305 (10th Cir. 1998).
>
> The court has concluded plaintiff has successfully pled primary violations of §10(b) and Rule 10b-5 by, *inter alia,* SGLP.  Thus, the first element of a prima facie claim under §20(a) has been established.  To establish the second element–that a defendant was a "controlling person" of the primary violator–plaintiff must allege facts which indicate defendant had "possession, direct or indirect, of the power to

> direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." *Id.* at 1305, citing 17 C.F.R. §230.405. The statute is remedial and is to be construed liberally. *Id.* It has been interpreted as requiring only some indirect means of discipline or influence short of actual direction to hold a controlling person liable. *Id.*

[Doc. No. 253, p. 36].

Applying the standard articulated in *Maher*, the court found that the following factual allegations, taken as a whole, create a sufficient inference of indirect control by the Ritchie Defendants and Carlyle/Riverstone of SGLP and SemGroup to survive the motions to dismiss: (1) Ritchie Capital, through its affiliates, held a 25.2% interest in the Parent and the Carlyle/Riverstone entities held a 29.3% interest in the Parent. (2) The Parent, through SemGroup Holding, owned 100% of SemGroup, GP and 47.7% of the units of SGLP. (3) Thane Ritchie, as Ritchie Capital's designee, and Ward and Jones, as the Carlyle/Riverstone entities' designees on the Parent's Management Committee, signed memoranda of action authorizing the drop down of assets; and (4) the Ritchie Defendants and the Carlyle/Riverstone Defendants reaped distributions from the IPO and Secondary Offering totaling $48,383,432 for the Ritchie Defendants and $56,361.878 for the Carlyle/Riverstone Defendants. [Doc. No. 253, pp. 39-40]. Relying on the same factual allegations, the court reached a similar conclusion with respect to defendants' challenge to plaintiff's Section 15 claim. [Doc. No. 296].

### 1. Thane Ritchie, Ward and Jones

The Investor Defendants argue that even if the complaint adequately pled facts establishing a prima facie case against the investment entities themselves, the same cannot be said for the allegations against the individuals–Thane Ritchie, Ward and Jones–who were the investment entities' designees on the Parent's Management Committee. They assert the three

individuals should have been dismissed for the same reason the court dismissed claims against Brent Cooper. The court concludes this argument has merit.

In its April 30 order, the court found Cooper could not be held liable either as a primary violator or control person because, although he was Treasurer of the Parent, he was neither an officer nor a director of SemGroup, GP; he signed no public documents in connection with the SGLP offerings; and he was not alleged to have received any benefit from the offerings. [Doc. No. 253, pp. 23-26, 29, 37-38].

Similarly, Thane Ritchie, Ward and Jones were outside directors of the Parent, but were not officers or directors of SemGroup, GP. They are not alleged to have signed SEC filings or made statements in connection with the public offerings. Most importantly, while the investment companies they represented received distributions from the proceeds of the IPO and Secondary Offerings, these three individuals are not alleged to have received any distributions. [Doc. No. 188, ¶291].[2]

Therefore, the motion to reconsider is granted with respect to claims against Thane Ritchie, Ward and Jones and their motions to dismiss the control person liability claims against them (Counts III and VI) are, upon reconsideration, granted.

## 2. Day to Day Control

The remaining Investment Defendants argue that under *Adams v. Kinder-Morgan, Inc.,* 340 F.3d 1083 (10th Cir. 2003) an outside director can only be held liable where the complaint alleges facts supporting a conclusion that he exercised control over the day-to-day operations of

---

[2] Defendants also assert they are far less culpable than Cooper who, by virtue of his role as Treasurer of the Parent, is alleged to have been aware of its speculative trading strategy and the resulting impaired liquidity of the company.

5

the company.³ However, the interpretation urged by defendants is unreasonably narrow and ignores the SEC's definition of "control," which was quoted in both *Maher* and *Adams* as part of the Tenth Circuit's statement of the requisites for pleading a prima facie case for control person liability. *Maher,* 144 F.3d at 1305; *Adams,* 340 F.3d at 1108. Under the SEC regulation, "control" is defined as "the possession, direct *or indirect*, of the *power* to direct or *cause* the direction of the management and policies of a person, whether through the ownership of voting securities, by contract or otherwise." 17 C.F.R. §230.405 (emphasis added). Defendants' interpretation would essentially gut the SEC regulation and limit the definition of a control person only to those who actually exercised day-to-day control of a company. The court does

---

³In *Adams,* the court affirmed the district court's dismissal of control person claims against an outside director but reversed dismissals of control person claims against the chief executive officer and chief financial officer of the primary violator. *Id.* With respect to the claim against the outside director, the court stated**:**

> The assertion that a person was a member of a corporation's board of directors, without any allegation that the person individually exerted control or influence over the day-to-day operations of the company**,** does not suffice to support an allegation that the person is a control person within the meaning of the Exchange Act. *See, e.g., Dennis v. General Imaging, Inc.,* 918 F.2d 496, 509-10 (5th Cir. 1990) (holding that status as a director will not make someone a controlling person absent "evidence [the alleged controlling person] was able to influence the firm's direction"); *Burgess v. Premier Corp.,* 727 F.2d 826, 832 (9th Cir. 1984) ("A director is not automatically liable as a controlling person. There must be some showing of actual participation in the corporation's operation or some influence before the consequences of control may be imposed."); *Cameron v. Outdoor Resorts of Am., Inc.,* 608 F.2d 187, 195 (5th Cir. 1979) ("As a director without knowledge [the defendant] was not liable as a control person.") Accordingly, the district court was correct to dismiss the claim of control person liability against Kinder.

*Id.* at 1108.

not believe the Tenth Circuit intended, in *Adams,* to impose such a limitation.

Given the Tenth Circuit's admonition that "control person determination is a factual question not ordinarily subject to resolution on a motion to dismiss," *Maher,* 144 F.3d at 1306, the court remains persuaded that plaintiff has pled facts, when taken as a whole, from which it can be reasonably inferred that remaining Investment Defendants were control persons.

### 3.  Control Over Primary Violator

The Investor Defendants also contend the court failed to acknowledge the requirement that plaintiff plead control over the activities that underlie the alleged primary violations. However, the court, in its April 30 order, concluded that the Investor Defendants' substantial ownership interests in the Parent, which, through SemGroup Holding, controlled SemGroup, GP and owned 47.7% of the units of SGLP, supports an inference of the Investor Defendants' ability to exercise control over SemGroup, GP and SGLP.  *See, i.e., Maher,* 144 F.3d at 1305 (citing with approval *First Interstate Bank v. Pring,* 969 F.2d 891, 898 (10th Cir. 1992) for the proposition that summary judgment in favor of the defendant was inappropriate when the defendant was in a position of at least indirect control over two companies which together controlled the primary violator); *In re Mutual Funds Investment Litigation,* 566 F.3d 111, 130 (4th Cir. 2009) ("[T]he legislative purpose in enacting a control person liability provision was to prevent people and entities from using straw parties, subsidiaries, or other agents acting on their behalf to accomplish ends that would be forbidden directly by the securities laws.").

## II.  Interlocutory Appeal

### A.  Legal Standard

Under 28 U.S.C. §1292, a district court may certify a pretrial appeal of an order where the judge believes the order "involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation."  The Tenth Circuit has stated that appeal certification "should be limited to extraordinary cases in which extended and expensive proceedings probably can be avoided by immediate final decision of controlling questions encountered early in the action."  *State of Utah v. Kennecott Corporation,* 14 F.3d 1489, 1495 (10th Cir. 1994) (quotations and citations omitted).  Four criteria must be satisfied to warrant §1292 certification: (1) the action must be a civil action; (2) the court must conclude that the order involves a controlling question of law; (3) there must be substantial ground for difference of opinion as to the resolution of that question; and (4) it must appear that an immediate appeal from the order may materially advance the ultimate termination of the litigation.  *In re Spectranetics Corp. Secs. Litig.,.* 2009 U.S. Dist. LEXIS 108542, at **11-12 (D. Colo. 2009).  A motion for certification must be granted sparingly, and the movant bears the heavy burden of demonstrating that a case is an exceptional one in which immediate appeal is warranted.  *Moody v. Ford Motor Company,* 2007 U.S.Dist. LEXIS 78534, at *2 (N.D. Okla. 2007).  Only exceptional circumstances justify departure from the basic policy of postponing appellate review until after the entry of a final judgment.  *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 475 (1978).

"A party's strong disagreement with the court's ruling is not sufficient for there to be a

'substantial ground for difference'; the proponent of an appeal must make some greater showing." *Taylor v. Turley,* 2010 U.S. Dist. LEXIS 2675, at *3 (D. Utah 2010). A "controlling question of law." as used in §1292(b), means a pure question of law requiring the resolution of "abstract' legal issues; it is not the application of a legal question to the particular facts of the case. *See Ahrenholz v. Bd. of Trustees,* 219 F.3d 674, 677 (7th Cir. 2000). "The antithesis of a proper §1292(b) appeal is one that turns on whether there is a genuine issue of fact, or whether the district court properly applied settled law to the facts." *Hightower v. Schwarzenegger,* 2009 U.S. Dist. LEXIS 109603, at *7 (E.D. Cal. 2009).

### B.  Analysis

The Investment Defendants alternatively seek certification of the April 30 order for interlocutory appeal pursuant to §1292, and they ask the court to stay these proceedings pending the appeal. However, the requested certification fails to satisfy the criteria for §1292 appeal. The requirements to plead a prima facie case of control person liability are well settled. *See Maher,* 144 F.3d at 1305**;** *Adams,* 340 F.3d at 1108. Further, as the Tenth Circuit acknowledged in *Maher,* control person determination is normally a factual question. *Maher,* 144 F.3d at 1306. Finally, the proposed interlocutory appeal will *not* materially advance the ultimate termination of the litigation. By the court's count, there are 22 other defendants in the case, and a stay of proceedings pending an appeal by the Investment Defendants would almost certainly delay the ultimate resolution of the case.

Therefore, Investment Defendants' alternative motions to certify the case for interlocutory appeal and stay the case pending appeal must be denied.

### III. Conclusion

For the reasons set forth above, the Motions for Reconsideration [Doc. Nos. 256, 258] are granted with respect to defendants Thane Ritchie, Andrew Ward and E. Bartow Jones, and the Investment Defendants' earlier Motions to Dismiss [Doc. Nos. 201, 218] are granted in part with respect to the claims against them. The Motions for Reconsideration [Doc. Nos. 256, 258] are denied with respect to the remaining Investment Defendants. The alternative Motions for Certification for Interlocutory Appeal [Doc. Nos. 257, 259] are denied.

ENTERED this 30th day of July, 2010.

Gregory K. Frizzell
United States District Judge
Northern District of Oklahoma